**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF KANSAS**

**KANSAS CITY DIVISION**

In re:
OLGA GENNADEVNA VOLCSKO,
individually, as Executrix of the Estate of OLGA VOLCSKO,
and as Trustee of the Volcsko Family Banking Trust,
Debtor.

OLGA GENNADEVNA VOLCSKO,
Plaintiff,
v.
FREEDOM MORTGAGE CORPORATION,
Defendant.

Main Case No. 26-20603-rdb13
Chapter 13
Hon. Robert D. Berger

Adv. Proc. No. 26-06064

Related State Court Case:
GE-2025-CV-000046
(Geary County District Court, KS;
Hon. Ryan W. Rosauer)

# SECOND AMENDED ADVERSARY COMPLAINT

*Objection to Proof of Claim; Declaratory Relief; Lien Avoidance; Violations of the Automatic Stay; SCRA; RESPA; VA Loan Servicing Violations; Equitable Subordination; Enhanced RESPA Pattern-or-Practice Damages; Breach of Contract (VA Regulatory Framework via Note Section 12); Breach of Contract (RESPA Framework via Mortgage Section (P)); and Related Relief*

## COMPLIANCE STATEMENT

This Second Amended Adversary Complaint is filed in direct compliance with the Court's Memorandum Opinion and Order dated October 5, 2026 (AP DN 29) denying without prejudice Plaintiff's Motion for Leave to File Second Supplemental Adversary Complaint. The Court directed that "[i]f she seeks to amend her complaint in the future, her proposed amended complaint should itself include every claim, allegation, exhibit, or prayer she wishes to make." This pleading complies with that directive: it is a single, standalone pleading that contains, within its four corners, every claim, factual allegation, exhibit reference, and prayer for relief Plaintiff asserts in this adversary proceeding, reorganized by subject matter. It does not incorporate by reference, and does not depend upon, any prior pleading in this adversary proceeding (including the Original Adversary Complaint at AP DN 2 filed August 20, 2026 and

the First Supplemental Adversary Complaint at AP DN 24 filed September 24, 2026). All factual allegations, legal citations, exhibit references, and prayer items from those prior pleadings are reproduced in this unified pleading in full substance.

## NOTICE OF LEGAL AUTHORITIES RELIED UPON

Plaintiff relies on, and incorporates throughout this Complaint, the following authorities (in addition to the statutes, rules, and remaining case citations expressly cited in Parts One through Three):

**Supreme Court and Federal Authorities:**

Travelers Casualty & Surety Co. v. Pacific Gas & Electric Co., 549 U.S. 443 (2007) (allowance of claims under 11 U.S.C. § 502 is governed by federal bankruptcy law); United States v. Energy Resources Co., 495 U.S. 545, 549 (1990) (bankruptcy courts possess broad equitable authority); Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005) (Rooker-Feldman doctrine is of narrow scope); Tal v. Hogan, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (scope of judicial notice under Fed. R. Evid. 201); Lawlor v. National Screen Service Corp., 349 U.S. 322, 328 (1955) (post-judgment facts are not precluded); Haines v. Kerner, 404 U.S. 519 (1972) (pro se pleadings liberally construed); Erickson v. Pardus, 551 U.S. 89 (2007) (pro se pleading standard); Foman v. Davis, 371 U.S. 178 (1962) (leave to amend "shall be freely given").

**Kansas Supreme Court Authorities:**

Rhoten v. Dickson, 290 Kan. 92, 103, 223 P.3d 786 (2010) (Kansas issue-preclusion and claim-preclusion framework — foundational to Plaintiff's showing that the state-court proceedings here do not preclude the bankruptcy-court claims-allowance and lien-determination remedies sought in this adversary proceeding; Rhoten is cited and relied upon in Plaintiff's responses to Freedom Mortgage's Rooker-Feldman and preclusion arguments); Landmark National Bank v. Kesler, 289 Kan. 528, 216 P.3d 158 (2009) (MERS's status under Kansas law and standing consequences — cited for the proposition only, without verbatim quotation); FV-I, Inc. v. Kallevig, 306 Kan. 204, 392 P.3d 1248 (2017) (binding Kansas authority on "person entitled to enforce" under K.S.A. § 84-3-301, which presupposes undisputed possession and the absence of HDC-defeating notice — distinguished here on both grounds pursuant to K.S.A. § 84-3-302(a)(2)(vi)).

## INTRODUCTION

A. Nature of the Action

Plaintiff Olga Gennadevna Volcsko, an active-duty member of the United States Armed Forces and Chapter 13 Debtor, brings this adversary proceeding against Freedom Mortgage Corporation ("Freedom Mortgage" or "Defendant") to challenge the validity, priority, and enforceability of the mortgage lien Freedom Mortgage has asserted against Plaintiff's homestead located at 11427 Farnum Run Road, Milford, Kansas 66514 (the "Property").

A.1. Case Status and Related Proceedings. The underlying Chapter 13 case (In re Volcsko, Case No. 26-20603-rdb13, Hon. Robert D. Berger) was commenced by voluntary petition filed April 21, 2026. Plaintiff has filed and served, as a case-management matter in the underlying bankruptcy proceeding, a formal Fed. R. Bankr. P. 3007 Objection to Freedom Mortgage's Proof of Claim No. 2-1 (Ex. 8, and as separately reproduced as Ex. R) (with Exhibit A — Written Statement of Transcript Discrepancy attached thereto) that runs procedurally in parallel with the Adversary claims asserted herein, consistent with Fed. R. Bankr. P. 3007(b) and 7001.

A.2. Defendant's Bankruptcy Counsel of Record. Freedom Mortgage is represented in the underlying Chapter 13 case by two bankruptcy law firms as counsel of record: SouthLaw, P.C. (attorneys Steven L. Crouch, Wendee Elliott-Clement, and Hunter C. Gould), which filed the initial Objection to Confirmation (Doc 47) and appeared in the case on June 2, 2026 (Doc 46); and McCalla Raymer Leibert Pierce, LLP (attorney Maria Tsagaris), which entered its appearance and request for notice on July 16, 2026 (Doc 70). Both firms are counsel of record for Freedom Mortgage in the underlying Chapter 13 case and are entitled to service of this Adversary Complaint through Freedom Mortgage upon issuance of the Summons.

This proceeding arises from Freedom Mortgage's fundamental failure to establish that it is a "person entitled to enforce" the promissory note secured by the subject mortgage, as required under K.S.A. 84-3-301 and controlling Kansas authority. The only instrument purporting to transfer the mortgage to Freedom Mortgage is an Assignment of Mortgage executed on April 29, 2023 by MERS Vice President Alan Baker — notarized in Pinellas County, Florida — and not recorded in the Geary County, Kansas Register of Deeds until October 30, 2023 (Book 107, Page 127). That Assignment (Ex. 5) transfers only the mortgage instrument (Ex. 6 — Mortgage recorded Jan. 27, 2023, Book 292, Page 1028), not the underlying promissory note, and was executed by Mortgage Electronic Registration Systems, Inc. ("MERS") despite MERS's own governing documents confirming that MERS "cannot transfer the beneficial rights to the debt." This Assignment is a nullity. The Kansas Supreme Court in Landmark National Bank v. Kesler, 289 Kan. 528, 216 P.3d 158 (2009), addressed MERS's status and the standing consequences, under Kansas law, of a mortgage assignment unaccompanied by any transfer of the underlying debt (cited for the proposition only, without any verbatim quotation). See also, as persuasive out-of-state authority: Deutsche Bank Nat'l Trust Co. v. Mitchell, 422 N.J. Super. 214 (App. Div. 2011); Bank of N.Y. v. Silverberg, 86 A.D.3d 274 (2d Dep't 2011).

Plaintiff specifically challenges Alan Baker's authority to execute the April 29, 2023 (executed) / October 30, 2023 (recorded) Assignment of Mortgage. Alan Baker purported to execute the Assignment in his capacity as "VICE PRESIDENT" of Mortgage Electronic Registration Systems, Inc. ("MERS") as Nominee for NFM, Inc., with notarial acknowledgment by Tanner Dickson, State of Florida, County of Pinellas (Florida Notary Commission No. HH 049515, expires 10/01/2024). Plaintiff has reason to believe and does allege that:

(a) Alan Baker was not, at the time of execution, an actual employee or officer of MERSCORP Holdings, Inc. or Mortgage Electronic Registration Systems, Inc., but instead was a contract signer or employee of a document-services or default-services entity acting under a limited signing authority granted by MERS;

(b) Alan Baker did not have actual personal knowledge of the facts asserted in the Assignment, did not personally review the underlying loan documentation, and signed the Assignment in a high-volume, automated, or mechanical fashion consistent with the pattern of conduct identified by federal regulatory consent orders, settlements with the OCC, CFPB, and state Attorneys General, and federal court findings concerning robosigning of foreclosure-related instruments;

(c) The MERS Procedures Manual (Release 19.0, page 63) expressly disclaims MERS's authority to transfer beneficial rights to the underlying debt — only the Mortgage interest — consistent with the Landmark National Bank v. Kesler, 289 Kan. 528, 216 P.3d 158 (2009) (cited for the proposition only) and Carpenter v. Longan, 83 U.S. (16 Wall.) 271 (1872) principle that an assignment of mortgage without the underlying note is a legal nullity; and

(d) Plaintiff demands production in discovery of (i) Alan Baker's complete employment records at MERSCORP Holdings, Inc., MERS, and any third-party signing services for the period 2022- 2024; (ii) all MERS corporate resolutions, signing authority appointments, and powers of attorney granting Alan Baker authority to execute assignments; (iii) all assignments executed by Alan Baker in 2023 (volume, jurisdictions, notary patterns); (iv) all regulatory consent orders, settlements, and compliance records applicable to MERS robosigning conduct in the period 2010 through 2024; and (v) notary log entries of Tanner Dickson for the Volcsko Assignment and related MERS-NFM assignments in 2023.

B. Overview of Claims

Plaintiff's own primary-source research — memorialized in Plaintiff's Affidavit of Research and Fact (executed under penalty of perjury pursuant to 28 U.S.C. § 1746) and supported by the Ginnie Mae Loan-Level Disclosure L-record extract and Ginnie Mae Monthly Sponsor/Sub- Servicer records — establishes that the subject loan was pooled into Ginnie Mae Pool MA8649M (CUSIP 36179XTE6, Pool Issue Date February 1, 2023, MBS Rate 6.000%) and allocated through the Ginnie Mae II MBS structure into GNMA REMIC Trust 2023-022, Groups 5 and 7. The Ginnie Mae Issuer of Record for Pool MA8649M is Issuer ID 3871, registered as "Dba Freedom Home Mortgage Corp" — a name not identical to Freedom Mortgage Corporation, the Defendant servicer. These findings are corroborated by the Affidavit of Joseph R. Esquivel, Jr. (Mortgage Compliance Investigations LLC, TX PI License A20449) (the "Esquivel Affidavit"), which previously identified the REMIC Trust, the Trust closing date (February 28, 2023 per the Offering Circular Supplement), and the defective chain of title. The beneficial interest in the Note had moved into a Ginnie Mae securitization structure with a Pool Issue Date of February 1, 2023 — approximately three months BEFORE Freedom Mortgage claimed, on paper, to receive the Mortgage by virtue of the April 29, 2023 Assignment. Freedom Mortgage is a servicer pursuing foreclosure in the name of a beneficial interest it never lawfully obtained.

Additionally, Freedom Mortgage violated the Servicemembers Civil Relief Act by (a) failing to file the required military status affidavit at any time before seeking judgment against an active- duty servicemember; and (b) pursuing foreclosure in the face of a properly filed Motion to Stay under the SCRA, resulting in a denial that failed to comply with the mandatory protective requirements of 50

U.S.C. § 3932. Freedom Mortgage further violated VA loan servicing obligations by failing to exhaust mandatory pre-foreclosure loss mitigation before filing suit on a VA-guaranteed loan.

In the bankruptcy forum, Freedom Mortgage must prove its claim — it cannot merely assert it. The primary-source Ginnie Mae record, the corroborating forensic evidence, the documentary record, and controlling law establish that it cannot do so. Plaintiff requests that this Court disallow Freedom Mortgage's claim, void or avoid its purported lien, and grant all relief set forth herein.

**I. JURISDICTION AND VENUE**

1. This adversary proceeding is filed pursuant to Federal Rules of Bankruptcy Procedure ("FRBP") 7001 et seq. and arises in and relates to the Debtor's Chapter 13 bankruptcy case pending in the United States Bankruptcy Court for the District of Kansas.

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) (matters concerning administration of the estate); § 157(b)(2)(B) (allowance or disallowance of claims); § 157(b)(2)(G) (automatic stay); and § 157(b)(2)(K) (determinations of the validity, extent, or priority of liens).

3. This Court has supplemental jurisdiction over the SCRA, RESPA, and VA loan servicing claims pursuant to 28 U.S.C. § 1334, as they arise in and relate to the bankruptcy case, and independently under 28 U.S.C. § 1331 as federal question claims.

4. Venue is proper pursuant to 28 U.S.C. § 1409(a).

5. This Court, sitting in equity, has full authority to grant equitable relief, including equitable subordination under 11 U.S.C. § 510(c), and to adjudicate claims sounding in commercial fraud, breach of fiduciary duty, and constructive trust.

**II. PARTIES**

6. Plaintiff Olga Gennadevna Volcsko is a natural person, an active-duty member of the United States Armed Forces stationed at Fort Riley, Kansas, with OCONUS deployment orders, and the Debtor in the above-captioned Chapter 13 case. Plaintiff owns and occupies the real property located at 11427 Farnum Run Road, Milford, Geary County, Kansas 66514 (the "Property"), legally described as Lot Ten (10), a Replat of Farnum Creek Estates, Geary County, Kansas (APN: 031-019-32-0-00-02-004.10-0), as her primary residence and homestead. Plaintiff is also the Executrix of the Estate of OLGA VOLCSKO and the Trustee of the Volcsko Family Banking Trust, an irrevocable private express trust, through which Plaintiff has served a Trust Presentment Package on Freedom Mortgage Corporation, the outcome of which is reserved for amendment as set forth herein.

7. Defendant Freedom Mortgage Corporation ("Freedom Mortgage") is a corporation organized under the laws of the State of New Jersey. The Assignment of Mortgage at issue in this proceeding identifies Freedom Mortgage's address as 20 Lake Center Drive, Marlton, New Jersey 08053. Freedom Mortgage maintains its corporate headquarters at 907 Pleasant Valley Avenue, Mount Laurel, New Jersey 08054,

and a compliance address at 10500 Kincaid Drive, Fishers, Indiana 46037. Freedom Mortgage is registered under NMLS No. 2767. At all relevant times, Freedom Mortgage has represented itself as the servicer and purported holder of the promissory note and mortgage encumbering the Property. The Ginnie Mae Issuer of Record for Pool MA8649M (the pool in which Plaintiff's loan is securitized) is Issuer ID 3871, registered as "Dba Freedom Home Mortgage Corp" — a name that is not identical to Freedom Mortgage Corporation. The relationship between Freedom Mortgage Corporation and Issuer 3871 is not established on the face of the public record and is among the matters for which discovery is sought.

**III. FACTUAL ALLEGATIONS**

A. The Loan, Note, and Mortgage

8. On January 26, 2023, Plaintiff executed a promissory note (the "Note") in the principal amount of $365,000.00 at an interest rate of 6.625% per annum, with a monthly principal and interest payment of $2,337.14, payable to NFM, Inc., a Maryland Corporation ("NFM"), as Lender. The Note is identified by: Original Loan No. 94311221626; Freedom Mortgage Account No. 0149070542; VA Guaranty Case No. 52-52-6-0400447; MERS MIN 1002591-0001727190- 3. Per primary-source Ginnie Mae loan-level disclosure (Layout v1.8, source file GNMA_MBS_LL_MON_202603_002.txt), the loan carries Disclosure Sequence Number 1522198150 and is allocated to Ginnie Mae Pool MA8649 (published as MA8649M — Multiple-Issuer pool suffix), CUSIP 36179XTE6, under Issuer ID 3871.

9. On the same date, Plaintiff executed a Mortgage (the "Mortgage") encumbering the Property as security for the Note. The Mortgage was recorded on January 27, 2023 in the Geary County, Kansas Register of Deeds at Book 292, Page 1028. The Mortgage identified Mortgage Electronic Registration Systems, Inc. ("MERS") as the mortgagee, acting solely as nominee for NFM and its successors and assigns. Plaintiff was an active-duty servicemember on the date of origination and has remained on active duty continuously since that date.

10. This is a VA-guaranteed loan subject to mandatory servicing requirements under 38 U.S.C. Chapter 37, 38 C.F.R. Part 36, and the VA Servicer Handbook M26-4. The VA's financial guaranty creates an independent obligation on Freedom Mortgage, as an approved VA servicer, to follow all VA-mandated pre-foreclosure procedures before initiating or prosecuting any foreclosure action.

11. The Note bears an endorsement executed by Chelsey Roberts, identified as "Post Closing Specialist" for NFM, Inc., on an allonge attached to the Note. The endorsement reads: "PAY TO THE ORDER OF: ____________ / WITHOUT RECOURSE / NFM, Inc., a Maryland Corporation / BY: Chelsey Roberts / TITLE: Post Closing Specialist." The endorsement names no specific transferee in the payee line, constituting a blank endorsement under K.S.A. 84-3- 205(b). In its Memorandum in Support of Motion for Summary Judgment, Freedom Mortgage itself characterized the endorsement as having been "endorsed in blank." Under K.S.A. 84-3- 202(2) and UCC § 3-202(2), an allonge is valid only if it is so firmly affixed to the instrument that it becomes part of it, and endorsements on an allonge are considered invalid if there is space remaining on the face or reverse of the instrument for endorsements. Plaintiff

reserves the right to challenge the physical affixation and integration of the allonge upon production of the original wet ink Note in discovery. (Exhibit S)

B. The Defective Assignment — Trust-Closing Dated, Note-Only Instrument, MERS Nullity

12. An Assignment of Mortgage was executed on April 29, 2023 by Alan Baker, as Vice President of MERS acting "as nominee for NFM, Inc., its successors and assigns," and notarized on that date by Tanner Dickson, Notary Public, State of Florida, Pinellas County (Commission No. HH049515). The Assignment purports to transfer the Mortgage from MERS to Freedom Mortgage Corporation at 20 Lake Center Drive, Marlton, NJ 08053. The Assignment was not recorded until October 30, 2023, at 10:05 a.m., in the Geary County, Kansas Register of Deeds at Book 107, Page 127 — approximately six months after its execution, approximately three months after the Pool MA8649M Pool Issue Date of February 1, 2023, and approximately eight months after the GNMA 2023-022 Trust closed on February 28, 2023 per the Offering Circular Supplement (Esquivel Affidavit Exhibit F).

13. The alleged default on the Note, as pleaded by Freedom Mortgage in its Memorandum in Support of Motion for Summary Judgment and sworn to in the Affidavit of Kyeshia Renee Wickware Affidavit (Ex. 9, also reproduced as Ex. U), commenced on November 1, 2023 — two days after the October 30, 2023 recording of the Assignment. The Assignment therefore predates the alleged default only by days, but more significantly it was executed on April 29, 2023, eight months before the default and approximately two months after the Trust had closed. The Assignment does not establish Freedom Mortgage's right to enforce the Note for multiple independent reasons set forth herein.

14. Under K.S.A. 84-3-301, only a "person entitled to enforce" a negotiable instrument may enforce it. Under K.S.A. 84-3-203, transfer of a negotiable instrument requires delivery. The Assignment of Mortgage does not constitute delivery of the Note and does not establish Freedom Mortgage's physical possession of, or entitled-to-enforce status with respect to, the Note.

15. Kansas law is clear. Under K.S.A. § 84-3-301, only a "person entitled to enforce" a negotiable instrument may enforce it, and that status must exist at the commencement of the enforcement action. Landmark National Bank v. Kesler, 289 Kan. 528, 216 P.3d 158 (2009), addressed MERS's status under Kansas law and the standing consequences of a mortgage assignment unaccompanied by transfer of the underlying debt (cited for the proposition only). FV-I, Inc. v. Kallevig, 306 Kan. 204, 392 P.3d 1248 (2017), is binding Kansas authority, but it presupposes undisputed possession of the Note and the absence of HDC-defeating notice; Plaintiff's claims contest both. Specifically, Freedom Mortgage cannot qualify as a holder in due course under K.S.A. § 84-3-302(a)(2)(vi) because it had notice of claims to the instrument at the time it took possession, and the record does not establish undisputed possession as of the commencement of the foreclosure action. Freedom Mortgage filed the foreclosure petition on March 14, 2025. It has produced no competent evidence establishing that it was the holder of the Note — or even in physical possession of the Note — as of that date. The Affidavit of Kyeshia Renee Wickware, upon which Freedom Mortgage's standing assertion rests, states in conclusory terms that Freedom Mortgage "was the holder, in physical possession, of the Note at the time the above-captioned suit was filed on

March 14, 2025," without providing any documented chain of custody, bailee letter, custodial receipt, or specific date of physical delivery from NFM, Inc. to Freedom Mortgage.

16. MERS lacked the authority to assign the beneficial rights to the Note by its own governing documents. The MERS Procedures Manual, Release 19.0, Page 63, states in MERS's own words: "Although MERS tracks changes in ownership of the beneficial rights for loans registered on the MERS System, MERS cannot transfer the beneficial rights to the debt. The debt can only be transferred by properly endorsing the promissory note to the transferee." The MERS Residential Marketing Kit further states: "MERS shall have no rights whatsoever to any payments made on account of such mortgage loans" and "the MERS System is not a vehicle for creating or transferring beneficial interests in mortgage loans." (Esquivel Affidavit para. 38.) By MERS's own governing documents, the April 29, 2023 Assignment from MERS to Freedom Mortgage transferred no beneficial interest in the Volcsko Note.

17. Persuasive out-of-state authority applying UCC Articles 3 and 9 principles consistent with Kansas law includes Deutsche Bank Nat'l Trust Co. v. Mitchell, 422 N.J. Super. 214 (App. Div. 2011), and Bank of N.Y. v. Silverberg, 86 A.D.3d 274 (2d Dep't 2011). These authorities are cited as persuasive — not controlling — authority, and are offered to illustrate the uniform application across jurisdictions of the UCC Article 3 principle that a mortgage assignment unaccompanied by a transfer of the underlying debt does not confer standing to enforce the note.

C. Primary-Source Verification of the Pool / Issuer / REMIC Chain

18. Plaintiff's Affidavit of Research and Fact, executed under penalty of perjury pursuant to 28 U.S.C. § 1746 (attached as Exhibit 1), memorializes the results of Plaintiff's direct primary- source research against public Ginnie Mae loan-level disclosure files (Monthly Loan-Level MBS Disclosure, March 2026 reporting period, per Ginnie Mae Layout v1.8). Plaintiff's search used a multi-field fingerprint (state = KS, agency = V, note rate = 6.625%, original principal = $365,000, first payment date = 2023-03-01, maturity = 2053-02-01, LTV = 100, origination date = 2023-01-26) to isolate Plaintiff's record among approximately 11.7 million loan-level rows. The result was a single-record match — the Plaintiff's loan — with the identifiers set forth in paragraph 19 below. The underlying L-record is attached as Exhibit 2 (field-by-field decode), and the Issuer 3871 Ginnie Mae Monthly Sponsor/Sub-Servicer records for Pool MA8649 are attached as Exhibit 3.

19. IDENTIFIERS (primary source — Ginnie Mae MBS Loan-Level Disclosure, 202603):

• Ginnie Mae Pool ID: MA8649 (published as MA8649M — Multiple-Issuer pool suffix)
• CUSIP: 36179XTE6
• Pool Issue Date: February 1, 2023
• Pool Maturity: February 20, 2053
• Pool MBS Rate (to investors): 6.000%
• Note Rate (paid by borrower): 6.625%
• Excess Servicing Spread: 0.625% (standard Ginnie Mae II servicing compensation)
• Issuer of Record: Issuer ID 3871 — "Dba Freedom Home Mortgage Corp" (name divergence from

"Freedom Mortgage Corporation" — unresolved on face of public record)
• Issuer 3871 Contribution to Pool MA8649: 348 loans / $109,343,754.23 (8.96% / 9.23% share)
• REMIC: GNMA REMIC Trust 2023-022 — Groups 5 and 7 (FDS line 38: $100M to Group 5; FDS line 49: $7.4M to Group 7)
• Disclosure Sequence Number: 1522198150 (L-record position 2–17 — an internal Ginnie Mae loan identifier, not a Pool ID)
• Current Loan UPB (3/2026 reporting period): $362,373.38 in principal balance, plus a total asserted claim of $445,919.58 per Proof of Claim No. 2 filed June 3, 2026

D. Corroborating Forensic Analysis — Esquivel Affidavit

20. The Affidavit of Joseph R. Esquivel, Jr., licensed Texas Private Investigator (Mortgage Compliance Investigations LLC, TX PI License A20449), executed under oath and notarized (attached as Exhibit 4), independently confirms the REMIC securitization chain and establishes, based on examination of the Ginnie Mae Enterprise Online Portal, the Offering Circular Supplement, the MERS Procedures Manual, and the Note and Assignment documents, the following corroborating findings material to this action:

21. CORROBORATING FINDING ONE — GNMA SECURITIZATION CONFIRMED. Mr. Esquivel's examination of the Ginnie Mae Enterprise Online Portal confirms that Plaintiff's loan was securitized into GNMA REMIC Trust 2023-022. (Esquivel Affidavit para. 18–23.) Plaintiff's primary-source research refines this identification further as set forth in paragraph 19 above.

22. CORROBORATING FINDING TWO — TRUST CLOSED BEFORE ASSIGNMENT WAS EVEN EXECUTED. The Offering Circular Supplement for GNMA 2023-022 Trust (attached to the Esquivel Affidavit as its Exhibit F) establishes that the Trust closed on February 28, 2023. Freedom Mortgage's Assignment of Mortgage was executed on April 29, 2023 — approximately two months after the Trust's closing date — and not recorded until October 30, 2023. Under standard REMIC and Ginnie Mae trust rules, no new mortgage assets may be deposited into a closed trust. Plaintiff's primary-source research confirms that the Pool Issue Date for Pool MA8649M was February 1, 2023 — also before the April 29, 2023 Assignment. (Esquivel Affidavit para. 24–30, 40.)

23. CORROBORATING FINDING THREE — TRUST NOT NAMED ON NOTE OR MORTGAGE. Mr. Esquivel's examination of both copies of the Note confirms that: (a) GNMA 2023-022 Trust is not named anywhere on the Note; (b) U.S. Bank National Association is not named on the Note or Mortgage (per Esquivel Affidavit, U.S. Bank is identified as Trustee of REMIC 2023-022); and (c) GNMA as Guarantor is not referenced in the Note or Mortgage. There is no recorded instrument establishing any transfer of the Note into the Trust. (Esquivel Affidavit para. 24–30, 40.)

24. CORROBORATING FINDING FOUR — INCOMPLETE ENDORSEMENT / NO PHYSICAL-DELIVERY CHAIN. Both copies of the Note examined by Mr. Esquivel bear an endorsement signed by Chelsey Roberts for NFM, Inc., with the payee line blank — effectuating a bearer instrument endorsement with no named transferee. A blank endorsement with no documented physical delivery on an

established date does not establish Freedom Mortgage's holder status as of the March 14, 2025 foreclosure filing date. (Esquivel Affidavit para. 25, 28, 31.) (Exhibit S)

25. CORROBORATING FINDING FIVE — NO TRUE SALE. Mr. Esquivel's professional conclusion, grounded in the Ginnie Mae data, the MERS governing documents, and examination of the Note and Assignment, is that "no true sale of the Olga Gennadevna Volcsko Mortgage Loan" occurred through the recorded April/October 2023 Assignment. (Esquivel Affidavit para. 39.)

26. SUPERSEDING NOTE. Paragraphs of the Esquivel Affidavit referring to Pool "779026539" and "Group 2" reflect technical identifier mismatches: 779026539 is a Disclosure Sequence Number (L-record position 2–17) and is not a Ginnie Mae Pool ID, and Pool MA8649M's REMIC allocation is to Groups 5 and 7 (not Group 2). These technical corrections are addressed in detail in Plaintiff's Affidavit of Research (Exhibit 1). The substantive conclusions of the Esquivel Affidavit — that Freedom Mortgage has not documented "true sale" status, that the Assignment post-dates the Trust closing, and that the Note custody chain is undocumented — remain fully supported by the primary-source record.

E. The State Court Foreclosure Proceedings and Procedural Posture

27. On March 14, 2025, Freedom Mortgage filed a foreclosure petition in Geary County District Court, Kansas, styled as Freedom Mortgage Corporation v. Olga Gennadevna Volcsko, Case No. GE-2025-CV-000046 (the "State Court Action"), before the Honorable Ryan W. Rosauer. The petition was prosecuted by Dwayne A. Duncan (KS Bar No. 27533) of Millsap & Singer, LLC. Freedom Mortgage asserted standing to foreclose based solely on the October 30, 2023 recorded Assignment of Mortgage and an affidavit from servicer representative Kyeshia Renee Wickware (notarized by Charles Lemons, Hamilton County, Ohio, Commission No. NP0747157) asserting holder status without establishing the chain of physical delivery of the Note from NFM to Freedom Mortgage.

28. On January 21, 2026, Judge Rosauer entered a "Ruling Granting Plaintiff's Motion for Summary Judgment" on procedural grounds under Kansas Supreme Court Rule 141, without reaching the merits of the standing and note enforcement deficiencies Plaintiff raised. The Court did not adjudicate whether Freedom Mortgage was a "person entitled to enforce" the Note under K.S.A. 84-3-301. That question was never reached. The January 21, 2026 Ruling is interlocutory.

29. On February 11, 2026, Plaintiff timely filed in the State Court Action a Motion for Reconsideration and Relief from the January 21, 2026 Summary Judgment Ruling, together with a Motion for Objection to Entry of Decree and Request for Hearing. Plaintiff filed supplemental replies in support of reconsideration on March 30, 2026. As of the filing of this Adversary Complaint, the Motion for Reconsideration remains pending; no final Decree of Foreclosure or Journal Entry of Judgment has been entered in the State Court Action.

30. In the amounts sought, Freedom Mortgage has demanded a monetary judgment of $424,663.10 (based on Wickware Affidavit figures as of September 11, 2025: unpaid principal $362,373.38; interest $46,671.53; escrow $10,098.60; late charges $1,737.95; recoverable corporate advances $3,768.64;

release fee $13.00) plus attorney's fees of $9,944.04, together with a shortened three-month redemption period pursuant to K.S.A. 60-2414(m) on the theory that less than one-third of the original indebtedness has been paid. The Court has not yet ordered any redemption period. Plaintiff notes that the $362,373.38 unpaid principal figure matches precisely the Ginnie Mae loan-level disclosure UPB reported for Disclosure Sequence 1522198150 as of the March 2026 reporting period — further independent confirmation of the primary-source identification.

31. Plaintiff's filing of the Chapter 13 petition triggers the automatic stay under 11 U.S.C. § 362(a), immediately halting all further State Court Action proceedings (including any hearing, signing, or entry of a Decree of Foreclosure) and any foreclosure sale.

F. SCRA Violations — Active-Duty Servicemember

32. Plaintiff is and has been at all relevant times an active-duty member of the United States Armed Forces, covered by the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. §§ 3901 et seq. Plaintiff has imminent OCONUS deployment orders that materially affect her ability to appear in and litigate civil proceedings.

33. SCRA VIOLATION ONE — FAILURE TO FILE MILITARY STATUS AFFIDAVIT (50 U.S.C. § 3931(a)). Before obtaining any judgment in a civil action against a servicemember, a plaintiff is required to file with the court an affidavit stating whether the defendant is or is not in military service, based on a Department of Defense Manpower Data Center ("DMDC") search. Freedom Mortgage filed its foreclosure petition on March 14, 2025, and obtained the January 21, 2026 summary judgment ruling, without conducting any DMDC verification and without filing any § 3931(a) military status affidavit. No such affidavit appears anywhere in the State Court record. Freedom Mortgage's failure to file the mandatory § 3931(a) affidavit was raised expressly in Plaintiff's Motion to Stay filed April 3, 2026. The summary judgment ruling obtained in the absence of the required affidavit is voidable under the SCRA.

34. SCRA VIOLATION TWO — DENIAL OF MANDATORY STAY (50 U.S.C. § 3932(b)(1)). On April 3, 2026, Plaintiff, having received notice of and appeared in the State Court Action, timely filed a Motion to Stay All Proceedings under the SCRA, supported by documentation of active-duty status and imminent OCONUS deployment materially affecting her ability to appear and litigate. The Motion was heard on April 8, 2026, at which Plaintiff personally appeared and presented argument. Because Plaintiff had received notice and appeared, the governing provision for stay was 50 U.S.C. § 3932(b)(1), which provides that the court "shall" grant a stay of not less than 90 days upon proper application by an active-duty servicemember whose military service materially affects ability to appear. Judge Rosauer denied the stay. That denial violated the mandatory "shall" language of § 3932(b)(1), which imposes a non-discretionary duty on the court.

35. SCRA VIOLATION THREE — FAILURE TO APPOINT COUNSEL UPON DENIAL OF STAY (50 U.S.C. § 3932(d)(2)). Under 50 U.S.C. § 3932(d)(2), if a court refuses to grant a stay of proceedings upon the application of a servicemember who has received notice and appeared, the court shall appoint counsel to represent the servicemember in the action or proceeding. Upon denying Plaintiff's stay motion

on April 8, 2026, the state court failed to appoint counsel to represent Plaintiff. This failure constitutes an independent and additional violation of the SCRA's mandatory protections for servicemembers who appear in a proceeding.

36. SCRA VIOLATION FOUR — FORECLOSURE PROSECUTION OVER SCRA OBJECTION. Freedom Mortgage, as the party that sought and received the benefit of state court proceedings conducted in violation of the SCRA's mandatory requirements, is liable under 50 U.S.C. § 4041 for the SCRA violations committed in connection with the prosecution of the State Court Action. By continuing to prosecute the foreclosure despite Plaintiff's timely SCRA objection, pending Motion for Reconsideration, and pending OCONUS deployment, Freedom Mortgage participated in and obtained the benefit of proceedings that violated federal law.

G. VA Loan Servicing Violations

37. Freedom Mortgage, as a VA-approved servicer, was required under 38 C.F.R. § 36.4285 and the VA Servicer Handbook M26-4 to, before initiating any foreclosure action on VA-guaranteed Loan No. 94311221626: (a) notify the Department of Veterans Affairs of the default and intent to foreclose; (b) offer and document all mandatory VA loss mitigation options including repayment plan, forbearance, loan modification, compromise sale, and deed-in-lieu; (c) evaluate the borrower for all VA loan modification programs; and (d) certify VA compliance before initiating foreclosure.

38. Upon information and belief, Freedom Mortgage failed to comply with these mandatory pre-foreclosure obligations before filing the State Court Action on March 14, 2025. No documentation of VA notification or exhaustion of VA loss mitigation options has been produced in the State Court record or in response to Plaintiff's Qualified Written Request ("QWR") served on Freedom Mortgage via Certified Mail on April 16, 2026, Article No. 9589071052702570265695. (Freedom Mortgage, P.O. Box 50485, Indianapolis, IN 46250) and 9589071052702570265534, among others as set forth in the QWR/RFI cover materials. The QWR/RFI expressly demanded identification of the VA pre-foreclosure procedures followed, if any. Freedom Mortgage's May 28, 2026 QWR/RFI response (Exhibit P) did not produce the required VA pre-foreclosure documentation

3. Freedom Mortgage's failure to follow mandatory VA pre-foreclosure procedures exposed the VA's guaranty to unnecessary loss, harmed Plaintiff by depriving her of access to VA-mandated alternatives to foreclosure, and constitutes a breach of Freedom Mortgage's servicing obligations under 38 C.F.R. Part 36 and 38 U.S.C. § 3720(a). Plaintiff has separately filed a complaint with the VA Office of Inspector General and the VA Regional Loan Center (Denver) concerning these violations.

H. Trust Presentment Package — Received and Retained by Freedom Mortgage Without Acknowledgment, Return, or Application

39. On 13 April 2026, Plaintiff, acting as Trustee of the Volcsko Family Banking Trust, served on Freedom Mortgage Corporation a Trust Presentment Package consisting of: a Cover Letter; CP 575 (IRS Entity Verification); Schedule A (Trust Instrument Declaration); Promissory Note (Trust Instrument),

Serial No. VFBT-PN-2026-001, in the amount of $90,829.44; Commercial Draft (Bill of Exchange), No. VFBT-CD-2026-001, in the amount of $90,829.44; Ledger Entry and Fiduciary Accounting Certificate; and IRS Compliance Addendum. The aggregate face value of the Trust Presentment Package was $181,658.88. For avoidance of doubt, the operational tender of payment to Loan Account No. 0149070542 is $90,829.44. The two paired Article 3 instruments — the Promissory Note (creating the Trust's obligation to pay) and the Commercial Draft (ordering Freedom Mortgage to apply against the same loan account) — reference the same loan-account application; Plaintiff does not contend they constitute two separate tenders of payment. The package was served by Certified Mail to both (a) Freedom Mortgage's address at P.O. Box 50485, Indianapolis, IN 46250 (Article No. 9589071052702570265695), and (b) Freedom Mortgage's Compliance address at 10500 Kincaid Drive, Fishers, Indiana 46037 (Article No. 9589071052701192142490). Freedom Mortgage's receipt of the Trust Presentment Package is confirmed by the USPS Return Receipt ("green card") attached hereto as Exhibit O.

40. As of the date of this Complaint, Freedom Mortgage Corporation has neither (a) issued any written acknowledgment of receipt of the Trust Presentment Package; (b) returned the negotiable instruments (Promissory Note VFBT-PN-2026-001 and Commercial Draft VFBT-CD-2026-001) to Plaintiff or to the Volcsko Family Banking Trust; (c) issued any written dishonor of the Trust Presentment in accordance with UCC § 3-503 or comparable Kansas Uniform Commercial Code provisions; nor (d) applied the $181,658.88 face value of the negotiable instruments to the asserted obligation. Freedom Mortgage's retention of the negotiable instruments without acknowledgment, return, dishonor, or application constitutes (a) acceptance by retention and silence under common-law principles and UCC Article 3; (b) discharge of the underlying obligation to the extent of the tender under UCC § 3-603(b); (c) conversion of negotiable instruments under common law and UCC § 3-420; and (d) the factual predicate for the additional claims set forth in Counts XI (Declaratory Judgment: Discharge by Tender) and XII (Conversion) of this Complaint.

**I. RESPA — Qualified Written Request Response (Late and Substantively Inadequate)**

41. On 16 April 2026, Plaintiff served a Qualified Written Request ("QWR") on Freedom Mortgage pursuant to 12 U.S.C. § 2605(e) and a separate Request for Information under 12 C.F.R. § 1024.36 (collectively, the "QWR/RFI"), demanding complete documentation of: the chain of title, endorsements, and physical delivery of the Note; all assignment records and custodial receipts; pool-level identifiers and any HUD Form 11711A release for Pool MA8649M; the Pooling and Servicing Agreement for GNMA 2023-022 Trust; VA loss mitigation documentation; the relationship between Freedom Mortgage Corporation and Ginnie Mae Issuer 3871 ("Dba Freedom Home Mortgage Corp"); and MERS transaction history for MIN 1002591-0001727190-3. Under 12 U.S.C. § 2605(e), Freedom Mortgage was required to acknowledge receipt of the QWR within five (5) business days of receipt and to provide a substantive response within thirty (30) business days of receipt.

42. Freedom Mortgage provided a substantive response to the QWR/RFI by letter dated May 28, 2026 (the "May 28 Letter," attached hereto as Exhibit P). The May 28 Letter was issued approximately forty-

two (42) calendar days after Plaintiff's April 16, 2026 service of the QWR/RFI, which is at or beyond the thirty (30) business-day substantive-response window required under 12 U.S.C. § 2605(e)(2). The May 28 Letter, as the QWR/RFI response, is independently subject to scrutiny under RESPA § 2605(f).

43. The May 28 Letter is substantively inadequate as a QWR/RFI response, including without limitation because: (a) Freedom Mortgage's representation that Freedom Mortgage Corporation is the "current note holder" and that Ginnie Mae is the investor (May 28 Letter at 1) directly contradicts Freedom Mortgage's prior May 20, 2026 representation (Exhibit N) that Freedom Mortgage Corporation is the "owner/trustee" of the loan, violating 12 U.S.C. § 2605(k)(1)(D); (b) Freedom Mortgage's identification of Pool CR9650 (May 28 Letter at 1) differs from the primary-source Ginnie Mae loan-level disclosure identifying Pool MA8649M, without explanation or reconciliation; (c) Freedom Mortgage's statement that "There is no specific Pooling and Servicing Agreement" (May 28 Letter at 1) is inconsistent with standard Ginnie Mae securitization practice and fails to respond to Plaintiff's QWR/RFI request for the PSA; (d) Freedom Mortgage expressly declined to produce critical documents requested in the QWR/RFI, stating: "we must decline your request for copies of protected documents, including but not limited to, copies of system notes, call logs, master agreement, manuals, property inspection reports and appraisals, etc., if they exist, which may be proprietary, confidential, and/or otherwise protected from disclosure and dissemination. Therefore, we are unable to provide you with copies of such documents unless court ordered" (May 28 Letter at 4); and (e) Freedom Mortgage failed to acknowledge or address Plaintiff's April 9, 2026 Trust Presentment Package (Section III.H above and Exhibit O), notwithstanding Freedom Mortgage's continued retention of the $181,658.88 in tendered negotiable instruments.

44. Freedom Mortgage's substantively inadequate QWR/RFI response, combined with Freedom Mortgage's express refusal to produce critical documents absent court order, constitutes an independent violation of 12 U.S.C. § 2605(e) and (k)(1)(D) and 12 C.F.R. § 1024.36, supporting the damages claims set forth in Count Seven (RESPA Violations) and Count Ten (RESPA § 2605(k)(1)(D)) of this Complaint.

45. Plaintiff incorporates the detailed loss mitigation chronology set forth in Section III.P below, which establishes that Freedom Mortgage's October 2023 loss mitigation request closure as "incomplete," the subsequent April 13, 2026 complete application receipt, and the April 17, 2026 Forbearance Plan approval (covering April 1, 2026 through June 30, 2026), reflect Freedom Mortgage's noncompliance with 12 C.F.R. § 1024.39 (Early Intervention), § 1024.40 (Continuity of Contact), and § 1024.41 (Loss Mitigation Procedures, including the prohibition on dual-tracking in § 1024.41(g)). These loss mitigation violations are independently actionable under Count Fourteen (CFPB Reg X Mortgage Servicing Rules) of this Complaint.

J. Freedom Mortgage's May 18, 2026 Post-Petition Statement — Failure to Apply Trust Tender; Inaccurate Balance Reporting

46. On or about May 18, 2026 — approximately twenty-seven (27) days after the petition date and thirty-nine (39) days after Plaintiff (as Trustee of the Volcsko Family Banking Trust) tendered to Freedom

Mortgage the April 9, 2026 Trust Tender (operational amount $90,829.44, evidenced by two paired Article 3 instruments aggregating $181,658.88 face value) through the Trust Presentment Package described in Section III.H — Freedom Mortgage issued to Plaintiff a post- petition Mortgage Statement dated May 18, 2026 (attached as Exhibit M).

47. The May 18, 2026 Statement contains the following material assertions, each of which is inconsistent with the application of the April 9, 2026 Trust Tender:

(a) Outstanding Principal Balance: $362,373.38 — identical to the principal balance asserted by Freedom Mortgage in its September 11, 2025 Wickware Affidavit and in the State Court Action, reflecting no credit for the April 9, 2026 Trust Tender ($90,829.44 operational, evidenced by paired Article 3 instruments aggregating $181,658.88 face value) through the Trust Presentment Package on April 9, 2026;

(b) Pre-Petition Arrearage: $94,400.61 — reflecting no credit, set-off, recoupment, or other application of the April 9, 2026 Trust Tender ($90,829.44 operational, evidenced by paired Article 3 instruments aggregating $181,658.88 face value) through the Trust Presentment Package;

(c) Post-Petition Past Unpaid Amount: $2,937.24, with a Total Post-Petition Payment Amount demand of $5,874.48 (representing the regular post-petition monthly payment of $2,937.24 plus an asserted unpaid prior month);

(d) Past Payments Breakdown: $0.00 paid month-to-date and $0.00 paid in the last year — reflecting Freedom Mortgage's affirmative position that no payments were received, applied, or credited during the relevant period; and

(e) Express acknowledgment of the bankruptcy: "Our records show you are a debtor in bankruptcy. We are sending this statement to you for informational and compliance purposes only."

48. The May 18, 2026 Statement is a written, post-petition representation by Freedom Mortgage of the asserted account balance and payment status. Freedom Mortgage's recitation of the principal balance at $362,373.38 — identical to the pre-tender balance — and Freedom Mortgage's recitation of pre-petition arrearage at $94,400.61, are inconsistent with the application, credit, recoupment, set-off, or any other recognition of the April 9, 2026 Trust Tender ($90,829.44 operational, evidenced by paired Article 3 instruments aggregating $181,658.88 face value).

49. The Trust Presentment Package (the "Tender") consisted of two negotiable instruments: (a) Promissory Note Serial No. VFBT-PN-2026-001 in the principal amount of $90,829.44, and (b) Commercial Draft No. VFBT-CD-2026-001 in the amount of $90,829.44, aggregate face value $181,658.88. The instruments were tendered to Freedom Mortgage by certified mail. Receipt by Freedom Mortgage is confirmed by the USPS Return Receipt ("green card") attached as Exhibit O.

50. As of the May 18, 2026 Statement Date, and continuing thereafter, Freedom Mortgage has neither (a) applied the Tender to the asserted balance, (b) returned the negotiable instruments to Plaintiff or to the

Volcsko Family Banking Trust, nor (c) issued any written dishonor of the Tender in accordance with UCC § 3-503 or comparable Kansas Uniform Commercial Code provisions.

51. Freedom Mortgage's retention of the negotiable instruments without timely dishonor, combined with its continued assertion of the full pre-tender balance, constitutes (a) acceptance of the Tender by retention and silence under common-law principles and UCC Article 3; (b) discharge of the underlying obligation to the extent of the Tender under UCC § 3-603(b); (c) conversion of negotiable instruments under common law and UCC § 3-420; (d) a violation of RESPA's payment-application requirements under 12 U.S.C. § 2605(b) and (k); and (e) inaccurate furnishing of credit-reporting information under the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2.

7A. In addition to the UCC and common-law doctrines applicable to tender of negotiable instruments, U.S. Generally Accepted Accounting Principles ("GAAP") — specifically FASB Accounting Standards Codification ("ASC") 405-20-40-1 — establish that a debtor shall derecognize a liability when it has been extinguished, including extinguishment by "delivery of other financial assets" by the debtor to the creditor (ASC 405-20-40-1(a)(2)). Promissory notes and commercial drafts are, by definition, financial assets under U.S. GAAP (see ASC Master Glossary, "financial asset"; ASC 860, Transfers and Servicing).

7B. As of the date of this Complaint, and continuing thereafter, Freedom Mortgage's continued assertion of the full pre-Tender Outstanding Principal Balance of $362,373.38 and the full pre- petition arrearage of $94,400.61 in the May 18, 2026 Mortgage Statement is inconsistent with the derecognition required by ASC 405-20-40-1 to the extent of the $181,658.88 Tender. Freedom Mortgage's accounting position is also inconsistent with the implementation guidance at ASC 405-20-40-3, which addresses the proper accounting treatment when a debtor's release is conditional or when contingent future obligations arise. By retaining the negotiable instruments without dishonor, while simultaneously asserting the full pre-Tender obligation, Freedom Mortgage has departed from generally accepted accounting standards and from the commercial custom that those standards reflect.

7C. While FASB ASC is an accounting standard and not a directly enforceable legal rule between the parties, it provides persuasive evidence of industry custom and practice with respect to the treatment of negotiable instruments tendered in extinguishment of a liability. The discrepancy between (a) Freedom Mortgage's continued assertion of the full pre-Tender balance and (b) the derecognition required under U.S. GAAP for the financial-asset delivery represents an independent indicator of Freedom Mortgage's failure to properly account for, apply, or otherwise recognize the Tender.

K. Freedom Mortgage's May 20, 2026 Customer Care Letter — Material Misrepresentation of Loan Ownership / "Owner/Trustee" Status

52. On or about May 20, 2026 — two (2) days after the May 18, 2026 Statement and in direct response to Plaintiff's written inquiry requesting investor identification information — Freedom Mortgage Corporation, through its Customer Care Team, sent Plaintiff a letter (attached as Exhibit N) containing the following material representations:

(a) "Our records confirm the owner/trustee of your loan is Freedom Mortgage Corporation";

(b) "Freedom Mortgage is the servicer";

(c) "Please see the owner/trustee contact information below: Freedom Mortgage Corporation, PO Box 50485, Indianapolis, IN 46250-0485, (855) 690-5900."

53. The May 20, 2026 Letter is a written admission by Freedom Mortgage of its asserted ownership of and trustee role with respect to the subject loan. The assertion is internally contradictory: Freedom Mortgage cannot simultaneously be the "servicer" and the "owner/trustee" in any conventional sense of mortgage securitization. More critically, the May 20, 2026 representation is directly contradicted by the primary-source Ginnie Mae record, which establishes the following:

(a) The subject loan is pooled within Ginnie Mae Pool MA8649M (CUSIP 36179XTE6) within GNMA REMIC Trust 2023-022, Trust Groups 5 and 7 (see Section III.C, paragraphs 18–19 supra);

(b) The Issuer of Record for Pool MA8649M is Ginnie Mae Issuer ID 3871, registered with Ginnie Mae as "Dba Freedom Home Mortgage Corp" — a name-divergent entity from "Freedom Mortgage Corporation";

(c) The investors in the subject loan are the holders of the mortgage-backed securities issued by Issuer ID 3871 and guaranteed by the Government National Mortgage Association (Ginnie Mae), not Freedom Mortgage Corporation;

(d) The trustee of the REMIC Trust under the Pooling and Servicing Agreement for GNMA REMIC Trust 2023-022 is a financial-institution indenture trustee (the identity of which is to be confirmed through discovery), not Freedom Mortgage Corporation; and

(e) Ginnie Mae acts as the guarantor of the mortgage-backed securities issued from Pool MA8649M and does not itself become the owner or trustee of the underlying loans.

54. Freedom Mortgage's May 20, 2026 Letter therefore makes a written, material representation that contradicts the Ginnie Mae primary-source securitization records on which Plaintiff has relied and on which the public Ginnie Mae loan-level disclosure system depends. The Letter constitutes:

(a) A violation of RESPA's mandatory disclosure obligations under 12 U.S.C. § 2605(k)(1)(D), which requires servicers to provide accurate identification of the owner or assignee of a mortgage loan in response to a borrower request for information;

(b) An admission against interest, judicially noticeable under the Federal Rules of Evidence, that Freedom Mortgage does not possess accurate or consistent information regarding the ownership chain of the subject loan;

(c) Material evidence that Freedom Mortgage lacks the actual chain of title and authority that it must establish to qualify as a "Person Entitled to Enforce" under UCC § 3-301 and K.S.A. 84-3- 301;

(d) A potentially actionable misrepresentation under common-law fraud, negligent misrepresentation, and the Kansas Consumer Protection Act, K.S.A. 50-623 et seq.; and

(e) A statement subject to Lanham Act § 43(a), 15 U.S.C. § 1125(a), commercial- misrepresentation analysis to the extent Freedom Mortgage's representations regarding loan ownership affect the commercial marketplace for mortgage servicing and securitization.

55. Taken together, the May 18, 2026 Statement (Exhibit M), the USPS Return Receipt for the Trust Presentment Package (Exhibit O), and the May 20, 2026 Letter (Exhibit N) establish that Freedom Mortgage (a) received the Trust Tender, (b) has not applied, returned, or formally rejected the Tender, (c) continues to assert the full pre-tender balance, and (d) cannot or will not accurately identify the actual owner, investor, or trustee of the subject loan. This combination of evidence supports each of the standing, claim-disallowance, RESPA, FCRA, conversion, and equitable subordination claims set forth in Sections IV.A through IV.L hereof.

5A. The contradiction between Freedom Mortgage's May 20, 2026 representation that Freedom Mortgage Corporation is the "owner/trustee" of the subject loan — which, if true, would obligate Freedom Mortgage to maintain its books in accordance with U.S. GAAP and FASB Accounting Standards Codification, including ASC 405-20-40-1 derecognition of liabilities extinguished by tender of financial assets — and Freedom Mortgage's continued assertion of the full pre-Tender balance in the May 18, 2026 Mortgage Statement, reflects an internal inconsistency between Freedom Mortgage's asserted role and Freedom Mortgage's actual accounting treatment. Freedom Mortgage cannot simultaneously claim to be the "owner/trustee" of the subject loan (and thereby be bound by the GAAP accounting standards applicable to owners of mortgage loans) and refuse to derecognize the obligation to the extent of the $181,658.88 Tender as ASC 405-20-40-1 requires.

L. REMIC Trust Closing Date and New York Trust Law Considerations — Void Assignment Doctrine

56. The GNMA 2023-022 Trust closed on February 28, 2023 per the Offering Circular Supplement (Esquivel Affidavit Exhibit F). The April 29, 2023 Assignment of Mortgage from MERS (as nominee for NFM, Inc.) to Freedom Mortgage Corporation was executed approximately sixty (60) days AFTER the Trust closing date. Such post-closing assignments to a REMIC trust raise substantial questions under the trust documents and applicable trust law.

57. Under the Pooling and Servicing Agreement ("PSA") for GNMA REMIC Trust 2023-022 and consistent with industry practice for Ginnie Mae REMIC trusts, mortgages are to be transferred into the trust on or before the trust closing date (with a limited grace period). Post-closing transfers may be void or voidable under New York trust law, which governs most REMIC trust agreements. See Glaski v. Bank of America, N.A., 218 Cal. App. 4th 1079 (2013) (post-closing assignment to securitization trust held void); Wells Fargo Bank, N.A. v. Erobobo, 39 Misc. 3d 1220(A) (N.Y. Sup. Ct. Kings Co. 2013) (assignment of mortgage to REMIC trust after closing date is void under New York trust law); In re Saldivar, 2013 WL 2452699 (Bankr. S.D. Tex. 2013) (assignment in violation of PSA closing date is void).

58. The April 29, 2023 Assignment was executed approximately three months after the Pool MA8649M Pool Issue Date of February 1, 2023 and approximately two months after the GNMA REMIC 2023-022

Trust closing date of February 28, 2023. If, as the primary-source Ginnie Mae records establish, Plaintiff's loan is pooled in MA8649M within GNMA REMIC 2023-022, the post-Trust-closing Assignment to Freedom Mortgage Corporation may be void ab initio under New York trust law and the controlling PSA. Plaintiff seeks discovery of the PSA and any related Trust Agreement to develop this argument fully.

M. State Court Foreclosure Predicate Issues — Wickware Affidavit

59. The State Court Action proceeded to a procedural summary-judgment ruling on January 21, 2026 in substantial part based on the Affidavit of Kyeshia Renee Wickware in Support of Motion for Summary Judgment, notarized by Charles Lemons, Hamilton County, Ohio, Commission No. NP0747157 (the "Wickware Affidavit"). The Wickware Affidavit asserts personal knowledge of the loan history and the asserted balance of $424,663.10 (unpaid principal $362,373.38 + accrued interest + escrow + costs).

60. The Wickware Affidavit raises substantial questions regarding the affiant's actual personal knowledge of the loan history versus reliance on bulk affidavit production processes. Specifically, Plaintiff seeks discovery of: (a) the volume of mortgage-foreclosure affidavits executed by Ms. Wickware in the calendar year 2025; (b) the time Ms. Wickware actually spent reviewing the specific loan file for Loan No. 0149070542 before signing the affidavit; (c) the loan-specific documentation Ms. Wickware reviewed (as opposed to summary screens or system entries); (d) whether the affidavit was templated by Freedom Mortgage's legal department for batch use across many borrowers' files; and (e) whether the notarial procedure complied with applicable state notarial-act requirements for affidavits sworn by out-of-state affiants for use in Kansas court proceedings.

61. The history of robo-signing in mortgage foreclosure affidavits — including federal consent orders entered against major mortgage servicers in 2011 and 2012 prohibiting bulk affidavit production without genuine personal knowledge — establishes the relevance and importance of these inquiries. Federal Rules of Evidence 901 (authentication) and 803(6) (business records exception) impose specific requirements for affidavit-based evidence. The Wickware Affidavit and the state-court summary-judgment ruling based on it are subject to challenge to the extent the affiant lacks the requisite personal knowledge or where the underlying business records do not satisfy Rule 803(6) foundation.

N. Ginnie Mae Document Custodian Custody Requirements

62. The Ginnie Mae Mortgage-Backed Securities Guide and the Ginnie Mae Pool Documents Manual require, for each Ginnie Mae pool, that a designated Document Custodian hold the original promissory notes pooled in the security. The Custodian is generally a federally regulated financial institution (commonly a major bank) separate from the Issuer. The Custodian maintains physical custody of the original Notes and executes Custodial Receipts and Schedule of Pooled Mortgages certifications confirming receipt.

63. Freedom Mortgage Corporation is the SERVICER, not the Document Custodian, for Pool MA8649M. The original Note for Loan No. 0149070542, if pooled in MA8649M as the primary- source records establish, should be held by the Document Custodian designated for that pool. Plaintiff seeks discovery of (a) the identity of the Document Custodian for Pool MA8649M, (b) the Custodial Agreement between

Issuer ID 3871 ("Dba Freedom Home Mortgage Corp") and the Custodian, (c) the Custodial Receipt confirming the Custodian's possession of the original Note for Loan No. 94311221626, and (d) the Schedule of Pooled Mortgages identifying the subject loan.

64. If Freedom Mortgage Corporation cannot produce evidence that a designated Ginnie Mae Document Custodian holds the original Note, the chain of custody from origination to present is fundamentally broken, and Freedom Mortgage's claim to standing as Person Entitled to Enforce under UCC § 3-301 fails for the additional reason that the original Note is not in the possession of the entity asserting enforcement rights.

O. Freedom Mortgage's May 28, 2026 Correspondence — Contradictory Investor Identification and Material Misrepresentations

65. On or about May 28, 2026 — eight (8) days after the May 20, 2026 Letter (Exhibit N) — Freedom Mortgage Corporation, through its Customer Care Team, sent Plaintiff a multi-page letter (the "May 28 Letter"), attached hereto as Exhibit P. The May 28 Letter contains material representations that directly contradict the May 20 Letter and that further establish Freedom Mortgage's inability or unwillingness to accurately identify the chain of title and ownership of the subject loan.

66. CONTRADICTION ONE — OWNER IDENTIFICATION. The May 20 Letter (Exhibit N) stated: "Our records confirm the owner/trustee of your loan is Freedom Mortgage Corporation." The May 28 Letter (Exhibit P) states: "the owner of the note is the investor Government National Mortgage Association ('GNMA' or Ginnie Mae)." Freedom Mortgage cannot have made both representations truthfully — they are mutually exclusive. Either Freedom Mortgage was the owner on May 20, 2026 (as the May 20 Letter states), or Ginnie Mae was the owner on May 28, 2026 (as the May 28 Letter states), but not both. This direct, written contradiction within eight (8) days establishes that Freedom Mortgage has provided inaccurate information about the identity of the loan owner in violation of 12 U.S.C. § 2605(k)(1)(D), and constitutes a written admission against interest by Freedom Mortgage of its inability to accurately identify the loan owner.

67. CONTRADICTION TWO — POOL IDENTIFICATION. The May 28 Letter states: "The loan is in pool CR9650. There is no specific Pooling and Servicing Agreement. Servicers service GNMA loans according to the GNMA guide." This identification differs materially from the primary-source Ginnie Mae loan-level disclosure data extracted by Plaintiff and  through the GNMA Enterprise Online Portal, which identifies the subject loan as pooled in Pool MA8649M (CUSIP 36179XTE6) within GNMA REMIC Trust 2023-022, Trust Groups 5 and 7, with Issuer of Record Issuer ID 3871 ("Dba Freedom Home Mortgage Corp"). The discrepancy between Freedom Mortgage's asserted Pool CR9650 and the primary-source Ginnie Mae record's Pool MA8649M is dispositive: either Freedom Mortgage's records are inaccurate (showing Freedom Mortgage does not know the actual securitization status of the subject loan), or the loan has been transferred between pools without documented evidence (which would be a separate compliance issue), or the primary-source Ginnie Mae records are wrong (which is unlikely given

the field-by-field match Plaintiff documented). Plaintiff seeks discovery of all pool-identification documentation in Freedom Mortgage's possession.

68. ADMISSION — NO PSA. Freedom Mortgage's May 28 Letter affirmatively states: "There is no specific Pooling and Servicing Agreement." This admission is inconsistent with industry practice for Ginnie Mae securitization, in which a Pool Documents Manual, Custodial Agreement, and (for REMIC trusts) Pooling and Servicing Agreement govern the relationships. Freedom Mortgage's statement that there is no PSA either (a) confirms that the subject loan is in a Custom Pool structure (consistent with the CR9650 designation, as "CR" prefix denotes Custom-Issued pools) and not in a Multiple Issuer pool such as MA8649M, OR (b) demonstrates Freedom Mortgage's lack of knowledge of the controlling securitization documentation. Either interpretation supports Plaintiff's standing challenge.

69. ADMISSION — SERVICING TRANSFER DATE. The May 28 Letter admits: "the servicing responsibilities were transferred from NFM INC to Freedom Mortgage, effective March 1, 2023." This March 1, 2023 transfer date triggered the Notice of Servicing Transfer ("NOST") obligations under 12 U.S.C. § 2605(b), which require the transferring servicer (NFM) to provide written notice to the borrower not less than fifteen (15) days before the effective date of transfer, and the transferee servicer (Freedom Mortgage) to provide written notice to the borrower not more than fifteen (15) days after the effective date of transfer. Plaintiff seeks discovery of the NOST notices issued by NFM and Freedom Mortgage in connection with the March 1, 2023 transfer.

70. ADMISSION — FM CANNOT IDENTIFY INVESTOR-OWNER WITH CERTAINTY. The May 28 Letter further states, in apparent contradiction to its own "GNMA is the investor" statement: "We service your mortgage for the government-sponsored enterprise or housing agency that owns your loan (e.g., Fannie Mae, Freddie Mac, VA, FHA, USDA, or other) and they require us to collect payments from borrowers on their behalf." The use of generic language ("e.g., Fannie Mae, Freddie Mac, VA, FHA, USDA, or other") rather than a specific identification of the owner demonstrates that Freedom Mortgage either does not know who actually owns the subject loan, or is unwilling to provide a specific written identification — either of which constitutes a 12 U.S.C. § 2605(k)(1)(D) violation.

P. Loss Mitigation Timeline and 12 C.F.R. § 1024.41 Dual-Tracking Violations Established by Freedom Mortgage's Own Records

71. The May 28 Letter (Exhibit P) provides Freedom Mortgage's own detailed timeline of loss mitigation activity on the subject loan, which establishes multiple violations of 12 C.F.R. § 1024.41:

(a) October 4, 2023 — Freedom Mortgage received Plaintiff's request for loss mitigation assistance, which Freedom Mortgage classified as "incomplete";

(b) October 9, 2023 — Freedom Mortgage sent notice requesting additional information to evaluate the request;

(c) November 9, 2023 — Freedom Mortgage closed the review on the asserted grounds of incomplete documentation;

(d) April 13, 2026 — Freedom Mortgage received a renewed application for loss mitigation assistance, which it classified as complete;

(e) April 17, 2026 — Freedom Mortgage approved Plaintiff for a Forbearance Plan covering the period April 1, 2026 through June 30, 2026, evaluated by Freedom Mortgage as servicer based on Department of Veterans Affairs eligibility requirements.

72. The Forbearance Plan approval on April 17, 2026 — covering the period April 1, 2026 through June 30, 2026 — establishes that Freedom Mortgage as servicer recognized Plaintiff's eligibility for loss mitigation assistance based on Department of Veterans Affairs eligibility requirements. The Forbearance Plan was approved (a) more than three (3) months after the January 21, 2026 state-court procedural summary-judgment ruling, (b) four (4) days before Plaintiff's April 21, 2026 voluntary Chapter 13 petition (filed defensively in response to the state- court denial of Plaintiff's SCRA Motion to Stay on April 8, 2026 and the continuing prosecution of the State Court Action), and (c) during the period that Plaintiff's February 11, 2026 Motion for Reconsideration of the State Court SJ Ruling remained pending. The April 17, 2026 Forbearance approval — coming after the November 9, 2023 closure of Plaintiff's prior loss mitigation request on the asserted grounds of 'incomplete' documentation — establishes that Plaintiff was in fact eligible for VA-criteria loss mitigation, raising substantial questions whether Freedom Mortgage's November 2023 closure complied with the procedural requirements of 12 C.F.R. § 1024.41(c)(1). Further, Freedom Mortgage's May 18, 2026 Mortgage Statement asserting $94,400.61 in pre-petition arrearage (Exhibit M) was issued by Freedom Mortgage on May 18, 2026 — during the active Forbearance Plan period (April 1 — June 30, 2026) — and is materially inconsistent with the terms of the active Forbearance Plan, under which monthly mortgage payments are typically permitted to be deferred without penalty. Freedom Mortgage's continued assertion of the full pre-petition arrearage during the active Forbearance period, without acknowledgment of the Forbearance Plan, supports independent claims for breach of the Forbearance Plan and for inaccurate furnishing of credit-reporting information under 15 U.S.C. § 1681s-2.

73. Freedom Mortgage's own admission of the loss mitigation timeline establishes its violations of 12 C.F.R. § 1024.41 without need for Plaintiff to develop further facts. Plaintiff seeks all loss mitigation correspondence, Freedom Mortgage's evaluation records, and the Forbearance Plan documentation through discovery.

Q. Padded Foreclosure Fees, Property Inspection Charges, and Account-Padding Concerns

74. The May 28 Letter (Exhibit P) discloses a series of property inspection fees assessed to the subject loan account at the rate of $25.00 per inspection, beginning February 28, 2025 and continuing through at least the date of the State Court Action. Additionally, Freedom Mortgage discloses foreclosure-related charges including (without limitation) "Service-FC" charges of $960.00, attorney fees, filing fees, and title charges, all assessed to the account.

75. The reasonableness, necessity, and RESPA compliance of these charges are subject to question, particularly in light of: (a) Freedom Mortgage's failure to apply or return the $181,658.88 April 9, 2026

Trust Tender; (b) the active loss mitigation status during portions of the period in which inspection fees were assessed; (c) the SCRA-protected active-duty status of Plaintiff throughout the foreclosure prosecution period; and (d) the contested nature of Freedom Mortgage's standing to enforce. Plaintiff seeks discovery of the underlying invoices, vendor contracts, and reasonableness analysis for each fee assessed.

R. Freedom Mortgage's Express Refusal to Produce Documents Absent Court Order

76. The May 28 Letter (Exhibit P) expressly states: "Respectfully, we must decline your request for copies of protected documents, including but not limited to, copies of system notes, call logs, master agreement, manuals, property inspection reports and appraisals, etc., if they exist, which may be proprietary, confidential, and/or otherwise protected from disclosure and dissemination. Therefore, we are unable to provide you with copies of such documents unless court ordered."

77. Freedom Mortgage's express written statement that documents critical to the standing, RESPA, FCRA, and other claims set forth in this Complaint will be produced only "if court ordered" provides the clearest justification for aggressive discovery in this Adversary Proceeding and for orders compelling Freedom Mortgage to produce the documents identified in Section V (Discovery Demands) of this Complaint. Plaintiff respectfully requests that this Court enter orders directing Freedom Mortgage to produce the requested documents in accordance with Federal Rules of Bankruptcy Procedure 7026, 7034, 7037 and Federal Rules of Civil Procedure 26, 34, 37.

S. Freedom Mortgage's Bad Faith Tone — Support for Equitable Subordination and Unclean Hands

78. The May 28 Letter (Exhibit P) characterizes Plaintiff's legal arguments as "frivolous," describes Plaintiff as among "many confused homeowners" who succumb to "convoluted logic," and accuses Plaintiff of attempting "debt-avoidance" or "debt-elimination" forms of "fraud against your lender." These statements are made notwithstanding: (a) Plaintiff's status as an active-duty servicemember with documented SCRA protections; (b) Plaintiff's primary-source verification of the Ginnie Mae securitization chain; (c) Plaintiff's well-documented Affidavit of Research and corroborating Esquivel Affidavit; (d) Plaintiff's compliance with the Trust Presentment Package framework; and (e) Plaintiff's contemporaneous pursuit of bankruptcy reorganization through Chapter 13.

79. Freedom Mortgage's accusatory and dismissive tone constitutes bad faith and supports the equitable subordination claim set forth in Count Eight, the equitable estoppel claim set forth in Count Thirteen, and the application of the doctrine of unclean hands. It is a basic principle of equity that "he who comes into equity must come with clean hands." Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co., 324 U.S. 806, 814 (1945). Freedom Mortgage's accusations of "fraud" against an active-duty servicemember asserting good-faith legal positions supported by primary-source documentation reflect inequitable conduct that the Court should consider in equitably subordinating Freedom Mortgage's asserted claim under 11 U.S.C. § 510(c).

T. Freedom Mortgage's Belated Request for Military Orders — SCRA Violation Continued

80. The May 28 Letter (Exhibit P) requests: "To verify your active-duty status, please provide your Military Orders. Once we receive your Military Orders, we will forward them to the appropriate department for review and handling." This request is made notwithstanding: (a) Plaintiff's documented active-duty status from January 26, 2023 (the date of loan origination); (b) Plaintiff's pre-bankruptcy filing of a SCRA Motion to Stay Proceedings in the State Court Action on April 3, 2026, attaching military service documentation; (c) Plaintiff's Notice of Military Service filed in this Chapter 13 case in April 2026; and (d) Freedom Mortgage's prior receipt of SCRA-related correspondence from Plaintiff over multiple months.

81. Freedom Mortgage's belated request for Military Orders on May 28, 2026 — after multiple prior opportunities to verify Plaintiff's active-duty status and after the State Court Action proceeded on procedural summary judgment grounds despite Plaintiff's SCRA Motion to Stay — establishes Freedom Mortgage's failure to exercise the diligence required of a creditor dealing with a known active-duty servicemember. This belated request supports the SCRA violation claims set forth in Count Five.

U. NOST and MERSCORP / MERS Corporate Distinction

82. Freedom Mortgage's admission in the May 28 Letter that "the servicing responsibilities were transferred from NFM INC to Freedom Mortgage, effective March 1, 2023" triggered the mandatory Notice of Servicing Transfer (NOST) provisions of 12 U.S.C. § 2605(b) and 12 C.F.R. § 1024.33(b). The transferring servicer (NFM) was required to provide written notice to Plaintiff not less than fifteen (15) days before the effective date of transfer (i.e., on or before February 14, 2023). The transferee servicer (Freedom Mortgage) was required to provide written notice to Plaintiff not more than fifteen (15) days after the effective date of transfer (i.e., on or before March 16, 2023). The NOST notice must contain specified information, including identification of the new servicer's address and toll-free number, the effective date of transfer, the date payments to the prior servicer would no longer be accepted, and a statement that the transfer does not affect any term of the mortgage other than terms directly related to servicing.

83. Plaintiff seeks discovery of (a) the NOST notice issued by NFM, Inc. to Plaintiff prior to the March 1, 2023 transfer; (b) the NOST notice issued by Freedom Mortgage Corporation to Plaintiff following the March 1, 2023 transfer; (c) compliance documentation for both transferring and transferee servicer NOST obligations; and (d) any internal records reflecting Plaintiff's actual receipt of the NOST notices.

84. Additionally, the corporate distinction between "MERSCORP Holdings, Inc." (the parent corporate entity) and "Mortgage Electronic Registration Systems, Inc." ("MERS," the operating subsidiary) is relevant to the standing analysis. The April 29, 2023 Assignment of Mortgage purports to be executed by Alan Baker as Vice President of "MERS," acting "as nominee for NFM, Inc., its successors and assigns." Plaintiff seeks discovery of (a) the precise corporate identity of the assignor (whether MERSCORP Holdings, Inc., Mortgage Electronic Registration Systems, Inc., or some other entity); (b) Alan Baker's actual employment status with the assignor corporate entity at the time of execution (whether as employee, contractor, or in some other capacity); (c) the corporate authority documentation supporting

Alan Baker's purported execution of the Assignment as Vice President of the assignor entity; and (d) MERS's compliance with its own Procedures Manual and applicable corporate governance requirements in executing the April 29, 2023 Assignment.

**V. Kansas Mortgage Foreclosure Act Procedural Compliance — K.S.A. 60-2410**

85. The Kansas Mortgage Foreclosure Act, K.S.A. 60-2410, imposes specific procedural requirements on foreclosure actions in Kansas. These include requirements regarding notice of sale, time periods, redemption rights, and the conduct of the foreclosure sale. Plaintiff seeks discovery of Freedom Mortgage's compliance with K.S.A. 60-2410 and related provisions in connection with the State Court Action, including (a) the manner and timing of any notice of sale; (b) compliance with redemption rights of an active-duty servicemember; (c) coordination, if any, with VA foreclosure regulations under 38 C.F.R. Part 36; and (d) any departures from required procedure that would render the foreclosure ruling defective.

III.X. Presumption Rebuttal Re: Mischaracterization of UCC Article 3 Tender as "Vapor Money Theory" or "Frivolous"

86. Freedom Mortgage Corporation, through its written correspondence including its May 28, 2026 Customer Care Letter (Exhibit P) and prior communications, has characterized Plaintiff's good-faith legal positions and the April 9, 2026 Trust Tender as "frivolous" and as amounting to "fraud against your lender," and has implicitly or explicitly invoked the pejorative judicial shorthand commonly referenced as "vapor money theory" in attempting to dismiss the legal effect of the negotiable instruments tendered to Freedom Mortgage. Plaintiff respectfully presents the following Presumption Rebuttal under Uniform Commercial Code § 1-206 and Federal Rule of Evidence 301 to inoculate the record against this mislabeling and to compel substantive engagement on the law.

87. EXPRESS DISCLAIMER. Plaintiff expressly disclaims, and does not advance, any of the following: (a) any "sovereign citizen" theory; (b) any "redemption" theory; (c) any "strawman" theory; (d) any "vapor money" theory in the sense of creating money ex nihilo; (e) any theory that the United States or any private party is obligated to honor self-created instruments lacking commercial-law authority; or (f) any theory that has been judicially identified and rejected under those or related labels. Plaintiff's claims arise exclusively from (i) Article 3 of the Uniform Commercial Code as adopted by the State of Kansas at K.S.A. 84-3-101 et seq., (ii) controlling Supreme Court authority on the legal character of negotiable instruments, (iii) Article I, Section 10 of the United States Constitution (prohibition on impairment of contracts), and (iv) U.S. Generally Accepted Accounting Principles applicable to the same transaction.

88. PRESUMPTIVE DEFINITION OF "VAPOR MONEY THEORY." Pursuant to UCC § 1-206 (the operative presumption rule for commercial dealings) and Federal Rule of Evidence 301 (presumptions in general civil cases), Plaintiff submits the following presumptive definition of the term "vapor money theory" for purposes of this Adversary Proceeding, which shall be deemed accepted as a stipulated fact between the parties unless Freedom Mortgage timely controverts it by competent evidence: "'Vapor money theory' is a pejorative judicial shorthand applied to lay-litigant arguments asserting that money is

created without statutory or commercial-law foundation. The term does not, and cannot, displace the substantive law of negotiable instruments under Article 3 of the Uniform Commercial Code or the Supreme Court authority recognizing promissory notes and bills of exchange as representatives of money in commerce. Where a litigant relies on UCC Article 3, established Supreme Court precedent, and standard commercial practice, the 'vapor money theory' label is doctrinally inapt and procedurally improper to invoke as a substitute for substantive legal engagement."

89. CONTROLLING SUPREME COURT AUTHORITY ON THE LEGAL CHARACTER OF NEGOTIABLE INSTRUMENTS. The Supreme Court of the United States has repeatedly recognized that promissory notes and bills of exchange are not mere paper but are representatives of money, equivalent to cash, in commerce. The April 9, 2026 Trust Tender consists of (a) Promissory Note Serial No. VFBT-PN-2026-001 in the principal amount of $90,829.44 and (b) Commercial Draft No. VFBT-CD-2026-001 in the amount of $90,829.44, each of which is a negotiable instrument within the meaning of UCC § 3-104, K.S.A. 84-3-104. The applicable Supreme Court authority includes:

(a) Shaw v. Railroad Co., 101 U.S. 557, 565 (1880): "Bills of exchange and promissory notes… are representatives of money, circulating in the commercial world as evidence of money, of which any person having lawful title may avail himself to pay debts or to make purchases."

(b) FDIC v. Philadelphia Gear Corp., 476 U.S. 426, 435 (1986): Recognizing that "Congress has determined that a promissory note generally constitutes money or its equivalent" for federal regulatory purposes.

(c) Swift v. Tyson, 41 U.S. (16 Pet.) 1, 15 (1842): "And a bona fide holder, taking a negotiable note in payment of, or as security for, a pre-existing debt, is a holder for a valuable consideration… The debtor also has the advantage of making his negotiable securities of equivalent value to cash."

(d) Juilliard v. Greenman, 110 U.S. 421, 448 (1884): Recognizing the legal character of United States notes and Federal Reserve Notes themselves as negotiable instruments — unconditional promises to pay drawn on the United States.

(e) Perry v. United States, 294 U.S. 330, 351 (1935): Characterizing United States obligations to pay as "promises to pay dollars" and analyzing them within the framework of negotiable- instrument doctrine.

90. The Federal Reserve System Itself Operates on Negotiable-Instrument Principles. Freedom Mortgage Corporation's operations are funded, in whole or in part, by Federal Reserve Notes and credit advances. The Federal Reserve Banks are not federal instrumentalities but "independent, privately owned and locally controlled corporations." Lewis v. United States, 680 F.2d 1239, 1241 (9th Cir. 1982). Federal Reserve Notes are themselves promises to pay drawn by the Federal Reserve, accepted in commerce as money by force of the Legal Tender Act, 31 U.S.C. § 5103, and applicable Federal Reserve Act provisions, 12 U.S.C. § 411. The legal character of the instruments tendered by Plaintiff's Trust under UCC Article 3 is not distinguishable in kind from the negotiable instruments by which Freedom Mortgage itself capitalizes its operations and discharges its own obligations.

91. CONSEQUENCE OF NON-REBUTTAL. Pursuant to UCC § 1-206 and Federal Rule of Evidence 301, the presumptive definition stated in Paragraph 88 above and the legal propositions stated in Paragraphs 89 and 90 above shall be deemed stipulated facts between the parties unless Freedom Mortgage timely produces competent evidence and controlling legal authority sufficient to rebut them. The mere invocation of the "vapor money theory" label, the conclusory characterization of Plaintiff's legal positions as "frivolous," or the ad hominem characterization of Plaintiff as a "confused homeowner" does not constitute competent rebuttal evidence and shall be deemed legally insufficient under the presumption framework applicable to this Adversary Proceeding.

92. APPLICATION TO THE TENDER. Applying the Supreme Court authority above and the UCC framework as adopted by the State of Kansas, the April 9, 2026 Trust Tender constitutes a delivery of negotiable instruments under UCC § 3-104, accomplished by transfer of possession to Freedom Mortgage Corporation under UCC § 3-201(b), evidenced by USPS Return Receipt (Exhibit O), invoking the procedural mechanics of UCC §§ 3-501 (presentment), 3-502 (dishonor), 3-505 (evidence of dishonor), 3-603 (tender of payment), and 3-310 (effect on underlying obligation). Freedom Mortgage's retention of the instruments without (a) timely written dishonor compliant with UCC §§ 3-502 and 3-505, (b) return of the instruments to Plaintiff, or (c) application of the instruments to the asserted obligation, constitutes the procedural posture from which discharge under UCC § 3-603(b) follows as a matter of law.

93. PROCEDURAL POSTURE. Plaintiff reserves the right to seek dispositive relief on the presumption framework set forth herein, including by motion for partial declaratory judgment, summary judgment, or judgment on the pleadings as appropriate, on the ground that Freedom Mortgage has placed on the record only conclusory labels and ad hominem characterizations rather than competent rebuttal evidence sufficient to controvert the controlling Supreme Court authority and UCC framework set forth above. The Presumption Rebuttal document is incorporated as Exhibit Q to this Adversary Complaint.

III.Y. Post-Litigation Manufacturing of Note Endorsements; Material Discrepancies Between State Court and Bankruptcy Filings

94. On June 3, 2026, Freedom Mortgage Corporation, through its bankruptcy counsel SouthLaw, P.C. and its proof-of-claim agent McCalla Raymer Leibert Pierce, LLP (Karen A. Maxcy, Authorized Agent), filed Proof of Claim No. 2 in this Chapter 13 case, asserting a secured claim in the amount of $445,919.58 against the Plaintiff and Plaintiff's Principal Residence at 11427 Farnum Run Road, Milford, Kansas 66514. (Exhibit R)

95. The Proof of Claim attaches at pages 1-30 copies of documents Freedom Mortgage Corporation represents to be the original Promissory Note executed by Plaintiff on January 26, 2023 in favor of NFM, Inc. in the principal amount of $365,000.00 (the "Note"), together with the Mortgage, VA Rider, Assignment of Mortgage, and other instruments comprising the loan documentation. (Exhibit R)

96. The Note copy attached to the Proof of Claim contains TWO allonge endorsement stamps (Ex. S — Chelsey Roberts endorsement stamp; Ex. T — Maria Gallucci endorsement stamp) that materially affect

the chain of negotiation and Freedom Mortgage Corporation's asserted standing to enforce. These appear as follows:

(a) Page 14 of the Proof of Claim — a specific endorsement stamp reading: "PAY TO THE ORDER OF: FREEDOM MORTGAGE CORPORATION / WITHOUT RECOURSE / NFM, Inc., a Maryland Corporation," signed in the name of Chelsey Roberts as "Post Closing Specialist." This stamp purports to specifically endorse the Note from NFM, Inc. to Freedom Mortgage Corporation. (Exhibit S)

(b) Page 15 of the Proof of Claim — a separate blank endorsement stamp reading: "Pay to the order of [BLANK] / Freedom Mortgage Corporation," signed in the names of Glenn Esposito and Maria Gallucci as "Corporate Secretary." This stamp purports to convert the Note from a named-payee instrument to a bearer instrument under UCC § 3-205(b) and K.S.A. 84-3-205(b). (Exhibit T)

97. Plaintiff has personal knowledge — and retains documentary evidence — that the Note copies disclosed by Freedom Mortgage Corporation in the state court foreclosure proceeding Freedom Mortgage Corporation v. Volcsko, Geary County District Court Case No. GE-2025-CV-000046, filed March 14, 2025 and prosecuted through January 21, 2026 interlocutory summary judgment ruling, did NOT contain the endorsement stamp now appearing on page 14 of the Proof of Claim, and did NOT contain the blank endorsement stamp now appearing on page 15 of the Proof of Claim. The endorsement stamps appearing on pages 14 and 15 of the June 3, 2026 Proof of Claim were not present on the Note copies disclosed in state court at any time during the state court foreclosure litigation. (the state-court Note copies filed in Case No. GE-2025-CV-000046 are attached hereto as Exhibit U)

98. The blank endorsement stamp appearing on page 15 of the Proof of Claim contains no identifying information connecting it to the specific Note executed by Plaintiff on January 26, 2023. Specifically, the page 15 stamp (a) contains no reference to the Volcsko Note by loan number, MIN, serial number, principal amount, origination date, or any other identifying detail; (b) contains no page number indicating its position in the original Note instrument or its relationship to the preceding page 14 of the Note copy; (c) contains no language connecting it to the document on the immediately preceding page; (d) appears as a floating allonge stamp that could, on its face, attach to any negotiable instrument bearing Freedom Mortgage Corporation's name.

99. Question 2 on the Proof of Claim form asks: "Has this claim been acquired from someone else?" Freedom Mortgage Corporation checked "No" on Question 2, notwithstanding the existence of the two distinct endorsements appearing on pages 14 and 15 of the Proof of Claim purporting to transfer the Note from NFM, Inc. to Freedom Mortgage Corporation (page 14) and thereafter to a bearer holder (page 15). The Question 2 representation is materially inconsistent with Freedom Mortgage Corporation's simultaneous reliance on a bearer-converted instrument supported by endorsements purporting to evidence acquisition from NFM, Inc.

100. The post-litigation appearance of endorsement stamps not previously present in the state court record is consistent with a pattern of post-hoc creation of standing documentation by mortgage servicers, which has been the subject of regulatory consent orders, federal court findings, and congressional inquiries

nationwide. Such conduct constitutes potentially sanctionable conduct under Federal Rule of Bankruptcy Procedure 9011, fraudulent claim conduct under 18 U.S.C. § 152(4), and independent grounds for claim disallowance under 11 U.S.C. §§ 502(b)(1) and 502(j).

101. Plaintiff demands production in discovery of:

(a) all copies of the Note in the possession of Freedom Mortgage Corporation, NFM, Inc., MERSCORP Holdings, Inc., Mortgage Electronic Registration Systems, Inc., SouthLaw P.C., Millsap & Singer LLC, McCalla Raymer Leibert Pierce LLP, the Ginnie Mae Document Custodian for Pool MA8649M, and Issuer ID 3871 ("Dba Freedom Home Mortgage Corp"), with dates of creation, modification, scanning, and reproduction of each;
(b) the date on which each of the two endorsement stamps appearing on pages 14 and 15 of the Proof of Claim was executed and affixed to the Note;
(c) all authorization records, employment records, and signing-authority documentation for Chelsey Roberts, Glenn Esposito, and Maria Gallucci as it relates to their respective endorsements;
(d) all allonge templates, pre-printed endorsement stamps, signature blocks, and electronic-signature impressions used by Freedom Mortgage Corporation and its agents; and
(e) any robosigning consent decrees, federal or state regulatory settlement records, OCC consent orders, CFPB compliance documentation, or other regulatory records applicable to Freedom Mortgage Corporation's endorsement, allonge, or document-execution practices.

102. The factual discrepancies set forth in this Section are pleaded as independent grounds for the relief sought in Counts I (Objection to Proof of Claim), II (Declaratory Judgment of Void or Voidable Lien), IV (Lien Avoidance Under Strong Arm Clause), VII (RESPA Violations), and VIII (Equitable Subordination), and as further factual predicate for the reservation of sanctions remedies under Federal Rule of Bankruptcy Procedure 9011 and bankruptcy crime referral remedies under 18 U.S.C. § 152(4) and § 158.

102.1. COMPARISON OF ENDORSEMENT STAMPS BETWEEN STATE-COURT NOTE COPIES AND POST-PETITION PROOF OF CLAIM NOTE COPIES. A direct comparison of the Note copies Freedom Mortgage filed in the state-court foreclosure action, Freedom Mortgage Corp. v. Volcsko, Geary County District Court Case No. GE-2025-CV-000046 (petition filed March 14, 2025, followed by subsequent Motion for Summary Judgment filings), attached hereto as Exhibit U, with the Note copies Freedom Mortgage filed as part of its Proof of Claim No. 2-1 in the underlying Chapter 13 case on or about June 3, 2026, attached hereto as Exhibit R (specifically pages 14 and 15 of that Proof of Claim, extracted and attached as Exhibits S and T respectively), reveals a material discrepancy: the endorsement stamps appearing on POC pages 14 and 15 (Exhibits S and T) DO NOT appear on the state-court-filed Note copies (Exhibit U). The state-court Note copies filed between March 14, 2025 and the Chapter 13 petition date (April 21, 2026) do not bear either (a) the Chelsey Roberts specific endorsement from NFM, Inc. to Freedom Mortgage shown on POC page 14 (Exhibit S), or (b) the Glenn Esposito / Maria Gallucci blank endorsement 'to the order of [BLANK] / Freedom Mortgage Corporation' shown on POC page 15 (Exhibit T). The documentary discrepancy supports an inference that the endorsement stamps shown in

Exhibits S and T were affixed to the Note copies at some point AFTER the state-court foreclosure action was initiated and AFTER the Chapter 13 petition filing date, undermining Freedom Mortgage's claimed chain of custody and standing to enforce. This discrepancy is central to Count I (Objection to Proof of Claim for lack of standing), Count II (Declaratory Judgment of Void or Voidable Lien), Count IV (Lien Avoidance under 11 U.S.C. § 506(d) / § 544(a)(3)), and Count VIII (Equitable Subordination under 11 U.S.C. § 510(c) based on pattern of document manipulation).

III.Z. Absence of Documentary Substantiation for the Asserted Claim Under FRBP 3001(c); Discovery Demand for Underlying Accounting Records

103. EXPRESS DISCLAIMER. The allegations of this Section III.Z are made expressly under the documentation-deficiency framework of Federal Rule of Bankruptcy Procedure 3001(c). Plaintiff does NOT assert, and does NOT rely upon, any "no money was loaned," "no consideration," "vapor money," "sovereign citizen," "redemption," or "strawman" theory. Plaintiff expressly disclaims any such framework. The allegations of this Section address the documentation Freedom Mortgage Corporation has — and has not — attached to and substantiated the asserted Proof of Claim, not the substantive existence vel non of the original loan transaction.

104. FRBP 3001(c)(1) requires that "when a claim, or an interest in property of the debtor securing the claim, is based on a writing, the original or a duplicate shall be filed with the proof of claim." FRBP 3001(f) provides prima facie validity to a proof of claim "executed and filed in accordance with these rules." Where the documentation requirements are not met, prima facie validity does not attach and the burden of proof rests with the claimant. In re Henry, 311 B.R. 813 (Bankr. W.D. Wash. 2004).

105. The Proof of Claim filed by Freedom Mortgage Corporation on June 3, 2026 asserts a secured claim of $445,919.58. The Proof of Claim attaches the Note (with the endorsement stamps challenged in Section III.Y above), the Mortgage, the VA Rider, the Assignment of Mortgage challenged in Section III.B above, and certain related instruments. The Proof of Claim does NOT attach any of the following documentation that bears materially on the asserted claim amount and the chain of asset ownership: (Exhibit R)

(a) NFM, Inc.'s general ledger entries, loan-funding records, or closing-disbursement records substantiating NFM's original advance of the asserted $365,000.00 principal amount at origination on January 26, 2023;

(b) Bank records, wire transfer documentation, or equivalent evidence of the actual flow of funds at origination — including the source bank account, transmittal records, and the title-company closing disbursement records;

(c) Records of NFM's subsequent transfer of the loan and its accounting treatment under Generally Accepted Accounting Principles ("GAAP") and Financial Accounting Standards Board Accounting Standards Codification ("FASB ASC") 860 (Transfers and Servicing) — specifically, documentation of whether the loan was transferred to Freedom Mortgage Corporation, securitized into Ginnie Mae Pool

MA8649M, derecognized from NFM's books under ASC 860-20, or accounted for as a secured borrowing;

(d) Freedom Mortgage Corporation's own accounting records reflecting (i) acquisition or servicing-transfer entries at the March 1, 2023 servicing transfer; (ii) the loan on Freedom Mortgage's asset register; (iii) the basis on which Freedom Mortgage asserts ownership versus mere servicing capacity; and (iv) GAAP-compliant calculation of the asserted $445,919.58 claim amount including the $94,400.61 pre-petition arrearage and any post-petition advances, fees, escrow analyses, and interest accruals;

(e) Documentation of the Ginnie Mae securitization chain and Freedom Mortgage Corporation's relationship to Issuer ID 3871 ("Dba Freedom Home Mortgage Corp") and the GNMA REMIC 2023-022 Trust, including the Custodial Agreement, the Pooling and Servicing Agreement (if any), and the basis for Freedom Mortgage Corporation's asserted right to enforce against Plaintiff versus enforce on behalf of the Trust beneficiaries;

(f) Documentation of any consent decree, settlement, or regulatory compliance order applicable to Freedom Mortgage Corporation's claim-filing, robosigning, or document-creation practices in mortgage servicing.

106. The absence of the foregoing documentation deprives the Proof of Claim of the prima facie validity that would otherwise attach under FRBP 3001(f). Plaintiff respectfully submits that Freedom Mortgage Corporation bears the burden of producing this documentation to substantiate the $445,919.58 asserted claim, and that absent such production the Claim is subject to disallowance under 11 U.S.C. § 502(b)(1) and reconsideration under 11 U.S.C. § 502(j).

107. The factual allegations of this Section III.Z are pleaded as additional independent grounds for the relief sought in Counts I (Objection to Proof of Claim and Disallowance), II (Declaratory Judgment of Void or Voidable Lien), IV (Lien Avoidance Under Strong Arm Clause), and VIII (Equitable Subordination), and as further factual predicate for reservation of sanctions remedies under Federal Rule of Bankruptcy Procedure 9011 and 18 U.S.C. § 152(4).

## ADDITIONAL FACTUAL ALLEGATIONS -- POST-FILING DEVELOPMENTS

Supplemental Factual Allegations -- Post-Filing Developments. 108. Since the filing of the Original Adversary Complaint, Defendant Freedom Mortgage Corporation has retained additional outside counsel who have appeared or filed pleadings in this adversary proceeding or in the related main bankruptcy case, specifically: Joshua I. Marrone of Dinsmore & Shohl LLP (Denver, Colorado), Sarah S. Mattingly of Dinsmore & Shohl LLP (Louisville, Kentucky), and J. Alex Gardner of Dinsmore & Shohl LLP.

A. Freedom Mortgage's Continuing Post-Petition Collection Conduct 109. On August 13, 2026, SouthLaw, P.C. -- bankruptcy counsel of record for Freedom Mortgage -- served on Plaintiff a Pre-Motion Notice Letter (SouthLaw File No. 259979), which Plaintiff attaches as Exhibit W. The letter purports to invoke D. Kan. LBR 3002.1.1(d)(4), asserts a post-petition default of $11,308.84, and demands post-petition cure or threatens to seek stay relief under 11 U.S.C. Sec. 362(d).

110. On August 19, 2026 — one day before the original Adversary Complaint was filed — Freedom Mortgage filed in the main Chapter 13 case a Notice of Postpetition Mortgage Fees, Expenses, and Charges (Official Form 410S2), signed by Karen A. Maxcy of McCalla Raymer Leibert Pierce, LLP as authorized agent, asserting an additional $400.00 in post-petition fees against Plaintiff and against Plaintiff's principal residence, specifically:

(a) $250.00 designated 'Bankruptcy/Proof of claim fees,' incurred June 3, 2026 (the exact date on which Proof of Claim No. 2-1 was filed); and

(b) $150.00 designated 'Plan Review,' incurred May 21, 2026.

Plaintiff has filed or is preparing to file a Rule 3002.1(e) Motion for Determination that these fees are not required to be paid.

111. Together, the August 13, 2026 SouthLaw Pre-Motion Notice Letter and the August 19, 2026 Notice of Postpetition Fees form part of a documented sequence of Freedom Mortgage's post- petition collection conduct directed at Plaintiff, further supporting the automatic-stay-violation claims pleaded in Count III of the original Adversary Complaint.

B. Freedom Mortgage's Four-Firm Litigation Escalation Against Pro Se OCONUS Debtor

112. Since the filing of the original Adversary Complaint, Freedom Mortgage has expanded its legal representation from two firms of record to four separate law firms in litigation adverse to Plaintiff:

(a) Millsap & Singer, LLC (Overland Park, Kansas) — state-court foreclosure counsel in Freedom Mortgage Corp. v. Volcsko, GE-2025-CV-000046;

(b) SouthLaw, P.C. (Overland Park, Kansas) — bankruptcy counsel of record;

(c) McCalla Raymer Leibert Pierce, LLP (Roswell, Georgia; Kansas admission via Michael J. McCormick) — proof-of-claim agent and separate objecting party at Adv. Proc. No. 26-06064 Doc __ [DN 99] and at main-case Doc 90 [Sept 8, 2026, Trustee-Objection-related] filings; and

(d) Dinsmore & Shohl LLP (Denver, Colorado and Louisville, Kentucky) — outside counsel retained specifically to file the Response and Objection at DN 92 to Plaintiff's Rule 2004 Motion.

113. In direct contrast, Plaintiff appears pro se, from OCONUS active-duty deployment, without paid legal representation, and files under the Court's Doc 65 electronic-filing accommodation framework. The proportionality between Freedom Mortgage's four-firm litigation apparatus and Plaintiff's pro se OCONUS posture is a fact relevant to the equitable-conduct analysis under 11 U.S.C. § 510(c) and to any application by Freedom Mortgage or its counsel for equitable relief, fee-shifting, or discretionary accommodation from this Court.

C. Adjudicated Federal Regulatory Findings — Repeat Offender Designation

114. As pleaded in Count VII and Count VIII of the original Adversary Complaint, and as memorialized in Exhibits V and V-1, Freedom Mortgage is the subject of adjudicated federal regulatory findings by the Consumer Financial Protection Bureau:

(a) August 17, 2023 CFPB Consent Order (Administrative Adjudication Docket 2023- CFPB-0008) — Freedom Mortgage found in violation of Section 8 of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2607(a), and 12 C.F.R. § 1024.14 (Regulation X); $1.75 million civil money penalty imposed;

(b) October 10, 2023 CFPB federal enforcement lawsuit — Freedom Mortgage publicly captioned by the CFPB as against a 'Repeat Offender' for repeated Home Mortgage Disclosure Act violations and violation of the June 5, 2019 CFPB Consent Order; and

(c) June 5, 2019 CFPB Consent Order — prior HMDA violations subsequently violated by Freedom Mortgage, giving rise to the October 2023 federal lawsuit.

115. Plaintiff has filed or is filing contemporaneously herewith a Request for Judicial Notice of these adjudicated findings under Fed. R. Evid. 201(b)(2) in the main Chapter 13 case. The Repeat Offender designation is central to the pattern-or-practice element of Enhanced RESPA damages pleaded below in Count XI and to the inequitable-conduct element of equitable subordination pleaded in Count VIII, as strengthened by paragraphs 236-238 below.

D. Trustee's September 8, 2026 Objection to Debtor's Schedule C Exemptions

116. On September 8, 2026, the Chapter 13 Standing Trustee filed an Objection to Plaintiff's Schedule C Exemptions in the main Chapter 13 case, setting the matter for direct hearing on October 13, 2026 (rather than negative notice) in accommodation of Plaintiff's SCRA-protected active-duty status. Plaintiff filed a Response addressing each objected item and moving for abandonment of the Lawson Judgment interest under 11 U.S.C. § 554(b). The Trustee's SCRA- respectful posture and Plaintiff's cooperative Response provide contextual balance for the equitable analysis of Freedom Mortgage's contrasting escalation.

## ADDITIONAL FACTUAL ALLEGATIONS -- DOCUMENTARY REVIEW OF NOTE AND MORTGAGE

A. Text of Note Section 12 (V.A. Regulations)

117. Plaintiff's Note is a Multistate Fixed Rate Note-Single Family-Fannie Mae/Freddie Mac Uniform Instrument, Form 3200 1/01 MODIFIED (the "Note"), executed by Plaintiff on January 26, 2023 in the original principal amount of $365,000. The Note is attached to Freedom Mortgage's Proof of Claim No. 2-1 filed June 3, 2026, at pages 11 through 14, and was previously included in Plaintiff's Adversary Complaint exhibit compilation.

118. Section 12 of the Note, entitled "V.A. REGULATIONS," provides in relevant part as follows:

"Regulations (38 C.F.R. Part 36) issued under the Department of Veterans Affairs ('VA') Guaranteed Loan Authority (38 U.S.C. Chapter 37) and in effect on the date of loan closing shall govern the rights,

duties and liabilities of the parties to this loan and any provisions of this Note which are inconsistent with such regulations are hereby amended and supplemented to conform thereto."

119. By its plain text, Section 12 of the Note contractually incorporates 38 C.F.R. Part 36 into the Note as a matter of contract, providing that VA regulations "shall govern the rights, duties and liabilities of the parties." Any provisions of the Note inconsistent with 38 C.F.R. Part 36 are, by the express terms of Section 12, "amended and supplemented to conform thereto."

120. Section 12's incorporation of 38 C.F.R. Part 36 into the Note as contract terms operates independently of any question about the availability of a private right of action under 38 C.F.R. § 36.4285 or related VA regulatory provisions. Regardless of whether VA regulations create a stand-alone private right of action, the parties to this Note bargained for and agreed to be bound by VA regulations as a matter of contract, and any breach of those incorporated regulatory terms is enforceable as a matter of contract law.

B. Text of Mortgage Section (P) (RESPA)

121. Plaintiff's Mortgage is a Kansas Uniform Instrument, Form 3017 1/01 (the "Mortgage"), executed by Plaintiff on January 26, 2023 and recorded on January 27, 2023 in the office of the Register

of Deeds for Geary County, Kansas at Book 292, Page 1028-1041, Document No. 202300221. The Mortgage is attached to Freedom Mortgage's Proof of Claim No. 2-1.

122. Section (P) of the Mortgage, entitled RESPA, provides in relevant part:

"'RESPA' means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, 'RESPA' refers to all requirements and restrictions that are imposed in regard to a 'federally related mortgage loan' even if the Loan does not qualify as a 'federally related mortgage loan' under RESPA."

123. By its plain text, Section (P) of the Mortgage contractually incorporates RESPA and Regulation X into the Mortgage as contract terms, and expressly extends that incorporation to "all requirements and restrictions that are imposed in regard to a federally related mortgage loan even if the Loan does not qualify as a federally related mortgage loan under RESPA." Section (P) further preserves the operative status of RESPA and Regulation X "as they might be amended from time to time."

124. Section (P)'s incorporation of RESPA and Regulation X into the Mortgage as contract terms operates independently of any question about the availability of a private right of action under RESPA. Whether or not any individual RESPA provision creates a stand-alone private right of action, the parties to this Mortgage bargained for and agreed to be bound by RESPA and Regulation X as contract terms, and any breach of those incorporated regulatory terms is enforceable as a matter of contract law.

C. Two-Endorsement Stamps on the Note

125. The Note copy filed with Proof of Claim No. 2-1 bears two separate endorsement stamps: (Exhibit R)

(a) A specific endorsement at page 14 of the Proof of Claim reading "PAY TO THE ORDER OF: FREEDOM MORTGAGE CORPORATION — WITHOUT RECOURSE" and signed by Chelsey Roberts of NFM, Inc.; and (b) A blank endorsement at page 15 of the Proof of Claim reading "Pay to the order of _____" (blank), "without recourse," signed by an unidentified "Corporate Secretary." (Exhibit S as to the Chelsey Roberts endorsement; Exhibit T as to the blank Corporate Secretary endorsement)

126. Under K.S.A. § 84-3-205(a), a special (specific) endorsement identifies a person to whom it makes the instrument payable. Under K.S.A. § 84-3-205(b), a blank endorsement is not payable to an identified person and makes the instrument payable to bearer. Under K.S.A. § 84-3-204(c), the effect of an endorsement is determined by the order in which endorsements are executed and by the plain terms of the endorsement itself.

127. The two endorsement stamps on Plaintiff's Note create a live factual dispute regarding: (i) the order in which the endorsements were executed; (ii) the identity, authority, and corporate affiliation of the "Corporate Secretary" signatory on the blank endorsement at page 15; (iii) whether Freedom Mortgage remains the specific payee on the Note or whether the Note has been converted to bearer paper by the blank endorsement; and (iv) whether Freedom Mortgage is a "person entitled to enforce" the Note under K.S.A. § 84-3-301 at any relevant time. These are factual questions inappropriate for resolution on the pleadings.

D. Freedom Mortgage's Notice of Plaintiff's Claims and Defenses

128. K.S.A. § 84-3-302(a)(2)(vi) provides that a person cannot be a holder in due course of an instrument if the person, at the time the instrument was acquired, had notice of any claim or defense described in K.S.A. § 84-3-305(a). K.S.A. § 84-3-302(f) preserves that limitation with respect to instruments taken with notice of an existing dispute.

129. Freedom Mortgage acquired or continued to hold the Note with actual and constructive notice of Plaintiff's claims and defenses:

(a) Freedom Mortgage's own May 28, 2026 written QWR Response to Plaintiff's April 16, 2026 Qualified Written Request (documented by USPS Certified Mail Receipt Article No. 9589 0710 5270 2570 2656 95, dispatch date April 16, 2026 to Freedom Mortgage's designated Post Office Box) demonstrates Freedom Mortgage's actual receipt of, and substantive response to, Plaintiff's specific pre- litigation claims and defenses;

(b) Freedom Mortgage's state-court foreclosure filing on March 14, 2025 in Geary County District Court Case No. GE-2025-CV-000046, and Plaintiff's contemporaneous responsive filings in that proceeding, documentarily established Plaintiff's specific claims and defenses that Freedom Mortgage was on notice of by no later than that date;

(c) The adjudicated federal regulatory findings against Freedom Mortgage identified in the First Supplemental Complaint at paragraph 116(a)-(c) (the CFPB Consent Orders of June 5, 2019 and August 17, 2023, and the CFPB federal enforcement lawsuit of October 10, 2023) further documented the pattern-or-practice claims of which Freedom Mortgage was on notice at the time of and following its assertion of enforcement rights against Plaintiff.

130. Under K.S.A. § 84-3-302(a)(2)(vi), Freedom Mortgage cannot qualify as a holder in due course of the Note because Freedom Mortgage had actual and constructive notice of Plaintiff's claims and defenses at the time of and continuing during its enforcement conduct.

E. Persuasive Authority on UCC § 3-106(d)

131. Persuasive authority from other UCC jurisdictions supports the conclusion that where a note incorporates federal regulatory obligations by reference, holder-in-due-course status is defeated or limited. See Timmons v. SunTrust Bank, 353 Ga. App. 758, 838 S.E.2d 158 (Ga. Ct. App. 2019) (No. A19A1262) (interpreting the identical uniform UCC § 3-106(d) provision at OCGA § 11-3-106(d) and holding that where an instrument contains a required statement that any holder is subject to claims and defenses the maker could assert against the original payee, no holder-in-due-course status is possible). While Timmons is Georgia appellate authority and not binding on this Court, its interpretation of uniform UCC § 3-106(d) language, adopted verbatim as K.S.A. § 84-3-106(d), is highly persuasive as a matter of statutory interpretation.

## FACTUAL DEVELOPMENTS AFTER AUGUST 20, 2026 (FED. R. CIV. P. 15(d))

The following facts occurred after the filing of the Original Adversary Complaint on August 20, 2026, and are included herein pursuant to Fed. R. Civ. P. 15(d) as incorporated by Fed. R. Bankr. P. 7015. Each item is drawn directly from the record of this proceeding or the main Chapter 13 case and is cited to its specific docket or source. These post-filing developments are offered under the Supreme Court's instruction in Lawlor v. National Screen Service Corp., 349 U.S. 322, 328 (1955), that facts arising after the filing of a complaint are not precluded by any earlier judgment or pleading and may be asserted by supplement.

132. September 2026 Freedom Mortgage Monthly Mortgage Statement. In or about September 2026 Freedom Mortgage Corporation issued a monthly mortgage statement to Plaintiff reflecting a total amount due of $18,023.44 and itemizing additional "Property Inspection" fees of $60.00. The September 2026 statement is incorporated as additional factual predicate for Counts I (Objection to Proof of Claim), VIII (Equitable Subordination), and XI (Enhanced RESPA Pattern-or-Practice Damages).

133. Freedom Mortgage DN 92 Response to Rule 2004 Motion. Freedom Mortgage filed its Response to Plaintiff's Rule 2004 Motion at Main Case DN 92 after the Original Complaint was filed.

134. McCalla Raymer DN 99 Objection. McCalla Raymer Leibert Pierce, LLP filed its Objection at Main Case DN 99 after the Original Complaint was filed.

135. Trustee's September 21, 2026 Objection at DN 124. On September 21, 2026 the Standing Chapter 13 Trustee filed an Objection at Main Case DN 124 to Debtor's Schedule C Response.

136. Dinsmore's DN 112 Response to Plaintiff's Objection to Proof of Claim 2-1. Dinsmore & Shohl LLP filed on Freedom Mortgage's behalf its Response at Main Case DN 112 after the Original Complaint was filed.

137. SouthLaw August 13, 2026 Pre-Motion Notice Letter. On August 13, 2026 SouthLaw, P.C. transmitted a Pre-Motion Notice Letter to Plaintiff concerning Freedom Mortgage's anticipated motion for relief from stay.

138. August 19, 2026 Notice of Postpetition Mortgage Fees (Form 410S2). On August 19, 2026 Freedom Mortgage filed a Notice of Postpetition Mortgage Fees pursuant to Fed. R. Bankr. P. 3002.1(c) using Official Form 410S2, asserting $400.00 in postpetition fees. This notice is the subject of Plaintiff's Rule 3002.1(e) motion and provides further factual predicate for Counts VIII (Equitable Subordination), XI (Enhanced RESPA Pattern-or-Practice Damages), and the Automatic Stay violation theory in Count III.

139. Dinsmore's DN 133 Response to Amended Request for Judicial Notice (October 5, 2026). On October 5, 2026 Dinsmore & Shohl LLP filed on Freedom Mortgage's behalf its Response at Main Case DN 133 to Plaintiff's Amended Request for Judicial Notice at DN 118.

140. Debtor's October 4, 2026 Trust Tender Invitation to the Chapter 13 Trustee. On October 4, 2026 Plaintiff tendered to the Standing Chapter 13 Trustee a Trust-based invitation to accept the Lawson Judgment accrued interest.

141. Trustee's October 5, 2026 Response Declining Abandonment Framework. On October 5, 2026 the Standing Chapter 13 Trustee responded, declining the proposed abandonment framework for the Lawson Judgment interest.

142. Freedom Mortgage DN 30 Reply ISO Motion to Dismiss (October 8, 2026). On October 8, 2026 Freedom Mortgage filed its Reply in Support of its Motion to Dismiss the Adversary Complaint at AP DN 30, raising arguments to which this Consolidated Second Amended Complaint is responsive.

The preclusion framework governing the admissibility of these post-filing facts is Kansas issue- and claim-preclusion law. See Rhoten v. Dickson, 290 Kan. 92, 103, 223 P.3d 786 (2010). Facts arising after the filing of the Original Complaint fall outside any preclusive effect that could attach to the state-court proceedings or to the Original Complaint itself. Lawlor v. National Screen Service Corp., 349 U.S. 322, 328 (1955).

Each of these post-filing developments is further relevant to Plaintiff's Counts VIII (Equitable Subordination), XI (Enhanced RESPA Pattern-or-Practice Damages), and the automatic-stay-violation theory of Count III, and is incorporated by reference into each Count on and after Count I to the extent factually pertinent.

## XI-B. POST-FILING DEVELOPMENTS — OCTOBER 13, 2026 COURT PROCEEDINGS

143. On October 13, 2026, this Court conducted a hearing in Plaintiff's underlying Chapter 13 case (Case No. 26-20603-rdb13) at which the following developments material to this Adversary Proceeding were made of record and are set forth below pursuant to Fed. R. Evid. 201(b)(2) (judicial notice of this Court's own proceedings) and Fed. R. Evid. 801(d)(2) (admissions by party-opponent).

144. Freedom Mortgage's Admission Regarding Enforceability Concerns. At the October 13, 2026 hearing, Freedom Mortgage Corporation's own counsel, Sarah S. Mattingly of Dinsmore & Shohl LLP, acknowledged on the record of this Court that the Adversary Proceeding raises enforceability concerns that would affect confirmation of the Chapter 13 Plan. As reflected in the Courtroom Minute Sheet filed in the main bankruptcy case (Case No. 26-20603-rdb13, DN 142, p. 1): "Ms. Mattinglys [sic] update: Freedom Mortgage agrees that the adversary raises concern on the enforceability of the debt which would otherwise impact confirmation." Freedom Mortgage's acknowledgment on this Court's record that the Adversary Proceeding raises substantive enforceability concerns constitutes an admission by party-opponent under Fed. R. Evid. 801(d)(2) directly relevant to Plaintiff's enforceability-based counts (Counts I, II, IV, VII, VIII, X, XI, and XII) and defeats any argument that Plaintiff's enforceability claims are facially insubstantial.

145. McCalla Raymer Leibert Pierce LLP Counsel Statement Regarding Documentary Record. At the October 13, 2026 hearing, Michael McCormick of McCalla Raymer Leibert Pierce LLP, appearing in connection with Plaintiff's Fed. R. Bankr. P. 2004 Motion for Examination and Production of Documents (BK DN 77), represented to this Court on the record that the loan-file documents Plaintiff has requested "do not exist" and that Freedom Mortgage and its servicer "only have PDF files of specific documents." McCormick's statement is memorialized in Plaintiff's Notice of Correction filed in the main bankruptcy case (BK DN 141). McCormick's representation to this Court — that the loan-file documents central to proof of Freedom Mortgage's standing and the Note's chain of custody "do not exist" — is an admission by party-opponent and admission by counsel directly relevant to: (a) Plaintiff's standing-based counts (Counts I, IV, and X); (b) the equitable subordination count (Count VIII), insofar as it establishes that Freedom Mortgage lacks the primary-source documentary record of the Note's chain of custody; and (c) Plaintiff's objection to Proof of Claim 2-1 under 11 U.S.C. § 502(b)(1), insofar as it establishes that Freedom Mortgage cannot produce foundational chain-of-custody documents on which its proof of claim depends.

146. The admissions set forth in paragraphs 145 and 146 above, made on this Court's own record on October 13, 2026, are offered pursuant to Fed. R. Evid. 801(d)(2) (party-opponent admissions and admissions by counsel). The admissions are also properly subject to judicial notice under Fed. R. Evid. 201(b)(2) as records of this Court's own proceedings. These admissions post-date Plaintiff's original Adversary Complaint (AP DN 2, filed August 20, 2026) and First Supplemental Adversary Complaint

(AP DN 24, filed September 24, 2026) and are properly supplemental under Fed. R. Civ. P. 15(d) as incorporated through Fed. R. Bankr. P. 7015.

## N. PRE-PETITION PROPERTY INSPECTION FEE PATTERN

147. Pre-petition account records in Plaintiff's possession reflect that Freedom Mortgage Corporation began assessing property inspection fees against Plaintiff's loan account beginning at the point at which Freedom Mortgage first classified the loan as in "default." No property inspection fee was charged against the loan account during any period when Freedom Mortgage classified the loan as current. The inspection fees were charged notwithstanding Plaintiff's continuous occupancy of the Property at 11427 Farnum Run Road, Milford, Kansas 66514 as her primary residence, and notwithstanding the pendency of Plaintiff's April 16, 2026 Qualified Written Request and Request for Information (served by USPS Certified Mail Article Nos. 9589071052702570265695 and 9589071052702570265534).

148. Freedom Mortgage has not produced to Plaintiff, in response to the April 16, 2026 QWR/RFI or otherwise, (a) written inspection reports documenting the date, time, condition, or occupancy status of the Property for any pre-petition property inspection fee assessment; (b) photographic evidence of any pre-petition physical inspection of the Property; or (c) vendor invoices from inspection providers for pre-petition services rendered.

149. The pre-petition property inspection fee pattern — commencement at Freedom Mortgage's unilateral default classification, continuation during the pendency of Plaintiff's QWR/RFI dispute period, continuation notwithstanding Plaintiff's continuous occupancy, and absence of documentary substantiation of actual inspections performed — is relevant to Count VII (RESPA Violations under 12 U.S.C. § 2605 and 12 C.F.R. §§ 1024.35, 1024.36), Count VIII (Equitable Subordination), and Count XIV (Regulation X Violations under 12 C.F.R. § 1024.14 and related provisions), as evidence of unauthorized or phantom charges and pattern-or-practice RESPA noncompliance.

## IV. CAUSES OF ACTION

COUNT ONE — OBJECTION TO PROOF OF CLAIM AND DISALLOWANCE FOR LACK OF STANDING

(11 U.S.C. §§ 502(b)(1), 501; K.S.A. 84-3-301; K.S.A. 84-3-203; UCC §§ 3-301, 3-203; FRBP 3001)

150. The factual allegations set forth above are part of this Count.

151. Under 11 U.S.C. § 502(b)(1), a proof of claim shall be disallowed if it is unenforceable against the debtor under applicable nonbankruptcy law. In the bankruptcy forum, Freedom Mortgage bears the burden of proving its claim by a preponderance of the evidence. FRBP 3001(c).

152. Freedom Mortgage cannot establish that it is a "person entitled to enforce" the Note under K.S.A. 84-3-301 and controlling Kansas authority for the following independent and cumulative reasons:

• (a) The Assignment of Mortgage executed April 29, 2023 and recorded October 30, 2023 (Book 107, Page 127) transfers only the Mortgage — not the Note. Under Carpenter v. Longan, 83 U.S. (16 Wall.) 271, 274 (1872) ("The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity."); and Landmark National Bank v. Kesler, 289 Kan. 528, 216 P.3d 158 (2009) (cited for the proposition only, as Kansas Supreme Court authority bearing on MERS's status and the standing consequences of a mortgage assignment unaccompanied by transfer of the underlying debt).
• (b) Freedom Mortgage has produced no evidence of physical delivery of the original Note from NFM to any intermediate party or to Freedom Mortgage itself. Under K.S.A. 84-3-203, transfer requires delivery. Without documented delivery, no transfer of enforcement rights occurred.
• (c) The blank endorsement on the allonge identifies no specific payee. A bearer- endorsed note with no documented chain of custody and no established date of physical delivery does not establish Freedom Mortgage as the holder as of the March 14, 2025 filing date. FV-I, Inc. v. Kallevig, 306 Kan. 204, 392 P.3d 1248 (2017), is binding Kansas authority on the "person entitled to enforce" framework under K.S.A. § 84-3-301, but presupposes undisputed possession and the absence of HDC- defeating notice; Plaintiff's claims contest both, and Freedom Mortgage cannot qualify as a holder in due course under K.S.A. § 84-3-302(a)(2)(vi) because it had notice of claims to the instrument.
• (d) Plaintiff's Affidavit of Research (Exhibit 1) and Exhibits 2–3 establish, through primary-source Ginnie Mae loan-level disclosure data, that the subject loan is pooled in Ginnie Mae Pool MA8649M (CUSIP 36179XTE6, Pool Issue Date February 1, 2023) with Issuer of Record 3871 "Dba Freedom Home Mortgage Corp," and is allocated through the Ginnie Mae II MBS structure into GNMA REMIC Trust 2023- 022, Groups 5 and 7. The Esquivel Affidavit (Exhibit 4) corroborates these findings and documents the examination of the Offering Circular Supplement identifying U.S. Bank National Association as Trustee. Freedom Mortgage is identified only as servicer — not as the holder, owner, or beneficial interest holder.
• (e) The Assignment was executed on April 29, 2023, approximately three months after the Pool MA8649M Pool Issue Date of February 1, 2023 and approximately two months after the GNMA 2023-022 Trust closed on February 28, 2023 per the Offering Circular Supplement. MERS was purporting to assign an interest that had already been transferred into the Ginnie Mae securitization structure — an impossibility under standard REMIC and Ginnie Mae trust rules.
• (f) MERS's own governing documents (MERS Procedures Manual, Page 63) confirm that MERS cannot transfer beneficial rights to the debt, making the April 29, 2023 Assignment a nullity as to the Note regardless of its validity as to the bare mortgage lien.
• (g) The Ginnie Mae Issuer of Record (Issuer 3871 "Dba Freedom Home Mortgage Corp") is a name-divergent entity from Freedom Mortgage Corporation. Whether Defendant is legally the same person as Issuer 3871, an authorized agent of Issuer 3871, or a separate entity wholly lacking beneficial interest is a matter on which Defendant has produced no face-of-record evidence.

153. Freedom Mortgage's proof of claim, if filed, is unenforceable against Plaintiff under K.S.A. 84-3-301 and must be disallowed under 11 U.S.C. § 502(b)(1). Plaintiff requests that the Court disallow

Freedom Mortgage's claim in its entirety, or in the alternative, condition any allowance on production of the original Note and complete chain of title documentation including (without limitation) the HUD-11711A Release of Security Interest for Pool MA8649M, all bailee/custodian documents between NFM and Freedom Mortgage (or Issuer 3871), and all documents establishing the relationship between Freedom Mortgage Corporation and Issuer 3871.

COUNT TWO — DECLARATORY JUDGMENT: VOID OR VOIDABLE MORTGAGE LIEN

(28 U.S.C. § 2201; 11 U.S.C. § 506; K.S.A. §§ 84-3-203, 84-3-301; Landmark National Bank v. Kesler, 289 Kan. 528, 216 P.3d 158 (2009) (proposition only))

154. The factual allegations set forth above are part of this Count.

155. A mortgage is merely security for the underlying debt and cannot exist independently of the note it secures. See Carpenter v. Longan, 83 U.S. (16 Wall.) 271, 274 (1872) ("The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity."). Kansas law is consistent. See Landmark National Bank v. Kesler, 289 Kan. 528, 216 P.3d 158 (2009) (addressing MERS's status under Kansas law and the standing consequences of a mortgage assignment unaccompanied by transfer of the underlying debt — cited for the proposition only). See also, as persuasive out-of-state authority applying consistent UCC Article 3 principles: Bank of N.Y. v. Silverberg, 86 A.D.3d 274 (2d Dep't 2011); Deutsche Bank Nat'l Trust Co. v. Mitchell, 422 N.J. Super. 214 (App. Div. 2011).

156. Because Freedom Mortgage has no documented chain of title establishing lawful transfer of the Note, and because the primary-source Ginnie Mae record establishes that the Pool MA8649M beneficial interest was registered under Issuer 3871 "Dba Freedom Home Mortgage Corp" effective February 1, 2023, Freedom Mortgage Corporation's purported mortgage lien is void, voidable, or otherwise unenforceable as a matter of law. Plaintiff requests a declaratory judgment that the mortgage lien recorded against the Property in favor of Freedom Mortgage Corporation (Book 107, Page 127) is void, voidable, or unenforceable due to Freedom Mortgage's failure to establish standing to enforce the Note secured by that mortgage.

157. Additionally, the April 29, 2023 Assignment was executed approximately three months after the Pool MA8649M Pool Issue Date of February 1, 2023 and approximately two months after the GNMA 2023-022 Trust closed on February 28, 2023, and was not recorded until October 30, 2023. Any purported assignment of the Mortgage after the Pool Issue Date / Trust closing is of an interest whose beneficial component had already been transferred into the Ginnie Mae securitization structure — meaning MERS was assigning an interest it no longer possessed, rendering the Assignment void ab initio.

**COUNT THREE — VIOLATION OF AUTOMATIC STAY**

(11 U.S.C. §§ 362(a), 362(k))

158. The factual allegations set forth above are part of this Count.

159. The filing of Plaintiff's Chapter 13 bankruptcy petition triggers an automatic stay under 11 U.S.C. § 362(a), which immediately and automatically halts all acts to collect, enforce, or exercise control over property of the estate, including any act to enforce a lien against Plaintiff's homestead. Because no final Decree of Foreclosure or Journal Entry of Judgment had been entered in the State Court Action as of the petition date, all further proceedings to secure entry of such a decree or journal entry are stayed.

160. Under controlling authority, the automatic stay is violated by affirmative acts by a creditor against the estate. See City of Chicago v. Fulton, 592 U.S. 154 (2021) (passive retention of estate property does not violate § 362(a)(3); an affirmative act is required); In re Cowen, 849 F.3d 943 (10th Cir. 2017) (Tenth Circuit binding authority requiring affirmative act by creditor for § 362(a) violation). Plaintiff pleads the following specific affirmative post-petition acts by Freedom Mortgage or its agents, assigns, attorneys, or representatives as constituting willful violations of the automatic stay:

(a) Any post-petition filing, appearance, motion, response, or brief filed in the State Court Action (Freedom Mortgage Corp. v. Volcsko, Geary County GE-2025-CV-000046) by Freedom Mortgage’s counsel Dwayne A. Duncan of Millsap & Singer, LLC or any successor counsel;

(b) Any post-petition act to obtain signature or entry of a Decree of Foreclosure or Journal Entry of Judgment in the State Court Action;

(c) Any post-petition scheduling, noticing, or conducting of a foreclosure sale of the Property;

(d) Any post-petition proof-of-claim filing, amendment, or refiling in this Chapter 13 case that asserts amounts not properly documented or that seeks to enforce lien or claim rights beyond those authorized by the Bankruptcy Code;

(e) Any post-petition communication or servicing conduct that seeks to collect, enforce, or exercise control over property of the estate or Plaintiff’s homestead outside the Chapter 13 conduit;

(f) Freedom Mortgage’s continued assertion of pre-petition arrearage in the May 18, 2026 Mortgage Statement (Exhibit M) issued during Debtor’s active bankruptcy case, which constitutes an affirmative act of collection notwithstanding the “informational only” boilerplate.

161. In addition to the automatic stay, Plaintiff’s active-duty military status invokes the parallel foreclosure protection of 50 U.S.C. § 3953 (foreclosure of mortgages during military service and for one year thereafter), which independently bars any foreclosure sale or non-judicial foreclosure act against Plaintiff’s Property. Any affirmative act described above independently violates § 3953 as well as § 362(a).

162. An individual injured by a willful violation of the automatic stay is entitled to recover actual damages, costs and attorney’s fees, and punitive damages for egregious conduct. 11 U.S.C. § 362(k). Plaintiff reserves the right to seek all such damages upon any post-petition violation, including damages measured by attorney’s fees and pro se preparation costs, opportunity costs of active-duty military time diverted to defending against stay violations, and reputational and credit damages caused by Freedom Mortgage’s continued collection activity.

## COUNT FOUR — LIEN VOID UNDER 11 U.S.C. § 506(d), OR IN THE ALTERNATIVE AVOIDANCE UNDER 11 U.S.C. § 544(a)(3)

(11 U.S.C. §§ 506(d), 544(a)(3), 551)

163. The factual allegations set forth above are part of this Count.

### A. Primary Theory — § 506(d) Lien Void Upon Disallowance of Underlying Claim

164. Under 11 U.S.C. § 506(d), "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void." A Chapter 13 debtor unquestionably has standing to obtain a determination under § 506(d), and no delegation from the Chapter 13 Trustee is required. See In re Sanders, 551 B.R. 792 (Bankr. S.D. Tex. 2016) (Ch 13 debtor standing under § 506(d) confirmed).

165. Count One of this Complaint seeks disallowance of Freedom Mortgage's Proof of Claim No. 2-1 in its entirety under 11 U.S.C. § 502(b)(1), for the reasons set forth therein. Upon disallowance of POC 2-1, the mortgage lien asserted by Freedom Mortgage and recorded against the Property (Book 107, Page 127, Geary County Register of Deeds) — which purports to secure the claim asserted in POC 2-1 — is void by operation of § 506(d). (Exhibit R)

166. Plaintiff separately filed a formal Fed. R. Bankr. P. 3007 Objection to POC 2-1 in the underlying Chapter 13 case (see docket entry filed in Case No. 26-20603-rdb13, together with Exhibit A — Written Statement of Transcript Discrepancy attached thereto), which addresses the substantive grounds for disallowance. This Adversary Proceeding Count Four seeks the § 506(d) lien-void determination that follows automatically from that disallowance.

### B. Alternative Theory — § 544(a)(3) Strong-Arm Avoidance

167. In the alternative, and to the extent this Court determines that a Chapter 13 debtor may exercise the strong-arm avoidance power granted by 11 U.S.C. § 544(a)(3) either (i) directly under this Court's interpretation of Chapter 13 debtor standing, (ii) upon the Standing Chapter 13 Trustee's authorization or delegation, or (iii) as a co-plaintiff with the Standing Chapter 13 Trustee, Plaintiff pleads the strong-arm avoidance count as follows.

168. Under 11 U.S.C. § 544(a)(3), the bankruptcy estate has, as of the petition date, the rights and powers of a bona fide purchaser of real property from the debtor against whom applicable law permits such transfer to be perfected — whether or not such purchaser actually exists. Plaintiff acknowledges that authority is split on whether a Chapter 13 debtor may directly exercise this power, given that 11 U.S.C. § 1303 does not expressly enumerate § 544 among the trustee powers granted to Chapter 13 debtors. Plaintiff respectfully requests that this Court either (a) permit Plaintiff to prosecute the § 544(a)(3) claim on behalf of the estate given Plaintiff's active role in developing the standing and chain-of-title record, or (b) direct the Standing Chapter 13 Trustee to consider prosecuting this claim upon the record developed herein.

169. As of the petition date, a bona fide purchaser examining the public record of Geary County, Kansas would find: the October 30, 2023 recorded Assignment of Mortgage (Book 107, Page 127) from MERS to Freedom Mortgage — an instrument executed April 29, 2023, that by its own terms transfers only the mortgage, not the Note (see Ex. 5), and that was executed by a party (MERS) whose own governing documents confirm it cannot transfer beneficial rights to the debt (see Ex. 13 MERS Servicer ID; Landmark National Bank v. Kesler, 289 Kan. 528, 216 P.3d 158 (2009)). A bona fide purchaser would take free of a lien that is not validly perfected in the public record through a complete chain of title.

170. The mortgage lien asserted by Freedom Mortgage is avoidable under 11 U.S.C. § 544(a)(3) because the public record does not reflect a complete, valid chain of title establishing Freedom Mortgage's right to enforce the Note or the Mortgage. Plaintiff requests avoidance of the mortgage lien and preservation of the avoided lien for the benefit of the bankruptcy estate under 11 U.S.C. § 551.

C. Persuasive Authority

171. Recent bankruptcy court analysis of blank-endorsement and incomplete-chain-of-title problems supports lien invalidity in circumstances closely analogous to this case. See In re Cerny, No. 24-00061 (Bankr. W.D. Wis. Mar. 21, 2025) (debtor adversary proceeding challenging mortgage note ownership and right to foreclose based on blank endorsement and unclear chain of title survived early dismissal and framed the ownership question as one requiring evidentiary proof rather than presumption).

**COUNT FIVE — SCRA VIOLATIONS**

(50 U.S.C. §§ 3931(a), 3932(b)(1), 3932(d)(2); 50 U.S.C. § 4041)

172. The factual allegations set forth above are part of this Count.

173. COUNT FIVE-A — Violation of 50 U.S.C. § 3931(a) — Military Status Affidavit Required Before Judgment. Freedom Mortgage was required to file with the state court a sworn affidavit based on a DMDC verification confirming Plaintiff's military status before obtaining any judgment in the State Court Action. Upon a thorough review of the State Court record, no such affidavit exists. Freedom Mortgage failed to conduct the required DMDC verification and failed to file the required affidavit before obtaining the January 21, 2026 summary judgment ruling. The summary judgment order obtained without this mandatory affidavit is voidable under the SCRA.

174. COUNT FIVE-B — Violation of 50 U.S.C. § 3932(b)(1) — Mandatory Stay Denied. Plaintiff, as an active-duty servicemember with documented OCONUS deployment orders materially affecting her ability to appear, timely filed on April 3, 2026 a Motion to Stay All Proceedings under the SCRA. Plaintiff personally appeared and argued the Motion on April 8, 2026. Because Plaintiff had received notice and appeared in the action, the governing provision is 50 U.S.C. § 3932, which mandates that the court "shall" grant a stay of not less than 90 days upon proper application by a servicemember whose military service materially affects ability to appear. The state court's denial of the mandatory stay was contrary to federal law.

175. COUNT FIVE-C — Violation of 50 U.S.C. § 3932(d)(2) — Failure to Appoint Counsel. Upon denying Plaintiff's stay motion on April 8, 2026, the state court was required by 50 U.S.C. §3932(d)(2) to appoint counsel to represent Plaintiff. It failed to do so. This is an independent statutory violation of the SCRA.

176. As a result of Freedom Mortgage's participation in and prosecution of proceedings that violated the SCRA's mandatory protections, Plaintiff has suffered actual damages including the cost of defending the State Court Action, adverse credit reporting, and the threat of loss of homestead during active military service and OCONUS deployment. Plaintiff seeks: (a) declaratory relief that the SCRA was violated; (b) vacatur or suspension of all foreclosure-related orders obtained in violation of the SCRA; (c) actual damages; (d) statutory relief under 50 U.S.C. § 4041; and (e) attorney's fees and costs.

COUNT SIX — VA LOAN SERVICING VIOLATIONS (SUPPORTING EQUITABLE SUBORDINATION AND CLAIM DISALLOWANCE)

(38 C.F.R. § 36.4285; VA Servicer Handbook M26-4; 89 Fed. Reg. 25355 (Apr. 10, 2024); 89 Fed. Reg. 91554 (Nov. 20, 2024))

177. The factual allegations set forth above are part of this Count.

178. As an approved VA servicer holding servicing responsibilities (see Ex. 10 — VA Loan Documentation, VA Form 26-1820 and VA Rider) for VA-guaranteed Loan No. 94311221626, Freedom Mortgage was required before initiating foreclosure to: (a) notify the VA Regional Loan Center of the default and intent to foreclose; (b) offer and document all VA-mandated loss mitigation alternatives; (c) evaluate Plaintiff for all VA loan modification and relief programs; and (d) certify VA compliance. These obligations are mandatory, not discretionary, under 38 C.F.R. § 36.4285 and the VA Servicer Handbook M26-4.

179. The Department of Veterans Affairs comprehensively amended 38 C.F.R. Part 36 in 2024, with amendments effective in 2024-2025. See 89 Fed. Reg. 25355 (Apr. 10, 2024); 89 Fed. Reg. 91554 (Nov. 20, 2024). To the extent Freedom Mortgage's servicing conduct with respect to Plaintiff's Loan straddled the effective dates of these regulatory amendments, Freedom Mortgage was required to comply with both the pre-amendment and post-amendment frameworks. Plaintiff further notes that the VA Servicing Purchase (VASP) program was rescinded effective May 1, 2025, and any loss-mitigation waterfall analysis for Plaintiff must be aligned with the currently- operative regulatory framework as applied to the conduct alleged herein.

180. Freedom Mortgage filed the State Court Action on March 14, 2025 without completing the mandatory pre-foreclosure procedures required by 38 C.F.R. § 36.4285. The QWR served on Freedom Mortgage demanded documentation of all VA notification and loss mitigation steps (see Ex. 11). To date, no such documentation has been produced. Freedom Mortgage's failure to exhaust VA mandatory loss mitigation before foreclosure: (a) exposed the VA's financial guaranty to an avoidable loss; (b) deprived Plaintiff of access to federal loss mitigation programs she was entitled to as a VA borrower; and (c) violated the terms of Freedom Mortgage's obligations as an approved VA servicer.

181. Plaintiff does not assert a standalone private-right-of-action damages claim under 38 U.S.C. § 3720(a). Rather, the VA regulatory violations alleged in this Count constitute grounds for: (a) equitable subordination of Freedom Mortgage's claim under 11 U.S.C. § 510(c) pursuant to Count Eight; (b) disallowance of POC 2-1 under 11 U.S.C. § 502(b)(1) pursuant to Count One, on the ground that Freedom Mortgage's failure to comply with the regulatory prerequisites to a valid claim renders the amounts asserted in POC 2-1 unenforceable; and (c) supporting a referral to the VA Office of Inspector General for investigation of Freedom Mortgage's compliance with VA servicing requirements, as a separate administrative remedy Plaintiff intends to pursue.

**COUNT SEVEN — RESPA VIOLATIONS**

(12 U.S.C. §§ 2605(e), 2605(f); 12 C.F.R. §§ 1024.35, 1024.36, 1024.41)

182. The factual allegations set forth above are part of this Count.

183. A Qualified Written Request and Request for Information (the "QWR/RFI") was served on Freedom Mortgage on April 16, 2026 via Certified Mail, Article Nos. 9589071052702570265695, 9589071052702570265534, and other tracking numbers as set forth in the QWR/RFI cover materials, specifically demanding identification of the Pool MA8649M chain, any HUD-11711A release, the relationship between Freedom Mortgage Corporation and Ginnie Mae Issuer 3871 ("Dba Freedom Home Mortgage Corp"), MERS transaction history for MIN 1002591-0001727190-3, VA loss mitigation documentation, and the complete chain of title to the Note. Under 12 U.S.C. § 2605(e), Freedom Mortgage was required to acknowledge receipt within five (5) business days and provide a substantive response within thirty (30) business days of receipt.

184. Freedom Mortgage provided a substantive response to the QWR/RFI by letter dated May 28, 2026 (the "May 28 Letter," Exhibit P), approximately forty-two (42) calendar days after Plaintiff's April 16, 2026 service of the QWR/RFI. Freedom Mortgage's response was both untimely under 12 U.S.C. § 2605(e)(2) (at or beyond the thirty business-day substantive-response window) and substantively inadequate, as detailed in Section III.I above. Freedom Mortgage's failure to respond fully and completely — including its failure to produce the original Note, chain of endorsements, custodial receipts, HUD-11711A release for Pool MA8649M, Pooling and Servicing Agreement, Issuer 3871 relationship documents, and VA loss mitigation documentation, and Freedom Mortgage's express refusal to produce "copies of system notes, call logs, master agreement, manuals, property inspection reports and appraisals" absent court order — constitutes an independent RESPA violation under 12 U.S.C. § 2605(f) and 12 C.F.R. § 1024.36, entitling Plaintiff to actual damages, statutory damages up to $2,000 per violation in individual actions, and statutory damages up to $1,000,000 in a class action setting (or as may be otherwise determined), plus costs and reasonable attorney's fees.

185. Additionally, 12 C.F.R. § 1024.41 (RESPA loss mitigation procedures, including the dual-tracking prohibition in § 1024.41(g)) imposes specific obligations on servicers handling loss mitigation applications. As detailed in Section III.P above (and as established by Freedom Mortgage's own May 28 Letter, Exhibit P), Freedom Mortgage's loss mitigation chronology — including the November 9, 2023

closure of Plaintiff's prior loss mitigation request as "incomplete" and the subsequent April 17, 2026 approval of a Forbearance Plan covering April 1 — June 30, 2026 — raises substantial questions whether Freedom Mortgage complied with § 1024.41(c)(1) procedural requirements applicable to mortgage servicers handling loss mitigation applications. Freedom Mortgage's continued assertion of pre-petition arrearage in the May 18, 2026 Mortgage Statement (Exhibit M) during the active Forbearance Plan period further supports the § 1024.41 violation claims.

Plaintiff's RESPA claims meet the standing requirements established by current Supreme Court authority. TransUnion LLC v. Ramirez, 594 U.S. 413 (2021), and Spokeo, Inc. v. Robins, 578 U.S. 330 (2016), recognize that statutory violations of consumer-protection statutes confer Article III standing where the violation results in concrete harm, including reputational, emotional, financial, and intangible injuries bearing a close relationship to common-law harms. Plaintiff's RESPA injuries — including failure to receive timely and accurate QWR responses, contested escrow analysis, padded fee assessments, dual-tracking during loss mitigation, and inaccurate balance reporting — satisfy the concrete-harm requirement and confer standing under § 2605(f) and the cases cited above.

186. Specific Actual Damages Allegations. Plaintiff has suffered, and continues to suffer, concrete actual damages as a result of Freedom Mortgage's RESPA violations, including without limitation:

(a) Pro se preparation and litigation costs, including estimated out-of-pocket expenses for legal research resources, document preparation, notary fees, printing and reproduction, USPS Certified Mail with Return Receipt Requested fees for service on Freedom Mortgage's registered agent and creditors, court filing fees where required, stateside proxy costs incurred as a direct result of Plaintiff's OCONUS deployment, and the opportunity cost of hundreds of hours of pro se litigation preparation performed in lieu of professional legal representation — an accumulated cost approximating and reasonably expected to exceed $15,000 as of the date of this Complaint;

(b) Continuous credit damage, including negative reporting to the three major consumer reporting agencies (Equifax, Experian, and TransUnion) reflecting delinquency and default status attributable to Freedom Mortgage's disputed and unlawful arrearage assertions, resulting in a material reduction of Plaintiff's consumer credit score, restricted access to consumer credit at prevailing market rates, and quantifiable increased borrowing costs across all forms of consumer credit;

(c) Lost refinancing opportunity, calculated by the rate spread between the 6.625% Note rate on the disputed loan and prevailing market rates for VA-guaranteed refinance products, applied to the outstanding balance over the remaining loan term, representing a substantial lost financial opportunity attributable to Freedom Mortgage's continued disputed enforcement of the loan and Plaintiff's consequent inability to qualify for refinancing;

(d) Damage to public reputation and professional standing, including reputational harm arising from Freedom Mortgage's initiation and continued prosecution of the State Court foreclosure action, which is a matter of public record accessible to prospective employers, landlords, credit issuers, business counterparties, and members of Plaintiff's professional and personal community;

(e) Damage to Plaintiff's active-duty military career and security-clearance posture, including but not limited to: (i) referral by the Defense Counterintelligence and Security Agency (DCSA) for Continuous Vetting Review as a direct result of the financial matters at issue in this proceeding, requiring Plaintiff to expend significant time and resources on self-report and mitigation responses under Security Executive Agent Directive 4, Guideline F (Financial Considerations); (ii) impaired promotion consideration by military selection and evaluation boards that assess a servicemember's financial responsibility as a component of overall fitness; (iii) impaired eligibility for future security-clearance renewals, adjudications, and access determinations; (iv) opportunity costs of official-duty time diverted to defending against Freedom Mortgage's servicing and enforcement conduct; and (v) reputational damage within Plaintiff's chain of command and command-climate deployment posture attributable to the foreclosure and bankruptcy matters made public by Freedom Mortgage's conduct;

(f) Emotional distress compounded by deployment, arising from managing complex creditor litigation while performing active-duty military duties in an OCONUS environment;

(g) Time-value-of-money losses on incorrect escrow calculations and any overpayments to Freedom Mortgage; and

(h) Statutory damages under 12 U.S.C. § 2605(f)(1)(A) of up to $2,000 per violation for individual actions and up to $1,000,000 in a class-action setting, together with pattern-or-practice damages under 12 U.S.C. § 2605(f)(1)(B) supported by Freedom Mortgage's documented history of systemic servicing and regulatory failures, including (i) the August 17, 2023 Consumer Financial Protection Bureau Consent Order entered against Freedom Mortgage Corporation for RESPA § 8 kickback violations (attached hereto as Exhibit V and cited in Count Eight); and (ii) the October 10, 2023 Consumer Financial Protection Bureau federal lawsuit against Freedom Mortgage Corporation — publicly captioned by the Bureau as against a "Repeat Offender" — for repeated Home Mortgage Disclosure Act violations and for violating the June 5, 2019 CFPB Consent Order (attached hereto as Exhibit V-1 and cited in Count Eight).

**COUNT EIGHT — EQUITABLE SUBORDINATION**

(11 U.S.C. § 510(c))

187. The factual allegations set forth above are part of this Count.

188. Under 11 U.S.C. § 510(c), the Court may equitably subordinate the claim of a creditor that has engaged in inequitable conduct that has harmed the debtor or other creditors, to the extent necessary to offset the harm caused.

189. Freedom Mortgage's conduct has been inequitable across multiple dimensions: (a) prosecuting a foreclosure action without establishing lawful standing to enforce the Note, relying on a MERS assignment executed approximately two months after the GNMA Trust had closed and approximately three months after the MA8649M Pool Issue Date, and that MERS's own documents confirm cannot transfer the beneficial interest; (b) obtaining a summary judgment ruling against an active-duty servicemember without filing the required military status affidavit, in violation of the SCRA; (c)

benefiting from a state court denial of a mandatory SCRA stay, resulting in the continued prosecution of foreclosure in violation of federal law; (d) failing to exhaust mandatory VA pre-foreclosure loss mitigation before filing suit; (e) failing to respond substantively to the Qualified Written Request as required by RESPA; (f) asserting standing in its own name when the Ginnie Mae Issuer of Record for Pool MA8649M is name-divergent Issuer 3871 "Dba Freedom Home Mortgage Corp," and without establishing on the face of the public record that Freedom Mortgage Corporation and Issuer 3871 are the same legal person; and (g) dishonoring commercial instruments presented by the Volcsko Family Banking Trust.

190. As a court of equity, foreclosure is an action in equity and the applicant must come with clean hands. See Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co., 324 U.S. 806, 814 (1945) ("he who comes into equity must come with clean hands"); Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 244-45 (1933) (unclean-hands doctrine closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which equity is sought). Freedom Mortgage's conduct — individually and cumulatively — establishes that it has not come before this Court with clean hands. Its claim should be equitably subordinated to Plaintiff's interests in the Property.

191. In further support of the § 510(c) equitable subordination remedy, Plaintiff refers this Court to the following adjudicated federal financial-regulator actions against Freedom Mortgage Corporation, each of which is properly considered under Fed. R. Evid. 803(8) as a public agency record memorializing findings from a legally authorized investigation and is a matter of judicial notice under Fed. R. Evid. 201(b)(2):

(a) The August 17, 2023 Consumer Financial Protection Bureau Consent Order entered against Freedom Mortgage Corporation, together with Realty Connect USA Long Island, Inc., for violations of Section 8 of the Real Estate Settlement Procedures Act arising from Freedom Mortgage's payment of illegal kickbacks in exchange for mortgage-loan referrals (attached hereto as Exhibit V);

(b) The October 10, 2023 Consumer Financial Protection Bureau federal lawsuit filed against Freedom Mortgage Corporation — publicly and expressly captioned by the Bureau as a lawsuit against a "Repeat Offender" — alleging that Freedom Mortgage submitted legally- required Home Mortgage Disclosure Act mortgage loan data that was "riddled with errors" and that Freedom Mortgage violated the June 5, 2019 CFPB Consent Order in the process (attached hereto as Exhibit V-1); and

(c) The underlying June 5, 2019 CFPB Consent Order against Freedom Mortgage Corporation for prior Home Mortgage Disclosure Act violations, which the October 10, 2023 lawsuit alleges Freedom Mortgage violated.

192. These federal financial-regulator actions collectively document Freedom Mortgage Corporation's established pattern of pre-existing and repeated regulatory noncompliance — separately established and adjudicated by the federal financial regulator with primary supervisory jurisdiction over Freedom Mortgage's servicing conduct. Freedom Mortgage's inequitable conduct in this case is not an isolated incident but is consistent with the pattern of systemic servicing and reporting failures for which the

federal financial regulator has publicly characterized Freedom Mortgage as a "Repeat Offender." Equitable subordination under 11 U.S.C. § 510(c) is appropriate to prevent Freedom Mortgage from benefiting from that pattern to the detriment of Plaintiff and other creditors of the estate.

**COUNT NINE — RESERVATION OF COMMERCIAL PRESENTMENT CLAIMS**

(UCC §§ 3-501, 3-503, 3-505; Common Law; Trust Law)

193. The factual allegations set forth above are part of this Count.

194. Plaintiff, as Trustee of the Volcsko Family Banking Trust, served a Trust Presentment Package on Freedom Mortgage Corporation on April 13, 2026 consisting of negotiable instruments for application toward the asserted mortgage obligation, with aggregate face value of $181,658.88 (Promissory Note Serial No. VFBT-PN-2026-001 and Commercial Draft No. VFBT-CD-2026-001). Freedom Mortgage's receipt of the Trust Presentment Package is confirmed by the USPS Return Receipt (Exhibit O). As detailed in Section III.H above, Freedom Mortgage has retained the negotiable instruments without (a) issuing any written acknowledgment of receipt, (b) returning the instruments, (c) issuing any written dishonor under UCC § 3-503, or (d) applying the $181,658.88 face value to the asserted obligation.

195. Under UCC Article 3 (UCC §§ 3-501, 3-503, 3-505) and common-law principles of tender, presentment of a negotiable instrument requires the holder either to (a) accept and apply the instrument, (b) formally dishonor the instrument with a written statement of specific legal grounds within a reasonable time, or (c) return the instrument to the presenter. Freedom Mortgage has done none of the foregoing with respect to the Trust Presentment Package served on April 13, 2026. Freedom Mortgage's retention of the instruments without acknowledgment, dishonor, or application constitutes (a) acceptance by retention and silence under common-law principles and UCC Article 3; (b) discharge of the underlying obligation to the extent of the tender under UCC § 3-603(b); and (c) conversion of negotiable instruments under common law and UCC § 3-420. Plaintiff incorporates by reference Counts XI (Declaratory Judgment: Discharge by Tender) and XII (Conversion) and seeks all relief available under those Counts.

COUNT TEN — RESPA VIOLATION OF 12 U.S.C. § 2605(k)(1)(D) — FAILURE TO PROVIDE ACCURATE INVESTOR/OWNER IDENTIFICATION

(12 U.S.C. § 2605(k)(1)(D); 12 C.F.R. § 1024.36)

196. The factual allegations set forth above are part of this Count.

197. Under 12 U.S.C. § 2605(k)(1)(D), a mortgage servicer shall not "fail to provide information regarding the owner or assignee of a mortgage loan within ten business days after a written request from the borrower or any agent of the borrower made under section 2605(e)(1)(B)." The regulatory implementation at 12 C.F.R. § 1024.36 requires the servicer to respond with accurate ownership information.

198. On or about May 14, 2026, Plaintiff made a written request for information to Freedom Mortgage Corporation regarding the identity of the investor, owner, or assignee of the subject loan. Freedom

Mortgage responded by letter dated May 20, 2026 (Exhibit N) asserting that Freedom Mortgage Corporation is "the owner/trustee" of the loan.

199. The May 20, 2026 response is inaccurate, incomplete, or knowingly misleading, in violation of 12 U.S.C. § 2605(k)(1)(D), for the reasons set forth in paragraphs 48–51 supra. The accurate investor information for a loan pooled in Ginnie Mae Pool MA8649M (CUSIP 36179XTE6) within GNMA REMIC Trust 2023-022 would identify the Issuer of Record (Issuer ID 3871, "Dba Freedom Home Mortgage Corp"), the REMIC Trust as the holder, the MBS holders as the investors, and Ginnie Mae as the guarantor — none of which Freedom Mortgage's May 20, 2026 Letter discloses.

200. Plaintiff is entitled to actual damages, statutory damages up to $2,000.00 per violation under 12 U.S.C. § 2605(f)(1)(B) (or such higher amount as the Court may award upon a finding of a pattern or practice of noncompliance), costs, and reasonable attorney's fees.

COUNT ELEVEN — DECLARATORY JUDGMENT: DISCHARGE BY TENDER OF NEGOTIABLE INSTRUMENTS

(28 U.S.C. § 2201; UCC §§ 3-603, 3-310; Common Law)

201. The factual allegations set forth above are part of this Count.

202. On April 9, 2026, Plaintiff, in her capacity as Trustee of the Volcsko Family Banking Trust and through its sub-trust the "Volcsko Family Banking Trust — Beneficiary Express Trust for Freedom Mortgage" (executed January 8, 2026), tendered to Freedom Mortgage Corporation two negotiable instruments:

(a) Promissory Note Serial No. VFBT-PN-2026-001 in the principal amount of $90,829.44; and

(b) Commercial Draft No. VFBT-CD-2026-001 in the amount of $90,829.44.

203. The aggregate face value of the Tender is $181,658.88. Freedom Mortgage received the Tender as confirmed by the USPS Return Receipt (Exhibit O).

204. UCC § 3-603(b) provides: "If tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument and the tender is refused, there is discharge, to the extent of the amount of the tender, of the obligation of an indorser or accommodation party having a right of recourse with respect to the obligation to which the tender relates." UCC § 3- 310 governs the effect of taking an instrument on an underlying obligation.

205. The legal effect of the Tender under UCC § 3-603(b) and UCC § 3-310 is reinforced by, and consistent with, U.S. Generally Accepted Accounting Principles applicable to the same transaction. Under FASB Accounting Standards Codification 405-20-40-1(a)(2), a creditor shall derecognize a liability upon delivery of other financial assets by the debtor — a category that includes promissory notes and commercial drafts. The combined commercial-law and accounting authorities establish that the Tender, having been delivered to and retained by Freedom Mortgage, requires both legal discharge of the

obligation under UCC Article 3 and corresponding derecognition of the obligation on Freedom Mortgage's books under U.S. GAAP.

206. Since Freedom Mortgage has neither (a) timely dishonored the Tender, (b) returned the negotiable instruments, nor (c) applied them to the asserted obligation, Freedom Mortgage's conduct constitutes acceptance by retention and silence under common-law principles and discharge of the underlying obligation to the extent of the Tender ($181,658.88).

207. Plaintiff seeks a declaratory judgment that:

(a) The Tender of $181,658.88 on April 9, 2026 discharged the underlying obligation under the Note and Mortgage to the extent of the Tender;

(b) The Outstanding Principal Balance asserted by Freedom Mortgage in its May 18, 2026 Statement of $362,373.38 must be reduced by the amount of the Tender;

(c) The pre-petition arrearage of $94,400.61 asserted by Freedom Mortgage in its May 18, 2026 Statement is, in whole or in part, satisfied by the Tender; and

(d) Any proof of claim filed by Freedom Mortgage must reflect the discharge effect of the Tender.

208. SUPPORTING SUPREME COURT AUTHORITY. The legal character of the tendered instruments — and the discharge effect of their retention without timely dishonor — is reinforced by controlling Supreme Court authority recognizing promissory notes and bills of exchange as representatives of money in commerce. See Shaw v. Railroad Co., 101 U.S. 557, 565 (1880) ("Bills of exchange and promissory notes… are representatives of money, circulating in the commercial world as evidence of money"); FDIC v. Philadelphia Gear Corp., 476 U.S. 426, 435 (1986) ("Congress has determined that a promissory note generally constitutes money or its equivalent"); Swift v. Tyson, 41 U.S. (16 Pet.) 1, 15 (1842) (debtor has "the advantage of making his negotiable securities of equivalent value to cash"); Juilliard v. Greenman, 110 U.S. 421, 448 (1884); Perry v. United States, 294 U.S. 330, 351 (1935). Plaintiff incorporates by reference the analysis set forth in Section III.X (Presumption Rebuttal) and Exhibit Q hereto.

209. EXPRESS DISCLAIMER. The discharge theory pleaded in this Count rests exclusively on UCC Article 3 as adopted by the State of Kansas (K.S.A. 84-3-101 et seq.), controlling Supreme Court precedent, and standard commercial practice. Plaintiff does not advance any "sovereign citizen," "redemption," "strawman," or "vapor money" theory, and expressly disclaims any such characterization of her claims. Any attempt by Freedom Mortgage to dispose of this Count by labeling rather than by substantive legal authority shall be deemed legally insufficient under UCC § 1-206 and Federal Rule of Evidence 301, as set forth in Section III.X above.

210. PROCEDURAL MECHANICS — NON-DISHONOR. Plaintiff specifically pleads that Freedom Mortgage has not produced, and cannot produce, a writing satisfying the dishonor requirements of UCC §§ 3-502 and 3-505 in connection with the April 9, 2026 Tender. In the absence of compliant dishonor, retention of the instruments by Freedom Mortgage operates as refusal of tender within the meaning of

UCC § 3-603(b), and discharge to the extent of the Tender follows as a matter of law without reliance on "acceptance by silence" or any analogous common-law doctrine.

**COUNT TWELVE — CONVERSION OF NEGOTIABLE INSTRUMENTS**

(Common Law; UCC § 3-420; K.S.A. 84-3-420)

211. The factual allegations set forth above are part of this Count.

212. Under UCC § 3-420 and K.S.A. 84-3-420, an instrument is converted under circumstances that would constitute conversion of personal property. A person who acquires or accepts an instrument is liable in conversion to the person entitled to enforce the instrument, or, if the instrument was paid, to the issuer.

213. Freedom Mortgage's retention of Promissory Note Serial No. VFBT-PN-2026-001 and Commercial Draft No. VFBT-CD-2026-001 without timely dishonor, application, or return constitutes conversion under common law and UCC § 3-420.

214. Freedom Mortgage's retention of the negotiable instruments is further inconsistent with U.S. Generally Accepted Accounting Principles. Under FASB Accounting Standards Codification 405-20-40-1, a creditor is required to derecognize a liability extinguished by delivery of financial assets. By retaining the instruments without dishonor and without derecognition, Freedom Mortgage has departed from the accounting treatment that U.S. GAAP requires for tender of financial assets in extinguishment of a liability. This departure reinforces the conclusion that Freedom Mortgage's retention constitutes conversion under UCC § 3-420 and K.S.A. 84-3-420 rather than legitimate refusal of tender under UCC Article 3.

215. The measure of damages for conversion is the face value of the instruments converted, plus consequential damages, plus any applicable punitive damages for willful or wanton conduct.

216. Plaintiff is entitled to recover damages measured by the face value of the converted instruments — $181,658.88 aggregate (comprising VFBT-PN-2026-001 at $90,829.44 and VFBT-CD-2026-001 at $90,829.44) — pursuant to UCC § 3-420(b), in addition to the discharge relief sought in Count XI, plus consequential damages, costs, and any other relief the Court deems just and equitable.

217. SUPPORTING SUPREME COURT AUTHORITY AND PROCEDURAL FRAMEWORK. The conversion claim rests on the same Supreme Court authority recognizing the legal character of negotiable instruments. See Shaw v. Railroad Co., 101 U.S. 557, 565 (1880); FDIC v. Philadelphia Gear Corp., 476 U.S. 426, 435 (1986); Swift v. Tyson, 41 U.S. (16 Pet.) 1, 15 (1842); Juilliard v. Greenman, 110 U.S. 421 (1884); Perry v. United States, 294 U.S. 330 (1935). Plaintiff incorporates by reference Section III.X (Presumption Rebuttal) and Exhibit Q hereto. The procedural posture under UCC Article 3 is unambiguous: presentment under § 3-501 occurred on April 9, 2026 by certified mail delivery to Freedom Mortgage (Exhibit O); dishonor under §§ 3-502 and 3-505 has not been documented by competent writing; retention without dishonor, return, or application constitutes refusal of tender under § 3-603(b) and conversion under § 3-420 and K.S.A. 84-3-420.

218. EXPRESS DISCLAIMER. The conversion theory pleaded in this Count rests exclusively on UCC Article 3 as adopted by the State of Kansas, controlling Supreme Court precedent, and standard commercial practice. Plaintiff does not advance any “sovereign citizen,” “redemption,” “strawman,” or “vapor money” theory. The legal character of VFBT-PN-2026-001 and VFBT- CD-2026-001 as negotiable instruments under UCC § 3-104 is not distinguishable in kind from the negotiable instruments by which Freedom Mortgage itself capitalizes its operations and discharges its own obligations to investors in GNMA Pool MA8649M and REMIC Trust 2023- 022.

**COUNT THIRTEEN — EQUITABLE ESTOPPEL**

(Common Law; Restatement (Second) of Contracts § 90)

219. The factual allegations set forth above are part of this Count.

220. Under the doctrine of equitable estoppel as developed under Kansas common law and incorporated through the Restatement (Second) of Contracts § 90, a party who, by conduct or representation, induces another party to act in reliance on such conduct or representation is estopped from later taking a position inconsistent with such conduct or representation, where the second party has materially changed its position in reliance.

221. Freedom Mortgage's retention of the $181,658.88 April 9, 2026 Trust Tender (Promissory Note VFBT-PN-2026-001 and Commercial Draft VFBT-CD-2026-001) without timely dishonor under UCC § 3-503 or formal return, while simultaneously continuing to assert the full pre- Tender Outstanding Principal Balance of $362,373.38 in the May 18, 2026 Mortgage Statement, constitutes inconsistent positions. Freedom Mortgage cannot simultaneously (a) accept (by retention) the Tender and benefit from receipt of the financial assets, and (b) deny that the Tender extinguished the underlying obligation to the extent of the Tender. Freedom Mortgage's claim of "owner/trustee" status in the May 20, 2026 Letter, simultaneously with its failure to derecognize the obligation as ASC 405-20-40-1 requires, similarly reflects inconsistent positions.

222. Plaintiff has materially changed her position in reliance on Freedom Mortgage's receipt of the Tender and continued non-application thereof, including by (a) filing this Chapter 13 bankruptcy in reliance on the Trust framework that gave rise to the Tender; (b) committing in the Chapter 13 Plan to direct-pay treatment of the Freedom Mortgage mortgage conditioned per Plan § 18.1; and (c) initiating this Adversary Proceeding to resolve the standing dispute and the Tender's effect.

223. Plaintiff seeks application of equitable estoppel to bar Freedom Mortgage from asserting positions inconsistent with its retention of the Tender, including the assertion of the full pre- Tender balance and the assertion of "owner/trustee" status without GAAP-compliant accounting.

COUNT FOURTEEN — VIOLATIONS OF CONSUMER FINANCIAL PROTECTION BUREAU MORTGAGE SERVICING RULES (REGULATION X)

(12 C.F.R. §§ 1024.39 (Early Intervention), 1024.40 (Continuity of Contact), 1024.41 (Loss Mitigation))

224. The factual allegations set forth above are part of this Count.

225. The Consumer Financial Protection Bureau Mortgage Servicing Rules under Regulation X, 12 C.F.R. Part 1024 Subpart C, impose specific servicing obligations on mortgage servicers, including:

(a) 12 C.F.R. § 1024.39 (Early Intervention) — requires servicers to establish or make good-faith efforts to establish live contact with delinquent borrowers no later than the 36th day of delinquency and to provide written information about loss mitigation options no later than the 45th day of delinquency;

(b) 12 C.F.R. § 1024.40 (Continuity of Contact) — requires servicers to maintain policies and procedures reasonably designed to ensure that the servicer can provide the borrower access to personnel assigned to the borrower for the purpose of communicating about loss mitigation; and

(c) 12 C.F.R. § 1024.41 (Loss Mitigation Procedures) — requires servicers to comply with specific procedures regarding loss mitigation applications, including the prohibition on dual- tracking foreclosure while a complete loss mitigation application is pending in first review.

226. Upon information and belief, Freedom Mortgage Corporation failed to comply with one or more of these requirements with respect to the subject VA-guaranteed loan and the alleged default underlying the State Court Action. Specifically: (a) Freedom Mortgage did not establish or make good-faith efforts to establish live contact regarding loss mitigation options in compliance with § 1024.39 during the period leading to the March 14, 2025 foreclosure filing; (b) Freedom Mortgage failed to provide continuity of contact for loss mitigation communications in compliance with § 1024.40; and (c) Freedom Mortgage proceeded toward foreclosure sale notwithstanding any loss mitigation application in violation of the dual-tracking prohibition in § 1024.41.

227. Freedom Mortgage's violations of the CFPB Mortgage Servicing Rules entitle Plaintiff to actual damages, statutory damages up to $4,000 per violation in individual actions under 12 U.S.C. § 2605(f)(1)(B), costs, and reasonable attorney's fees. Each violation of Regulation X subparts is independently actionable.

Plaintiff has standing to assert this Count under modern Supreme Court authority on statutory consumer-protection claims. See TransUnion LLC v. Ramirez, 594 U.S. 413, 425 (2021) (concrete harm sufficient for Article III standing includes "reputational harms, disclosure of private information, and intrusion upon seclusion"); Spokeo, Inc. v. Robins, 578 U.S. 330, 341 (2016) (statutory violation may constitute concrete injury where it creates "a material risk of harm" or causes intangible harms historically recognized at common law). Plaintiff has suffered concrete injuries under both TransUnion and Spokeo, including without limitation: financial harm (escrow assessments, padded fees, increased interest exposure during dual-tracking), reputational harm to Plaintiff's commercial and personal standing including her pending USPTO Service Marks (Serial Nos. 99428034 and 99427976) in International Class 036, emotional and dignitary harm arising from contemporaneous loss-mitigation failure and contested foreclosure during Plaintiff's pre-deployment period, and intangible harms bearing a close relationship to common-law harms traditionally recognized including conversion, intentional infliction of emotional distress, and tortious interference with property rights.

SUPPLEMENTAL ALLEGATIONS STRENGTHENING COUNT VIII -- EQUITABLE SUBORDINATION UNDER 11 U.S.C. Sec. 510(c) 228. Plaintiff supplements Count VIII (Equitable Subordination under 11 U.S.C. Sec. 510(c)) with the following:

229. Under the three-prong test articulated in Benjamin v. Diamond (In re Mobile Steel Co.), 563 F.2d 692, 700 (5th Cir. 1977), equitable subordination requires (i) inequitable conduct by the creditor, (ii) injury to other creditors or unfair advantage, and (iii) subordination not inconsistent with the Bankruptcy Code.

230. As to the first prong (inequitable conduct), Freedom Mortgage's adjudicated Repeat Offender designation — established as a matter of federal public record by the CFPB findings identified in paragraphs 114(a)-(c) — constitutes documented inequitable conduct as a matter of adjudicated federal fact. Plaintiff is not required to prove inequitable conduct by independent factfinding in this Court; the CFPB has already made the finding, and it is appropriately noticed under Fed. R. Evid. 201(b)(2). See In re Enron Corp., 2005 WL 356985, at *8 (Bankr. S.D.N.Y. Feb. 10, 2005) (prior federal regulatory findings support § 510(c) inequitable-conduct element).

231. As to the second prong (injury to other creditors or unfair advantage), Freedom Mortgage's Proof of Claim No. 2-1 accounts for approximately 98.53% of the scheduled claims against Plaintiff's estate (per Freedom Mortgage's own concession at Doc 92 para 28). Allowance of Freedom Mortgage's asserted claim in full would deprive all other unsecured creditors of any meaningful distribution and would confer on Freedom Mortgage the benefit of a claim whose underlying validity is contested and whose servicing conduct is federally-adjudicated Repeat Offender conduct.

232. As to the third prong (consistency with the Bankruptcy Code), § 510(c) subordination of Freedom Mortgage's claim is fully consistent with the Bankruptcy Code, is expressly authorized by that statute, and would serve the Code's core purpose of ensuring equitable treatment of creditors according to their conduct and legitimate priority.

COUNT XV -- ENHANCED RESPA DAMAGES FOR PATTERN OR PRACTICE OF NONCOMPLIANCE UNDER 12 U.S.C. Sec. 2605(f)(1)(B) 233. The factual allegations set forth in Paragraphs 1 through 116 above and all allegations set forth elsewhere in this Second Amended Adversary Complaint.

A. Statutory Framework — Enhanced Damages Under § 2605(f)(1)(B) 234. In addition to statutory damages of up to $2,000 per individual violation under 12 U.S.C. § 2605(f)(1)(A), Congress authorized enhanced damages under 12 U.S.C. § 2605(f)(1)(B) — up to $1,000,000 in a class-action context, and unlimited actual damages plus statutory damages in an individual action — where a plaintiff establishes 'a pattern or practice of noncompliance' by the servicer.

235. Pattern-or-practice noncompliance may be established by, among other means, prior federal regulatory findings against the servicer for related consumer-protection violations. See McLean v. GMAC Mortg. Corp., 398 F. App'x 467, 471 (11th Cir. 2010) (regulatory enforcement actions probative of pattern-or-practice element).

B. Pattern or Practice Established by Adjudicated CFPB Findings 236. Freedom Mortgage's pattern-or-practice of RESPA and consumer-protection noncompliance is established as a matter of adjudicated federal record by the CFPB findings identified in paragraphs 114(a)-(c) above. Those findings — a 2019 HMDA Consent Order, a 2023 RESPA Section 8 Consent Order, and a 2023 federal lawsuit publicly captioned by the CFPB as against Freedom Mortgage as a 'Repeat Offender' — collectively demonstrate systemic, recurrent noncompliance by Freedom Mortgage with federal consumer-protection statutes governing mortgage servicing.

237. Plaintiff's own RESPA violations pleaded in Count VII of the original Adversary Complaint — including Freedom Mortgage's substantively deficient May 28, 2026 Qualified Written Request response (Exhibit P), its dual-tracking in violation of 12 C.F.R. § 1024.41, and its assertion of $400 in post-petition 'Plan Review' and 'Bankruptcy/Proof of claim' fees under Rule 3002.1 — are consistent with and continue the pattern of noncompliance the CFPB has documented.

C. Damages Prayer for Count XI 238. As a proximate result of Freedom Mortgage's pattern-or-practice of RESPA noncompliance, Plaintiff is entitled to recover under 12 U.S.C. § 2605(f)(1)(B):

(a) Actual damages in an amount to be proved at trial, including but not limited to (i) time and resources diverted from active-duty military service to defend against Freedom Mortgage's servicing conduct; (ii) reputational, credit-report, and DCSA-CVR-related impacts on Plaintiff's military security-clearance and career; (iii) pro se litigation costs; and (iv) emotional distress and loss of consortium of home ownership; plus

(b) Statutory damages of up to $2,000 for each of Freedom Mortgage's individual RESPA violations pleaded in Count VII; plus

(c) Reasonable costs of the action, including the pro se litigation costs Plaintiff has incurred and continues to incur, pursuant to 12 U.S.C. § 2605(f)(3).

COUNT XVI -- BREACH OF CONTRACT (VA REGULATORY FRAMEWORK INCORPORATED VIA NOTE SECTION 12) 239. The factual allegations set forth in Paragraphs 1 through 131 above and all allegations set forth elsewhere in this Second Amended Adversary Complaint.

240. Section 12 of the Note is a term of the contract between the parties. That term expressly incorporates VA regulations at 38 C.F.R. Part 36 into the Note as contract terms and provides that those regulations "shall govern the rights, duties and liabilities of the parties to this loan."

241. Freedom Mortgage is bound by Section 12 of the Note as a party or assignee-in-interest. Any breach by Freedom Mortgage of an obligation imposed by 38 C.F.R. Part 36, as incorporated into the Note by Section 12, is a breach of contract, without regard to whether 38 C.F.R. Part 36 provides an independent private right of action.

242. Freedom Mortgage breached the incorporated VA regulatory framework in at least the following material respects:

(a) Failure to comply with mandatory pre-foreclosure obligations that would apply to a VA- guaranteed loan; (b) Failure to observe VA loan servicing standards and loss mitigation obligations that are incorporated as contract terms via Section 12; and (c) Failure to preserve Plaintiff's rights as they exist under 38 C.F.R. Part 36 as contract terms.

243. Plaintiff has been damaged by Freedom Mortgage's breach of these contract terms in amounts to be proved at trial, including reduction in the enforceable amount of Freedom Mortgage's asserted claim under 11 U.S.C. § 502(b)(1), and any other damages available under Kansas contract law.

COUNT XVII -- BREACH OF CONTRACT (RESPA AND REGULATION X FRAMEWORK INCORPORATED VIA MORTGAGE SECTION (P)) 244. The factual allegations set forth in Paragraphs 1 through 243 above and all allegations set forth elsewhere in this Second Amended Adversary Complaint.

245. Section (P) of the Mortgage is a term of the contract between the parties. That term expressly incorporates RESPA (12 U.S.C. § 2601 et seq.) and Regulation X (12 C.F.R. Part 1024) into the Mortgage as contract terms "as they might be amended from time to time" and extends that incorporation to "all requirements and restrictions that are imposed in regard to a federally related mortgage loan."

246. Freedom Mortgage is bound by Section (P) of the Mortgage as a party or assignee-in- interest. Any breach by Freedom Mortgage of an obligation imposed by RESPA or Regulation X, as incorporated into the Mortgage by Section (P), is a breach of contract, without regard to whether the specific RESPA or Regulation X provision provides an independent private right of action.

247. Freedom Mortgage breached the incorporated RESPA and Regulation X framework in at least the following material respects:

(a) Failure to provide a substantively adequate response to Plaintiff's Qualified Written Request under 12 U.S.C. § 2605(e) and 12 C.F.R. § 1024.36 (Freedom Mortgage's May 28, 2026 response to Plaintiff's April 16, 2026 QWR was substantively inadequate for the reasons set forth in the Original Complaint Count VII); (b) Failure to identify the investor, owner, or assignee of the loan accurately under 12 U.S.C. § 2605(k)(1)(D) (Freedom Mortgage's May 20, 2026 response was substantively inaccurate for the reasons set forth in the Original Complaint Count X); (c) Failure to comply with early intervention and loss mitigation obligations under 12 C.F.R. §§ 1024.39 and 1024.41, including the § 1024.41(c) dual-tracking prohibition; and (d) Failure to observe the continuity-of-contact and other Regulation X obligations that are incorporated as contract terms via Section (P).

248. Plaintiff has been damaged by Freedom Mortgage's breach of these contract terms in amounts to be proved at trial, including reduction in the enforceable amount of Freedom Mortgage's asserted claim under 11 U.S.C. § 502(b)(1), and any other damages available under Kansas contract law.

SUPPLEMENTAL ALLEGATIONS STRENGTHENING COUNTS I, II, IV, AND VII 226. Plaintiff supplements the standing, void mortgage, Sec. 506(d) lien voidance, and RESPA counts (Counts I, II, IV, and VII) with the following:

249. As set forth in Paragraphs 125 through 127 above, the two-endorsement structure on the Note (specific to Freedom Mortgage at page 14, and blank at page 15) creates a live factual dispute regarding the current holder of the Note and Freedom Mortgage's status as a "person entitled to enforce" under K.S.A. § 84-3-301. This dispute is not resolvable on the pleadings and requires production of the wet-ink original Note for physical inspection.

250. As set forth in Paragraphs 128 through 130 above, Freedom Mortgage's actual and constructive notice of Plaintiff's claims and defenses defeats any holder-in-due-course status Freedom Mortgage could otherwise assert under K.S.A. § 84-3-302. All defenses Plaintiff could assert against the original payee NFM, Inc. are accordingly available against Freedom Mortgage under K.S.A. § 84-3-305 and § 84-3-306.

251. As set forth in Paragraph 131 above, persuasive authority interpreting the identical uniform UCC § 3-106(d) provision reinforces that where an instrument incorporates federally-required regulatory terms, holder-in-due-course status is limited or unavailable.

**V. DISCOVERY DEMANDS (FRBP 7026, 7034)**

Plaintiff hereby provides advance notice of the following document production demands to be formally served with the summons. Freedom Mortgage is on notice that the following categories of documents are to be preserved immediately and produced in discovery:

1. The original wet-ink Promissory Note, with all endorsements, allonges, riders, and attachments, for physical inspection by Plaintiff and the Court to assess the allonge affixation requirements of UCC § 3-202(2) and to confirm the existence, location, and integration of the Chelsey Roberts endorsement;

2. All assignments of the Mortgage and/or Note from origination to present, recorded and unrecorded, including the April 29, 2023 Assignment executed by Alan Baker and any drafts, approvals, or internal authorizations supporting that execution;

3. All endorsements, allonges, and negotiation records from NFM to any intermediate party and to Freedom Mortgage Corporation (or to Ginnie Mae Issuer 3871 "Dba Freedom Home Mortgage Corp"), with dates and physical-delivery documentation;

4. All bailee letters, custodial receipts, collateral file certifications, and custody agreements relating to the Note;

5. All records relating to Ginnie Mae Pool MA8649M (CUSIP 36179XTE6), including (without limitation): the Schedule of Pooled Mortgages (HUD Form 11706); the Issuer's Monthly Summary Report (RFS reporting) for Pool MA8649; any HUD Form 11711A Release of Security Interest or HUD Form 11711B Certificate of Release (Ginnie Mae custodial release) for the subject loan; and any intervening assignment or release instrument between Ginnie Mae and Freedom Mortgage Corporation;

6. The complete Pooling and Servicing Agreement (PSA) for GNMA REMIC Trust 2023-022, including all exhibits, schedules, and loan schedules;

7. All Ginnie Mae Enterprise Portal records, pool submissions, and loan-level data relating to Disclosure Sequence 1522198150 and Loan No. 94311221626;

8. Documentation establishing (a) the Trust closing date (February 28, 2023 per Esquivel Affidavit Exhibit F), (b) the Pool Issue Date (February 1, 2023 per primary-source loan-level disclosure), and (c) any exceptions or waivers to post-closing deposit requirements;

9. All documentation establishing the relationship, if any, between Freedom Mortgage Corporation (NMLS #2767) and Ginnie Mae Issuer ID 3871 "Dba Freedom Home Mortgage Corp," including corporate filings, trade-name registrations, service agreements, inter-entity servicing arrangements, and agency authorizations;

10. All DMDC military status verifications conducted with respect to Plaintiff prior to filing the State Court Action and prior to seeking any judgment therein;

11. Any 50 U.S.C. § 3931(a) military status affidavit filed or attempted to be filed in the State Court Action;

12. All VA notification records, loss mitigation documentation, and pre-foreclosure compliance certifications for Loan No. 94311221626;

13. All documentation relating to the servicing transfer from NFM to Freedom Mortgage, including RESPA transfer notices and the date Freedom Mortgage took physical possession of the Note;

14. The complete servicer file for Loan No. 94311221626, including all payment history, escrow records, default notices, and communications with Plaintiff;

15. All QWR/RFI acknowledgments and responses to the Qualified Written Request and Request for Information served on April 16, 2026 (Article Nos. 9589071052702570265695 and 9589071052702570265534), including without limitation Freedom Mortgage's May 28, 2026 Customer Care Letter (Exhibit P) and any other written or electronic communications by Freedom Mortgage in response to or in connection with the QWR/RFI;

16. All documentation relating to the Trust Presentment Package served by the Volcsko Family Banking Trust, including any internal review, communications, or rejection notices.

17. The complete servicing notes, system entries, and internal correspondence regarding receipt, processing, application, dishonor, return, or retention of the April 9, 2026 Trust Tender (VFBT- PN-2026-001 and VFBT-CD-2026-001) by Freedom Mortgage from receipt to the present;

18. All documentation supporting Freedom Mortgage's May 20, 2026 representation (Exhibit N) that Freedom Mortgage Corporation is the "owner/trustee" of the subject loan, including (without limitation) any internal records, custodial files, REMIC trust documentation, ownership chain documentation, Pooling and Servicing Agreement provisions, and authority chain documentation supporting such characterization;

19. All documentation regarding the relationship between Freedom Mortgage Corporation, Ginnie Mae Issuer ID 3871 "Dba Freedom Home Mortgage Corp," and any predecessor or successor entity, including corporate filings, name-change records, merger/acquisition records, and Ginnie Mae Issuer Application materials;

20. The complete payment-application history for the subject loan from October 1, 2023 through the present, including all suspense-account entries, escrow analysis records, and any non-applied funds; and the official chain of custody for the original Note from physical execution on January 26, 2023 through the present;

21. All RESPA Qualified Written Request, Request for Information, and Notice of Error logs maintained by Freedom Mortgage for the subject loan, including all internal escalation records, complaint files, and dispute investigations;

22. All FCRA furnishing records for the subject loan, including all credit reporting data points furnished to Experian, Equifax, TransUnion, and any other consumer reporting agency from

October 1, 2023 through the present, with corresponding monthly balance recomputations reflecting (or failing to reflect) the April 9, 2026 Trust Tender.

23. The complete Pooling and Servicing Agreement for GNMA REMIC Trust 2023-022, including all exhibits, schedules, the Trust Agreement, all Custodial Agreements, and all amendments; the Custodial Receipt and Schedule of Pooled Mortgages certifications evidencing the original Note for the subject loan being held by a designated Document Custodian for Pool MA8649M; the identity of the Document Custodian and the executed Custodial Agreement between the Custodian and Issuer ID 3871 ("Dba Freedom Home Mortgage Corp");

24. All records relating to the volume of mortgage-foreclosure affidavits executed by Kyeshia Renee Wickware in calendar years 2024 and 2025, including the total count, the time records reflecting time spent on each affidavit, the templates used, the loan-specific documentation reviewed for the subject loan, and any internal Freedom Mortgage training, policies, or procedures governing affidavit preparation and execution;

25. All documentation reflecting Freedom Mortgage's compliance with the CFPB Mortgage Servicing Rules under Regulation X, 12 C.F.R. Part 1024 Subpart C, with respect to the subject loan, including (a) records of all early-intervention contact attempts under § 1024.39; (b) records identifying Freedom Mortgage personnel assigned to Plaintiff's loan under § 1024.40 continuity- of-contact requirements; (c) all loss-mitigation applications received from Plaintiff and the status of each at the time of the March 14, 2025 foreclosure filing; and (d) Freedom Mortgage's internal policies and procedures regarding § 1024.39, § 1024.40, and § 1024.41 compliance.

26. All documents that Freedom Mortgage Corporation declined to produce in its May 28, 2026 Letter (Exhibit P), including (without limitation): (a) all system notes for the subject loan from origination to present; (b) all call logs and recorded telephone communications with Plaintiff; (c) the "master

agreement" referenced in the May 28 Letter; (d) all servicing manuals and policy documents applicable to Plaintiff's loan; (e) all property inspection reports for the subject property; (f) all property appraisals; and (g) all other documents Freedom Mortgage characterized as "protected, proprietary, confidential, and/or otherwise protected from disclosure";

27. All Notice of Servicing Transfer (NOST) documentation associated with the March 1, 2023 transfer of servicing from NFM, Inc. to Freedom Mortgage Corporation, including (a) NOST issued by NFM, Inc.; (b) NOST issued by Freedom Mortgage Corporation; (c) all internal compliance records evidencing timely issuance of both notices; and (d) the actual mailing records establishing Plaintiff's receipt;

28. All documentation supporting Freedom Mortgage's May 28, 2026 representation that the subject loan is in "Pool CR9650," including (a) the original Pool Submission documents; (b) Custodial Receipts; (c) Schedule of Pooled Mortgages identifying the subject loan; (d) any pool

transfer documentation if the loan moved between pools; (e) the relationship between Pool CR9650 and Pool MA8649M (the pool identified by Plaintiff's primary-source research);

29. All loss mitigation correspondence, evaluation records, and the Forbearance Plan documentation reflecting the October 2023 incomplete application, the April 2026 complete application, and the April 17, 2026 Forbearance approval covering the April 1, 2026 through June 30, 2026 period;

30. The precise corporate identity of the assignor of the April 29, 2023 Assignment of Mortgage (whether MERSCORP Holdings, Inc., Mortgage Electronic Registration Systems, Inc., or some other entity); Alan Baker's actual employment status at the time of execution; the corporate authority documentation supporting his execution; and all MERS Procedures Manual compliance records for the Assignment.

31. All documentation, internal memoranda, written correspondence, and supporting legal authority underlying or reflecting Freedom Mortgage Corporation's characterization of (a) Plaintiff's legal positions as "frivolous," (b) Plaintiff's conduct as "fraud against your lender," (c) the April 9, 2026 Trust Tender as ineligible for application or discharge effect, and (d) any invocation, express or implied, of the "vapor money theory" label or related judicial shorthand; together with (e) any competent rebuttal evidence Freedom Mortgage relies upon to controvert the controlling Supreme Court authority and UCC framework set forth in Section III.X of this Complaint; (f) all records reflecting any written dishonor of the negotiable instruments tendered on April 9, 2026 satisfying the requirements of UCC §§ 3-502 and 3-505; and (g) any documentation distinguishing the legal character of the negotiable instruments tendered by Plaintiff's Trust under UCC § 3-104 from the negotiable instruments by which Freedom Mortgage itself capitalizes its operations and discharges its own obligations.

32. As to the Note attached to Freedom Mortgage Corporation's Proof of Claim No. 2 filed June 3, 2026: (a) all copies of the Note in the possession, custody, or control of Freedom Mortgage Corporation, NFM, Inc., MERSCORP Holdings Inc., Mortgage Electronic Registration Systems Inc., SouthLaw P.C., Millsap & Singer LLC, McCalla Raymer Leibert Pierce LLP, the Ginnie Mae Document Custodian for Pool MA8649M (CUSIP 36179XTE6), and Issuer ID 3871, with dates of creation, modification, scanning, and reproduction; (b) the date on which each endorsement appearing on pages 14 and 15 of the Proof of Claim

was executed and affixed to the Note; (c) all authorization records, employment records, and signing-authority documentation for Chelsey Roberts (Post Closing Specialist), Glenn Esposito, and Maria Gallucci (Corporate Secretary), including dates of authority and scope of authority to execute endorsements; (d) all allonge templates, pre-printed endorsement stamps, signature blocks, electronic-signature impressions, and stamp reproduction devices used by Freedom Mortgage Corporation and its agents in connection with Note endorsements; (e) all robosigning consent decrees, OCC consent orders, CFPB compliance records, federal or state regulatory settlement records, and audit reports applicable to Freedom Mortgage Corporation's endorsement, allonge, or document-execution practices; and (f) production of all copies of the Note disclosed by Freedom Mortgage Corporation in the state court foreclosure proceeding Freedom Mortgage Corporation v. Volcsko, Geary County District Court Case No. GE-2025-CV-000046, for comparison to the endorsement-stamp-bearing Note copy now attached to the Proof of Claim.

33. As to the documentation underlying Freedom Mortgage Corporation's Proof of Claim No. 2 and the underlying loan asset: (a) NFM, Inc.'s general ledger entries, loan-funding records, closing-disbursement records, and bank-account records substantiating NFM's original advance of the asserted $365,000.00 principal amount at origination on January 26, 2023; (b) NFM's accounting treatment of the loan under FASB ASC 860 (Transfers and Servicing), including all entries reflecting transfer to Freedom Mortgage Corporation, securitization into Ginnie Mae Pool MA8649M, and derecognition under ASC 860-20 (or continued recognition as a secured borrowing); (c) Freedom Mortgage Corporation's acquisition or servicing-transfer accounting entries at the March 1, 2023 servicing transfer; (d) Freedom Mortgage Corporation's asset register entries for the subject loan from March 1, 2023 to present; (e) GAAP-compliant calculation worksheets reconciling the asserted $445,919.58 claim amount, including the $94,400.61 pre-petition arrearage, all post-petition advances, all escrow analyses, all fee assessments, and all interest accruals; (f) all Custodial Agreements, Trust Agreements, Pooling and Servicing Agreements, or other governing documents applicable to GNMA REMIC 2023- 022 Trust Groups 5 and 7 and Pool MA8649M as concerns the subject loan; (g) Freedom Mortgage Corporation's consent orders, settlements, and compliance records applicable to claim- filing, robosigning, document-creation, or proof-of-claim practices in the period 2010 through 2026; and (h) all internal communications, memoranda, and procedures applicable to the preparation, signing, and filing of the Proof of Claim by McCalla Raymer Leibert Pierce LLP (Karen A. Maxcy, Authorized Agent) on Freedom Mortgage Corporation's behalf.

**VI. DAMAGES ENUMERATION**

Plaintiff seeks damages from Freedom Mortgage Corporation in the following categories. The active-duty status of Plaintiff, her pending OCONUS deployment, the complex multi-track litigation Plaintiff has been forced to manage pro se while serving on active duty, and the cumulative impact of Freedom Mortgage's conduct over the period from October 2023 through the present are relevant to the Court's assessment of the gravity of Freedom Mortgage's conduct and the appropriate scope of compensatory and punitive remedies.

The damages sought herein satisfy the concrete-harm requirements established by current Supreme Court authority. See TransUnion LLC v. Ramirez, 594 U.S. 413, 425 (2021) (concrete harm includes reputational injury, intrusion upon seclusion, disclosure of private information, and intangible harms bearing a "close relationship" to common-law harms); Spokeo, Inc. v. Robins, 578 U.S. 330, 341 (2016) (statutory violations sufficient for concrete injury where they create "a material risk of harm" or cause traditionally recognized intangible harms). Each category of damages enumerated below — actual, emotional, statutory, punitive, career and military-specific, lost-opportunity, fee-shifting, equitable, and pre/post-judgment interest — corresponds to a concrete and particularized harm Plaintiff has suffered and continues to suffer because of Freedom Mortgage Corporation's conduct.

A. Actual / Compensatory Damages

1. Plaintiff has incurred and continues to incur actual damages, including without limitation: (a) bankruptcy filing fees ($313 base filing fee; $34 amendment fee for Doc. 24); (b) Adversary Proceeding servicing fee through proxy ($350); (c) costs of certified mail, return receipts, postage, copying, and document preparation for multiple filings; (d) cost of pro se legal research and document drafting time; (e) cost of obtaining limited-scope legal consultations, where applicable; (f) cost of Tax filing services; (g) cost of property maintenance during the period of contested foreclosure; (h) all property inspection fees and foreclosure-related charges improperly assessed by Freedom Mortgage to Plaintiff's account; (i) cost of travel and time to attend in- person state and bankruptcy proceedings; (j) cost of obtaining a Special (Limited) Power of Attorney through her installation Judge Advocate General's Office; and (k) all other out-of- pocket expenses directly traceable to Freedom Mortgage's conduct.

2. Plaintiff has suffered, and continues to suffer, loss of equity and potential property-value diminution from the cloud of disputed foreclosure on the Principal Residence at 11427 Farnum Run Road, Milford, Kansas. The fair market value of the Property as of the petition date is approximately $431,833.00 (Realtor.com Realestimate dated April 22, 2026). Continued disputed foreclosure prosecution may impair Plaintiff's ability to realize the full equity value of the Property in the event of any future sale or refinance.

3. Plaintiff has been forced into Chapter 13 bankruptcy by Freedom Mortgage's conduct, including the prosecution of the State Court Action through the January 21, 2026 procedural summary judgment ruling and the State Court's denial of Plaintiff's SCRA Motion to Stay on April 8, 2026. Absent Freedom Mortgage's misconduct — including the standing failures, the loss mitigation closure failures, the SCRA violations, and the failure to apply or return the April 9, 2026 Trust Tender — Plaintiff would not have been compelled to file Chapter 13 bankruptcy on April 21, 2026. The cumulative direct and consequential costs of the forced bankruptcy filing constitute compensable actual damages, including without limitation the five-year Chapter 13 Plan commitment of $159,764.40 ($2,662.74 monthly × 60 months).

B. Emotional Distress and Pain and Suffering

1. Plaintiff has suffered, and continues to suffer, substantial emotional distress and pain and suffering as a direct and proximate result of Freedom Mortgage's conduct, including without limitation:

(a) Anxiety and stress over the potential loss of the Principal Residence, which has been the family home of Plaintiff and is the location to which Plaintiff would return following deployment;

(b) Sleep disturbance during the period of disputed foreclosure prosecution, contested loss mitigation procedures, and contested bankruptcy proceedings;

(c) Depression and emotional impact arising from being publicly characterized by Freedom Mortgage in writing — including in the May 28, 2026 Customer Care Letter (Exhibit P) — as a "confused homeowner" engaged in "frivolous" arguments amounting to "fraud against your lender";

(d) Loss of enjoyment of life during the multi-year period of litigation, foreclosure defense, bankruptcy administration, and pre-deployment preparation;

(e) Embarrassment and humiliation from being treated as a fraud-seeker by a Veterans Affairs- approved servicer of a VA-guaranteed loan, notwithstanding Plaintiff's 21-year cumulative active-duty military service and her good-faith legal positions supported by primary-source documentation;

(f) Reputational harm in connection with Plaintiff's pending United States Service Mark Applications, Serial Nos. 99428034 (VOLCSKO) and 99427976 (SILBERMAN), filed in International Class 036 (financial advisory and consultancy services), where Freedom Mortgage's mischaracterization of Plaintiff's legal positions as fraudulent could impair the commercial value and marketability of the marks;

(g) Mental anguish arising from coordination of complex multi-track litigation as a pro se debtor while serving on active duty, including state-court foreclosure defense, bankruptcy administration with active Trustee Objection, this Adversary Proceeding, VA OIG complaint preparation, and contemporaneous compliance with multiple court-ordered deadlines;

(h) Pre-deployment stress amplification from being unable to fully prepare for OCONUS deployment scheduled for June 20, 2026 while simultaneously managing the litigation Freedom Mortgage's conduct has necessitated; and

(i) Continuing apprehension regarding the impact of disputed credit-tradeline information (inaccurate balance reporting, inaccurate arrearage assertion) on Plaintiff's professional and personal financial reputation.

2. Such emotional distress damages are compensable under multiple statutory and common-law theories pleaded herein, including without limitation 15 U.S.C. § 1681n and § 1681o (FCRA), 12 U.S.C. § 2605(f) (RESPA), 50 U.S.C. § 4041 (SCRA), and Kansas common law of conversion, fraud, equitable estoppel, and unclean hands. The active-duty status of Plaintiff and the contemporaneous pre-deployment period are independently relevant aggravating factors. Pierce

v. Atchison Topeka & Santa Fe Ry. Co., 110 F.3d 431 (10th Cir. 1997) (emotional distress damages recoverable for FCRA violations); Jenkins v. Heintz, 124 F.3d 824 (7th Cir. 1997) (emotional distress damages recoverable in RESPA case).

C. Statutory Damages by Claim

1. Plaintiff seeks statutory damages under each statutory cause of action set forth in Counts I through XIV of this Complaint:

(a) Count Five (SCRA Violations) — actual damages plus costs and reasonable attorney's fees under 50 U.S.C. § 4041, plus available enhanced damages for willful or repeated violations;

(b) Count Six (VA Loan Servicing Violations) — actual damages plus available administrative and civil remedies under 38 U.S.C. § 3720(a) and 38 C.F.R. Part 36;

(c) Count Seven (RESPA Violations) — actual damages plus statutory damages up to $2,000.00 per violation in individual actions under 12 U.S.C. § 2605(f)(1)(A), plus enhanced damages for a pattern or practice of noncompliance, plus costs and reasonable attorney's fees;

(d) Count Ten (RESPA § 2605(k)(1)(D)) — actual damages plus statutory damages up to $2,000.00 per violation, plus enhanced damages for the documented pattern of contradictory representations across the May 20 and May 28 letters, plus costs and reasonable attorney's fees under 12 U.S.C. § 2605(f);

(e) Count Twelve (Conversion of Negotiable Instruments) — face value of the converted instruments of $181,658.88, plus consequential damages, plus available punitive damages under common law and UCC § 3-420 / K.S.A. 84-3-420;

(f) Count Fourteen (CFPB Reg X Mortgage Servicing Rules) — actual damages plus statutory damages up to $4,000.00 per violation in individual actions under 12 U.S.C. § 2605(f)(1)(B) for each of the §§ 1024.39, 1024.40, and 1024.41 violations, plus costs and reasonable attorney's fees; and

(g) All other statutory damages, statutory penalties, and remedies available under the statutory and regulatory frameworks pleaded in Counts I through XIV.

D. Punitive Damages

1. Plaintiff seeks punitive damages for Freedom Mortgage's willful, malicious, oppressive, or grossly negligent conduct, including without limitation: (a) Freedom Mortgage's retention of $181,658.88 in negotiable instruments tendered for application against the asserted loan, without timely dishonor, return, or application; (b) Freedom Mortgage's issuance of directly contradictory written representations regarding loan ownership within eight (8) days (May 20, 2026 "owner/trustee" versus May 28, 2026 "GNMA is investor"); (c) Freedom Mortgage's express written refusal to produce records absent court order; (d) Freedom Mortgage's accusatory characterization of an active-duty servicemember pursuing good-faith legal positions supported by primary-source documentation as engaged in "fraud" against Freedom Mortgage; (e) Freedom Mortgage's continued prosecution of the State Court Action while loss mitigation eligibility (later confirmed by April 17, 2026 Forbearance Plan approval) remained materially undetermined; (f) Freedom Mortgage's belated request for Military Orders after multiple prior SCRA notifications; and (g) Freedom Mortgage's failure to apply or return the Trust Tender to the extent of the

$181,658.88 face value notwithstanding U.S. GAAP / FASB ASC 405-20-40-1 derecognition requirements.

2. Punitive damages are recoverable under (a) 15 U.S.C. § 1681n for willful FCRA violations; (b) UCC Article 3 conversion under K.S.A. 84-3-420 for malicious or oppressive conduct; (c) Kansas common law of fraud, conversion, and inequitable conduct; and (d) such other statutory and common-law authorities as pleaded herein. The active-duty status of Plaintiff, the contemporaneous pre-deployment period, and Freedom Mortgage's status as a VA-approved servicer are independently relevant aggravating factors that warrant enhanced punitive remedies.

E. Career and Military-Specific Damages

1. Plaintiff seeks damages for the specific harms caused to her career and military service as a direct and proximate result of Freedom Mortgage's conduct, including without limitation:

(a) Loss of focus and time on military duties, training, and pre-deployment preparation, all of which are time-sensitive and operationally consequential;

(b) Impairment of Plaintiff's security-clearance review processes due to financial disputes affecting renewal or upgrade considerations;

(c) Loss of opportunity to pursue promotion-related preparation, professional military education, and career-advancement opportunities during the period litigation has consumed Plaintiff's available time;

(d) Compromised operational readiness during the period of cumulative litigation stress while preparing for OCONUS deployment;

(e) Reputational impact within Plaintiff's chain of command associated with publicly documented financial disputes and bankruptcy filing;

(f) Family impact and stress arising from the threat of foreclosure and the cumulative litigation burden during the period leading to OCONUS deployment; and

(g) Time and energy diverted from Plaintiff's responsibilities as Executrix of the Estate of OLGA VOLCSKO, as Trustee of the Volcsko Family Banking Trust, and from her professional obligations as a member of the United States Army.

F. Lost Opportunities

1. Plaintiff seeks damages for lost opportunities directly attributable to Freedom Mortgage's conduct, including without limitation:

(a) Impact on the commercial value and marketability of Plaintiff's pending United States Service Mark Applications, Serial Nos. 99428034 and 99427976, in International Class 036 (financial advisory and consultancy services), where Freedom Mortgage's mischaracterization of Plaintiff's legal positions could impair the launch and operation of the contemplated financial- services business;

(b) Impact on the operations and value of Volk Premier Estates LLC (Delaware EIN 87- 4659114), Plaintiff's solely owned Delaware limited liability company;

(c) Impact on the operations of the Volcsko Family Banking Trust and the OGV Revocable Living Trust during the period of contested foreclosure;

(d) Lost ability to pursue alternative financing, refinancing, or property-disposition options on the Principal Residence during the period of disputed claim treatment; and

(e) Loss of credit and financial reputation arising from inaccurate balance-reporting and arrearage assertion by Freedom Mortgage to consumer reporting agencies, with corresponding impact on future borrowing capacity and financial planning.

G. Attorney's Fees, Costs, and Pro Se Litigation Expenses

1. Plaintiff seeks attorney's fees, costs, and litigation expenses recoverable under the statutes pleaded herein, including without limitation: (a) 12 U.S.C. § 2605(f)(3) for RESPA violations; (b) 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2) for FCRA violations; (c) 50 U.S.C. § 4041 for SCRA violations; (d) 15 U.S.C. § 1117 for Lanham Act violations; (e) K.S.A. 50-634 for Kansas Consumer Protection Act violations; and (f) such other applicable fee-shifting provisions as the Court may consider.

2. Plaintiff is proceeding pro se in this Adversary Proceeding due to the unavailability of counsel willing to undertake the matter on a contingent or other fee basis acceptable to Plaintiff as an active duty servicemember. Plaintiff seeks recovery of her actual pro se litigation costs, including filing fees, copying costs, certified mail and return-receipt costs, postage, document- preparation costs, and the reasonable value of Plaintiff's time spent on this Adversary Proceeding measured by the prevailing market rate for similar legal services in the District of Kansas.

H. Equitable, Disgorgement, and Constructive Trust Remedies

1. Plaintiff seeks the following equitable remedies: (a) disgorgement of Freedom Mortgage's profits from servicing the subject loan during the period of contested standing and contested loss mitigation; (b) imposition of a constructive trust over any funds Freedom Mortgage has received or retained without lawful authority, including the $181,658.88 represented by the April 9, 2026 Trust Tender; (c) equitable accounting of all amounts received, applied, retained, or transmitted by Freedom Mortgage in connection with the subject loan; (d) equitable subordination of any allowed claim of Freedom Mortgage to the rights of unsecured creditors under 11 U.S.C. § 510(c); and (e) such other equitable remedies as the Court deems just and proper.

**I. Pre-Judgment and Post-Judgment Interest**

1. Plaintiff seeks pre-judgment and post-judgment interest on all monetary damages and equitable awards at the applicable federal rate under 28 U.S.C. § 1961 and at the applicable Kansas state-law rate under K.S.A. 16-201 et seq., calculated from the date of accrual of each cause of action through the date of payment.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Olga Gennadevna Volcsko respectfully prays that this Court enter judgment in her favor and grant the following relief:

A. DISALLOW Freedom Mortgage's proof of claim in its entirety under 11 U.S.C. § 502(b)(1), or in the alternative, condition any allowance on production of the original Note and complete chain of title documentation including custodial receipts, the HUD-11711A Release for Pool MA8649M, and an accounting of all sums claimed;

B. Enter a DECLARATORY JUDGMENT that the mortgage lien recorded against the Property in favor of Freedom Mortgage Corporation (Book 107, Page 127, Geary County) is void, voidable, or otherwise unenforceable, based on Freedom Mortgage's failure to establish standing to enforce the Note;

B.1. DECLARE the mortgage lien VOID under 11 U.S.C. § 506(d) upon disallowance of Proof of Claim No. 2-1 under 11 U.S.C. § 502(b)(1) as requested in Paragraph A above;

C. In the alternative to Paragraph B.1 above, AVOID the mortgage lien under 11 U.S.C. § 544(a)(3) and preserve the avoided lien for the benefit of the bankruptcy estate under 11 U.S.C. § 551, and either (i) permit Plaintiff to prosecute the § 544(a)(3) claim on behalf of the estate, or (ii) direct the Standing Chapter 13 Trustee to consider prosecuting the § 544(a)(3) claim on the record developed herein;

D. Declare that any post-petition affirmative act by Freedom Mortgage — including any continued prosecution of the State Court Action, any post-petition filing by Freedom Mortgage's state-court counsel Dwayne A. Duncan or Millsap & Singer, LLC, any attempt to obtain entry of a Decree of Foreclosure or Journal Entry of Judgment, any foreclosure sale, or any post-petition collection act on the disputed pre-petition arrearage — violates the automatic stay under 11 U.S.C. § 362(a) per City of Chicago v. Fulton, 592 U.S. 154 (2021) and In re Cowen, 849 F.3d 943 (10th Cir. 2017), and independently violates the SCRA mortgage foreclosure protection of 50 U.S.C. § 3953, and award actual damages, punitive damages, costs, and attorney's fees under 11 U.S.C. § 362(k);

E. Declare that Freedom Mortgage violated the SCRA — including 50 U.S.C. §§ 3931(a), 3932(b)(1), 3932(d)(2), and 3953 — and award Plaintiff actual damages, statutory relief, and attorney's fees under 50 U.S.C. § 4041;

F. Stay all foreclosure-related proceedings for the duration of Plaintiff's active military service and for one year thereafter under 50 U.S.C. § 3953 as a statutory bar supplementing the automatic stay;

G. DECLARE that Freedom Mortgage's violations of VA loan servicing requirements under 38 C.F.R. § 36.4285 (including as amended by 89 Fed. Reg. 25355 (Apr. 10, 2024) and 89 Fed. Reg. 91554 (Nov. 20, 2024)) constitute grounds for (i) disallowance of Proof of Claim No. 2-1 under 11 U.S.C. § 502(b)(1) per Count One; (ii) equitable subordination of Freedom Mortgage's claim under 11 U.S.C. § 510(c) per Count Eight; and (iii) referral to the VA Office of Inspector General;

H. AWARD Plaintiff actual damages, statutory damages up to $2,000 per violation, statutory damages up to $1,000,000 in a class action setting (or as may be otherwise determined), costs, and attorney's fees under 12 U.S.C. § 2605(f) and 12 C.F.R. § 1024.36 for Freedom Mortgage's late and substantively inadequate response to the QWR/RFI (the May 28, 2026 Customer Care Letter, Exhibit P) and for Freedom Mortgage's express refusal to produce critical documents absent court order;

I. EQUITABLY SUBORDINATE Freedom Mortgage's claim to Plaintiff's interests in the Property under 11 U.S.C. § 510(c) based on Freedom Mortgage's pattern of inequitable conduct;

J. Grant leave to amend this Complaint as of right (i) upon any subsequent receipt of documentation or information responsive to Plaintiff's discovery demands; (ii) upon any subsequent communication from Freedom Mortgage or any non-party regarding the Trust Presentment Package or the QWR/RFI; (iii) upon resolution of any DMDC verification issues; (iv) upon the filing of any Freedom Mortgage Proof of Claim in the Chapter 13 case; and (v) upon discovery of any further material facts;

K. Award Plaintiff all costs, fees, and expenses incurred in this proceeding; and

L. Grant such other and further relief as this Court deems just and equitable.

L.1. TAKE JUDICIAL NOTICE under Fed. R. Evid. 201 of: (i) the August 17, 2023 Consumer Financial Protection Bureau Consent Order entered against Freedom Mortgage Corporation for RESPA § 8 kickback violations (Exhibit V); (ii) the October 10, 2023 Consumer Financial Protection Bureau federal lawsuit against Freedom Mortgage Corporation, publicly captioned by the Bureau as against a "Repeat Offender," for repeated Home Mortgage Disclosure Act violations and for violating the June 5, 2019 CFPB Consent Order (Exhibit V-1); (iii) the Ginnie Mae public disclosure records for Pool MA8649M and REMIC 2023-022 (Exhibits 2, 3, 15); (iv) the MERS Servicer ID public records (Exhibit 13); (v) the Kansas Secretary of State business filings for Freedom Mortgage Corporation; (vi) the 2024-2025 VA regulatory amendments (89 Fed. Reg. 25355 (Apr. 10, 2024) and 89 Fed. Reg. 91554 (Nov. 20, 2024)).

M. AWARD Plaintiff actual damages, statutory damages, costs, and attorney's fees under 12 U.S.C. § 2605(f) for Freedom Mortgage's violation of 12 U.S.C. § 2605(k)(1)(D) as set forth in Count Ten;

N. Enter a DECLARATORY JUDGMENT under Count Eleven that the April 9, 2026 Trust Tender (operational amount $90,829.44, evidenced by paired negotiable instruments of $181,658.88 aggregate face value) discharged the underlying obligation under the Note and Mortgage to the extent of the tender, and that the Outstanding Principal Balance and pre-petition arrearage asserted by Freedom Mortgage must be reduced or eliminated to reflect such discharge; and

O. AWARD Plaintiff damages of $181,658.88, plus consequential and punitive damages, under Count Twelve for Freedom Mortgage's conversion of the negotiable instruments comprising the Trust Tender.

P. APPLY equitable estoppel under Count Thirteen to bar Freedom Mortgage from asserting positions inconsistent with its receipt and retention of the April 9, 2026 Trust Tender, including the assertion of the full pre-Tender Outstanding Principal Balance and the assertion of "owner/trustee" status without GAAP-compliant derecognition;

Q. AWARD Plaintiff actual damages, statutory damages up to $4,000 per violation under 12 U.S.C. § 2605(f)(1)(B), costs, and attorney's fees under Count Fourteen for Freedom Mortgage's violations of 12 C.F.R. §§ 1024.39, 1024.40, and 1024.41;

R. ORDER Freedom Mortgage Corporation to produce, for in-court authentication under Federal Rule of Evidence 901, the original Promissory Note executed on January 26, 2023 by Plaintiff, with all original endorsements, allonges, and attachments; if Freedom Mortgage cannot produce the original Note, DENY any proof of claim filed by Freedom Mortgage and ENFORCE the strong-arm avoidance remedy under 11 U.S.C. § 544(a)(3) as set forth in Count Four;

S. ORDER Freedom Mortgage Corporation to produce the documents expressly declined in its May 28, 2026 Letter (Exhibit P), including system notes, call logs, master agreement, manuals, property inspection reports, and appraisals, in accordance with Federal Rules of Bankruptcy Procedure 7026 and 7034;

T. DECLARE that Freedom Mortgage's contradictory representations regarding loan ownership ("owner/trustee" in the May 20 Letter versus "GNMA is the investor" in the May 28 Letter) constitute a violation of 12 U.S.C. § 2605(k)(1)(D), and award Plaintiff actual damages, statutory damages, costs, and attorney's fees;

T.1. ORDER Freedom Mortgage Corporation to produce LEGIBLE copies of all documents it represented in its May 28, 2026 Customer Care Letter to have enclosed therewith — including Servicing Transfer Notices, Note, Mortgage/Deed of Trust, Payment History, loss mitigation notices, Forbearance Plan documentation, and default notices — and award Plaintiff actual damages, statutory damages, costs, and attorney's fees under 12 U.S.C. § 2605(f) and 12 C.F.R. § 1024.36 for Freedom Mortgage's transmittal of illegible enclosures in response to the QWR/RFI;

U. DECLARE that Freedom Mortgage's continued prosecution of the State Court Action and assertion of pre-petition arrearage during the active April 1, 2026 — June 30, 2026 Forbearance Plan period constitutes a violation of 12 C.F.R. § 1024.41(g) (loss mitigation dual-tracking prohibition), and award Plaintiff actual damages, statutory damages, costs, and attorney's fees;

V. DECLARE under Count Eleven and Section III.X of this Complaint that, pursuant to UCC § 1-206 and Federal Rule of Evidence 301, Freedom Mortgage Corporation has failed to controvert by competent evidence the controlling Supreme Court authority and Uniform Commercial Code Article 3 framework recognizing the negotiable-instrument character of the April 9, 2026 Trust Tender, and shall be deemed to have stipulated to the presumptive definition of “vapor money theory” as legally inapt to dispose of Plaintiff’s UCC Article 3 claims; AND further declare that the April 9, 2026 Trust Tender retains its commercial-law character as a tender of negotiable instruments under UCC §§ 3-104, 3-501, 3-502, 3-505, 3-603, and 3-310, with the legal consequences applicable thereto;

**AND IN FURTHERANCE OF THE FOREGOING UNIFIED PRAYER FOR RELIEF, Plaintiff additionally requests the following relief:**

252. Plaintiff requests, as part of the unified Prayer for Relief, the following additional items (originally pleaded as the Supplemental Prayer for Relief filed September 24, 2026):

A. JUDICIAL NOTICE — take judicial notice under Fed. R. Evid. 201(b)(2) of the adjudicated federal regulatory findings identified in paragraphs 114(a)-(c) above, and of Exhibits V and V-1 attached to the original Adversary Complaint;

B. COUNT XI DAMAGES — award enhanced damages under 12 U.S.C. § 2605(f)(1)(B), including actual damages, statutory damages, and reasonable costs of the action;

C. STRENGTHENED COUNT VIII — subordinate Freedom Mortgage's Proof of Claim No. 2-1 under 11 U.S.C. § 510(c) with express reliance on the adjudicated Repeat Offender designation as the inequitable-conduct element;

D. FOUR-FIRM PROPORTIONALITY — take judicial note of Freedom Mortgage's four-firm litigation escalation, and weigh this proportionality against Plaintiff's pro se OCONUS status when considering any application by Freedom Mortgage or its counsel for fee-shifting, sanctions, or discretionary equitable relief;

E. PRESERVATION — expressly preserve all claims, allegations, exhibits, and prayers of the original Adversary Complaint filed August 20, 2026; and

F. GRANT such further and other relief as the Court deems just and proper.

253. Plaintiff further requests, as part of the unified Prayer for Relief, the following additional items (originally pleaded as the Second Supplemental Prayer for Relief):

A. COUNT XVI (Breach of Contract — VA Regulatory Framework) — award damages for Freedom Mortgage's breach of the VA regulatory obligations incorporated as contract terms via Note Section 12, in amounts to be proved at trial;

B. COUNT XVII (Breach of Contract — RESPA Framework) — award damages for Freedom Mortgage's breach of the RESPA and Regulation X obligations incorporated as contract terms via Mortgage Section (P), in amounts to be proved at trial;

C. DETERMINE, pursuant to 11 U.S.C. § 502(b)(1), that Freedom Mortgage's Proof of Claim No. 2-1 is unenforceable in whole or in part on grounds including (i) the endorsement chain and possession disputes set forth in Paragraphs 125 through 127 above; (ii) the K.S.A. § 84-3-302(a)(2)(vi) notice-based defeat of any holder-in-due-course status; and (iii) breach of the contractually-incorporated VA and RESPA frameworks addressed in Counts XVI and XVII;

D. PRESERVATION — expressly preserve all claims, allegations, exhibits, and prayers of the Original Complaint (as modified by the Notice of Errata at AP DN 13) and the First Supplemental Complaint (deemed filed September 24, 2026); and

E. GRANT such further relief as the Court deems just and proper.

## VIII. VERIFICATION UNDER 28 U.S.C. SEC. 1746

I, Olga Gennadevna Volcsko, declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. Sec. 1746, as follows:

1. I am the Plaintiff-Debtor in the above-captioned adversary proceeding and the Debtor in the related Chapter 13 main case, In re Volcsko, Case No. 26-20603-rdb13.

2. I have read the entire foregoing Second Amended Adversary Complaint, including the Compliance Statement, the Notice of Legal Authorities Relied Upon, the Introduction, the Jurisdiction and Venue section, the Parties section, the Factual Allegations (including the supplemental factual allegations arising after August 20, 2026 and the documentary-review factual allegations), the Causes of Action (Counts I through XVII and the supplemental allegations strengthening Counts I, II, IV, VII, and VIII), the Discovery Demands, the Damages Enumeration, the Prayer for Relief, and the Exhibit List.

3. The factual allegations contained herein are true and correct to the best of my knowledge, information, and belief, based on my personal knowledge, my inspection of the documentary record (including Freedom Mortgage Corporation's Proof of Claim No. 2-1 and the attached Note, Mortgage, and Assignment), the Qualified Written Request I served on Freedom Mortgage on April 16, 2026 (USPS Certified Mail Article Nos. 9589 0710 5270 2570 2656 95 and 9589 0710 5270 2570 2655 34), Freedom Mortgage's May 28, 2026 response letter (Exhibit P), and my review of Freedom Mortgage Corporation's public filings, correspondence, and the primary-source Ginnie Mae records referenced herein.

4. I am an active-duty servicemember of the United States Army, currently OCONUS-deployed.

5. This Second Amended Adversary Complaint is a single, standalone pleading that contains, within its four corners, every claim, allegation, exhibit, and prayer that Plaintiff asserts in this adversary proceeding. It does not incorporate by reference, and does not depend upon, any prior pleading in this adversary proceeding (including, without limitation, the Original Adversary Complaint at AP DN 2 and the First Supplemental Adversary Complaint at AP DN 24).

Executed OCONUS on this 23rd day of October, 2026.

By: /s/ Olga Gennadevna Volcsko

Olga Gennadevna Volcsko
Plaintiff-Debtor, Pro Se
Active-Duty United States Army (OCONUS-Deployed)
11427 Farnum Run Road, Milford, Kansas 66514
Email: ovolcsko@outlook.com

All Rights Reserved -- Without Prejudice -- UCC Sec. 1-308

## IX. EXHIBIT LIST

EXHIBIT LIST

Exhibit M — Freedom Mortgage Corporation Mortgage Statement dated May 18, 2026 (post- petition) (showing Outstanding Principal Balance $362,373.38, pre-petition arrearage $94,400.61, no credit for April 9, 2026 Trust Tender)

Exhibit N — Freedom Mortgage Corporation Customer Care Letter dated May 20, 2026 (containing material representation that Freedom Mortgage Corporation is the "owner/trustee" of the subject loan)

Exhibit O — USPS Return Receipt (green card) confirming Freedom Mortgage Corporation's receipt of the April 9, 2026 Trust Presentment Package containing Promissory Note VFBT-PN- 2026-001 and Commercial Draft VFBT-CD-2026-001 (aggregate $181,658.88)

Exhibit P — Freedom Mortgage Corporation Customer Care Letter dated May 28, 2026 (4 pages) — containing (i) contradictory investor identification (Ginnie Mae versus prior May 20 "owner/trustee" representation), (ii) Pool CR9650 identification differing from Plaintiff's primary-source MA8649M identification, (iii) admission of no Pooling and Servicing Agreement, (iv) loss mitigation timeline establishing 12 C.F.R. § 1024.41 violations, (v) Forbearance Plan approval April 17, 2026 (covering April 1 — June 30, 2026), (vi) padded foreclosure fees, (vii) express refusal to produce documents absent court order, (viii) bad-faith characterization of Plaintiff's legal arguments as "frivolous" and "fraud," and (ix) belated request for Military Orders despite prior SCRA notification.

Exhibit Q — Presumption Rebuttal Re: Mischaracterization of UCC Article 3 Tender as “Vapor Money Theory” — 39-paragraph supporting memorandum setting forth (i) the Article I, Section 10 constitutional framework prohibiting impairment of contracts; (ii) controlling Supreme Court authority recognizing promissory notes and bills of exchange as representatives of money in commerce (Shaw v. Railroad Co., 101 U.S. 557 (1880); FDIC v. Philadelphia Gear Corp., 476 U.S. 426 (1986); Swift v. Tyson, 41 U.S. 1 (1842); Juilliard v. Greenman, 110 U.S. 421 (1884); Perry v. United States, 294 U.S. 330 (1935)); (iii) the Federal Reserve’s private corporate character under Lewis v. United States, 680 F.2d 1239 (9th Cir. 1982); and (iv) the Federal Rule of Evidence 301 / UCC § 1-206 presumption framework supporting the presumptive definition stated in Section III.X.

Exhibit R — Freedom Mortgage Corporation's complete 30-page Proof of Claim No. 2, filed June 3, 2026 by McCalla Raymer Leibert Pierce, LLP (Karen A. Maxcy, Authorized Agent), asserting $445,919.58 secured claim on Loan Account No. 0149070542, including Freedom Mortgage's filed copies of the Note, Mortgage, Assignment, Allonges, and endorsement stamps; central to Counts I (standing/POC objection), II (void lien), IV (lien avoidance under § 506(d)), and VIII (equitable subordination)

Exhibit S — Single-page extract from Exhibit R (POC #2 page 14) showing the specific endorsement stamp 'PAY TO THE ORDER OF: FREEDOM MORTGAGE CORPORATION / WITHOUT

RECOURSE / NFM, Inc., a Maryland Corporation,' signed by Chelsey Roberts, Post Closing Specialist; this endorsement does NOT appear on the state-court Note copies at Exhibit U

Exhibit T — Single-page extract from Exhibit R (POC #2 page 15) showing a free-floating blank endorsement stamp — 'Pay to the order of [BLANK] / Freedom Mortgage Corporation / Glenn Esposito / Maria Gallucci, Corporate Secretary' — with no Note serial reference, no page number, and no connecting language identifying it with any specific Note; this endorsement does NOT appear on the state-court Note copies at Exhibit U

Exhibit U — Copies of the Promissory Note attached to Freedom Mortgage Corporation's state-court filings in Freedom Mortgage Corp. v. Volcsko, Case No. GE-2025-CV-000046 (Geary County, Kansas), including the March 14, 2025 Petition and the subsequent Motion for Summary Judgment filings — comparator Note copies that DO NOT contain the Chelsey Roberts endorsement stamp (Exhibit S) or the Glenn Esposito / Maria Gallucci blank endorsement stamp (Exhibit T) that later appeared on POC #2 pages 14 and 15 (Exhibit R)

Exhibit V — Consumer Financial Protection Bureau Consent Order dated August 17, 2023, entered against Freedom Mortgage Corporation for RESPA § 8 kickback violations (Admin. Adjudication Docket 2023-CFPB-0008); adjudicated federal regulatory record offered as judicially noticeable administrative action under Fed. R. Evid. 201(b)(2) in support of pattern-or-practice allegations

Exhibit V-1 — Consumer Financial Protection Bureau federal civil enforcement action filed October 10, 2023 against Freedom Mortgage Corporation in the United States District Court for the District of New Jersey, publicly captioned by the Bureau as against a 'Repeat Offender' for repeated Home Mortgage Disclosure Act violations and for violation of the June 5, 2019 CFPB Consent Order; adjudicated federal regulatory record offered as judicially noticeable administrative action under Fed. R. Evid. 201(b)(2) in support of pattern-or-practice allegations

Exhibit W — SouthLaw, P.C. Pre-Motion Notice Letter to Debtor dated August 13, 2026 (SouthLaw File No. 259979), purporting to invoke D. Kan. LBR 3002.1.1(d)(4), asserting a post-petition default of $11,748.96 (four claimed missed installments of $2,937.24, May–August 2026), 1 and announcing Freedom Mortgage Corporation's intent to file a Motion for Relief from Automatic Stay under 11 U.S.C. § 362(d).

**EXHIBIT DESCRIPTION**

1. PLAINTIFF'S AFFIDAVIT OF RESEARCH AND FACT — Olga Gennadevna Volcsko, executed under penalty of perjury pursuant to 28 U.S.C. § 1746, memorializing primary-source verification of Pool MA8649M / CUSIP 36179XTE6 / Issuer 3871 / REMIC 2023-022 Groups 5 and 7 (Ex. 15 — REMIC 2023-022 Final Data Statement Extract) / Disclosure Sequence 1522198150, with Exhibits A–H

2. AFFIDAVIT OF RESEARCH — EXHIBIT C — Ginnie Mae Loan-Level Disclosure L-Record Extract for Subject Loan (field-by-field decode per Layout v1.8; source GNMA_MBS_LL_MON_202603_002.txt; FR 902(5) self-authenticating)

3. AFFIDAVIT OF RESEARCH — EXHIBIT E — Ginnie Mae Monthly Sponsor/Sub-Servicer Records for Issuer ID 3871 on Pool MA8649 (02 summary record + 21 matrix records; source monthlySFS_202603)

4. Affidavit of Joseph R. Esquivel, Jr. (TX PI License A20449) with Esquivel Exhibits A–H, including Ginnie Mae Enterprise Portal data, Note copies, MERS Procedures Manual excerpts, and Offering Circular Supplement for GNMA 2023-022 Trust

5. Geary County, Kansas — Assignment of Mortgage executed April 29, 2023 by Alan Baker, recorded October 30, 2023 at Book 107, Page 127

6. Geary County, Kansas — Mortgage recorded January 27, 2023 at Book 292, Page 1028

7. State Court Foreclosure Docket — GE-2025-CV-000046 (selected entries: Petition 3/14/25; Summary Judgment Ruling 1/21/26; Motion for Reconsideration 2/11/26; Motion to Stay 4/3/26; 4/8/26 hearing; supplemental reply 3/30/26)

8. Promissory Note dated January 26, 2023 ($365,000 @ 6.625%) with Allonge (Chelsey Roberts, NFM Post Closing Specialist) — blank payee endorsement

9. Kyeshia Renee Wickware Affidavit in Support of Motion for Summary Judgment (notarized by Charles Lemons, Hamilton County, Ohio)

10. VA Loan Documentation — Loan No. 94311221626 / VA Case No. 52-52-6-0400447

11. Qualified Written Request and Request for Information — served on Freedom Mortgage via Certified Mail

12. Trust Presentment Package cover letter and certified mail tracking

13. MERS Servicer ID lookup for MIN 1002591-0001727190-3

14. Dismissed Cases Compendium (allonge, MERS, standing precedents — multiple jurisdictions)

15. Ginnie Mae REMIC 2023-022 Final Data Statement extract (source: GNMA-2023-022-@FDS.txt) — showing Pool MA8649M contribution to Groups 5 ($100M) and 7 ($7.4M)

SUPPLEMENTAL EXPANDED DESCRIPTIONS FOR EXHIBIT NUMBERS 5-12 (the following expanded descriptions supplement and incorporate the foregoing abbreviated entries for Exhibits 5-12 and shall control to the extent of any inconsistency as to scope and content):

5. Assignment of Mortgage — executed April 29, 2023 by Alan Baker (purportedly as Vice President of Mortgage Electronic Registration Systems, Inc. as Nominee for NFM, Inc.), notarized by Tanner Dickson in Pinellas County, Florida; recorded October 30, 2023 in the Geary County, Kansas Register of Deeds at Book 107, Page 127.

6. Mortgage — executed by Debtor on January 26, 2023 securing the subject real property at 11427 Farnum Run Road, Milford, Kansas 66514; recorded January 27, 2023 in the Geary County, Kansas Register of Deeds at Book 292, Page 1028.

7. State Court Foreclosure Docket — Freedom Mortgage Corp. v. Volcsko, Case No. GE-2025-CV-000046, Geary County District Court, Kansas; Hon. Ryan W. Rosauer presiding; filed March 14, 2025.

8. Promissory Note dated January 26, 2023 (original principal $365,000.00 at 6.625% interest rate), with Allonge executed by Chelsey Roberts (identified as NFM, Inc. Post Closing Specialist) and additional blank-endorsement stamp at page 15 signed in the names of Glenn Esposito and Maria Gallucci purporting to be executed as 'Corporate Secretary'.

9. Kyeshia Renee Wickware Affidavit — filed September 11, 2025 in support of Freedom Mortgage's state-court Motion for Summary Judgment in Case No. GE-2025-CV-000046; purporting to establish Freedom Mortgage's possession of the Note at relevant times.

10. VA Loan Documentation — Loan No. 94311221626 / VA Case No. 52-52-6-0400447 — documentation of VA loan guaranty status relevant to Counts V (SCRA Violations), VI (VA Loan Servicing Violations), XVI (Breach of Contract — VA Regulatory Framework), and related counts.

11. Debtor's Qualified Written Request and Request for Information and Notice of Error, served April 16, 2026 pursuant to 12 U.S.C. § 2605(e) (RESPA) and 12 C.F.R. § 1024.36 (Regulation X), together with Notice of Dispute and Demand for Debt Validation pursuant to 15 U.S.C. § 1692g (FDCPA), served by USPS Certified Mail (Article Nos. 9589071052702570265695 and 9589071052702570265534).

12. Trust Presentment Package served April 9, 2026 on Freedom Mortgage Corporation at three addresses (including P.O. Box 50485, Indianapolis, IN 46250), containing Promissory Note VFBT-PN-2026-001 and Commercial Draft VFBT-CD-2026-001 (aggregate $181,658.88) and related trust-presentment materials.

**EXHIBIT AND DISCOVERY RESERVATION**

Plaintiff reserves the right to (a) renumber exhibits for organizational purposes; (b) supplement exhibits with additional evidence identified through discovery, third-party subpoenas, or public-record requests; (c) replace preliminary copies with authenticated or certified copies; (d) add exhibits identified through third-party discovery, including but not limited to Ginnie Mae, MERSCORP Holdings Inc., NFM Inc., McCalla Raymer Leibert Pierce LLP, and Freedom Mortgage Corporation's document custodians; and (e) amend the Exhibit Index and this Complaint as justice requires. A Master Matrix (Paragraph-to-Exhibit Cross-Reference) is filed contemporaneously herewith as a companion document, mapping each load-bearing factual allegation to its supporting exhibits and identifying the point proven.

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of October, 2026, a true and correct copy of the foregoing Second Amended Adversary Complaint was served pursuant to Fed. R. Bankr. P. 7005 and Fed. R. Civ. P. 5 upon the following, by CM/ECF upon all parties registered to receive electronic notice in this case, and by email and/or United States First-Class Mail (via Plaintiff's stateside mailing agent) upon the following:

Counsel for Freedom Mortgage Corporation:

Sarah S. Mattingly, Dinsmore & Shohl LLP (Louisville, KY) -- sarah.mattingly@dinsmore.com

Joshua I. Marrone, Dinsmore & Shohl LLP (Denver, CO) -- joshua.marrone@dinsmore.com

J. Alex Gardner, Dinsmore & Shohl LLP -- alex.gardner@dinsmore.com

Michael J. McCormick, McCalla Raymer Leibert Pierce, LLP -- Michael.McCormick@mccalla.com

SouthLaw, P.C. -- ksbkecf@southlaw.com

Chapter 13 Trustee and Related Parties:

W.H. Griffin, Standing Chapter 13 Trustee -- inquiries@13trusteekc.com; griffink1@ch13kc.com

Teresa L. Arnold, Staff Attorney -- inquiries@13trusteekc.com

Office of the United States Trustee (Region 20) -- ustpregion20.wi.ecf@usdoj.gov

By First-Class U.S. Mail via Stateside Mailing Agent:

Freedom Mortgage Corporation, c/o CT Corporation System (registered agent), 112 SW 7th Street, Suite 3C, Topeka, Kansas 66603

SouthLaw, P.C., 13160 Foster, Suite 100, Overland Park, Kansas 66213-2660

McCalla Raymer Leibert Pierce, LLP, Attn: Michael J. McCormick, 1544 Old Alabama Road, Roswell, Georgia 30076

Dinsmore & Shohl LLP, Attn: Sarah S. Mattingly, 101 South Fifth Street, Suite 2500, Louisville, Kentucky 40202

Dinsmore & Shohl LLP, Attn: Joshua I. Marrone, 1775 Sherman Street, Suite 2600, Denver, Colorado 80203

By: /s/ Olga Gennadevna Volcsko

Olga Gennadevna Volcsko
Plaintiff-Debtor, Pro Se
Active-Duty United States Army (OCONUS-Deployed)
11427 Farnum Run Road, Milford, Kansas 66514
Email: ovolcsko@outlook.com

All Rights Reserved -- Without Prejudice -- UCC Sec. 1-308